# Exhibit "P"

# Current report Net Savings Link, Inc./de
## 8-K - Current report

SEC.report (https://sec.report/)   /   Net Savings Link, Inc. (/CIK/0001432176)

/   Form Current report (/Document/0001002014-16-000694/)          /   (Filer)

Published: 2016-06-17 12:51:10 (2016-06-17T12:51:10-0400)
Submitted: 2016-06-17
Filing Agent: LAW OFFICE OF CONRAD C. LYSIAK, P.S. (/CIK/0001002014)
Period Ending In: 2016-06-14

About Form Current report (/Form/Current report)

nsav8k-06142016.htm ⬈ (https://sec.report/Document/0001002014-16-000694/nsav8k-06142016.htm) NET SAVINGS LINK, INC.
FORM 8-K (06/14/2016)

Zoom In   Zoom Out

---

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION Washington, D.C. 20549**

_____

**FORM 8-K** CURRENT REPORT Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

**Date of Report June 14, 2016**

# NET SAVINGS LINK, INC. *(Exact name of registrant as specified in its charter)*

**NEVADA** *(State or other jurisdiction of incorporation)*

**000-53346** *(Commission File No.)*

**P.O. Box 609 1076 Route 390 North Mountainhome, Pennsylvania 18342** Telephone: (570) 595- *(Address of principal executive offices and Zip Code)*

**(570) 595-2432** *(Registrant's telephone number, including area code)*

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[   ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[   ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[   ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[   ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**ITEM 1.01    ENTRY INTO A MATERIAL DEFINITIVE AGREEMENT.**

On January 26, 2016, we entered into an agreement with China Food and Beverage Company (hereinafter "CHIF") wherein it was agreed that our president, Steven Baritz, would transfer 5,000,000 restricted shares of Series A Preferred stock to CHIF or its nominee in consideration of: (1)  CHIF paying certain fees to the Nevada Secretary of State;  (2) CHIF assuming and paying certain outstanding obligations to third parties on our behalf; and,  (3) CHIF on our behalf would fulfill certain outstanding obligations owed to KBM Worldwide (hereinafter "KBM" ).  The 5,000,000 Series A Preferred Shares being transferred from Steven Baritz constituted 62.69% of our voting control and therefore, CHIF, or its nominee would assume voting control of us.

**ITEM 5.01    CHANGES IN CONTROL OF THE REGISTRANT.**

On February 9, 2016, our former sold officer and director transferred 5,000,000 restricted shares of Series A Preferred stock to James Tilton.  Each Series A Preferred share has 1,000 votes and constituted 62.69% of our voting control and therefore, Mr. Tilton assumed control of us.

On February 12, 2016, our board of directors issued 25,000,000 restricted shares of our Series A Preferred Stock to James Tilton for funds paid by Mr. Tilton.  As a result of the foregoing issuance, Mr. Tilton owned a total of 30,000,000 restricted shares of our Series A Preferred Stock an controlled 90.90% of our voting power.

Mr. Tilton does not own any shares of our Common Stock.

**ITEM 5.02    DEPARTURE OF DIRECTORS OR CERTAIN OFFICERS; ELECTION OF DIRECTORS; APPOINTMENT OF CERTAIN OFFICERS; COMPENSATORY ARRANGEMENTS OF CERTAIN OFFICERS.**

On January 23, 2016, James Tilton was appointed to our board of directors.  Thereafter Steven Baritz resigned as a director.  On the same date, James Tilton was appointed by our board of directors to replace Steven Baritz as our president, principal executive officer, secretary, treasurer, principal financial officer and principal accounting officer.  At the time of Mr. Baritz's resignation as a director and when he was replaced as an officer, Mr. Baritz did not have any disagreements with us relating to our operations, policies or practices.

Mr. Tilton has more than twenty years of experience working with public companies.  Mr. Tilton has been the CEO and President of five publicly traded companies since 1995.  Mr. Tilton has negotiated numerous acquisitions for the public companies that he has headed up. These acquisitions spanned the globe and include the U.S., U.K. Belgium, France, Vietnam, and China.  Mr. Tilton also has extensive business and marketing experience in the Far East and through Metallic Building Company, a subsidiary of NCI Building Systems (NYSE: NCS (/Ticker/NCS)), markets pre-engineered building materials in China. Mr. Tilton assisted Star Brite, a division of Oceans Bio-Tech (NASDAQ: OBCI (/Ticker/OBCI)) in establishing a sales distribution system in China for its chemical products.  Since October 23, 1995, Mr. Tilton has been president, CEO, Secretary and a Director of China Food and Beverage Company (CHIF above), a former Chinese brewery.  Since July 29, 1998, Mr. Tilton has been the president, chief executive officer, and a director of Tianrong Internet Products and Services, Inc., ("TIPS"), an former Internet incubator. TIPS is currently traded on OTC Grey Market.  From November 2000 to December 19, 2014, Mr. Tilton was CFO, secretary, treasurer, and a director of Twistee Treat Corporation ("TSEE"), a former ice cream franchiser and president and CEO thereof from July 2002 to December 19, 2014. -2-

**Involvement in Certain Legal Proceedings**

During the past ten years, Mr. Tilton has not been the subject of the following events:

1. A petition under the Federal bankruptcy laws or any state insolvency law was filed by or against, or a receiver, fiscal agent or similar officer was appointed by a court for the business or property of such person, or any partnership in which he was a general partner at or within two years before the time of such filing, or any corporation or business association of which he was an executive officer at or within two years before the time of such filing;

2. Convicted in a criminal proceeding or is a named subject of a pending criminal proceeding (excluding traffic violations and other minor offenses);

3. The subject of any order, judgment, or decree, not subsequently reversed, suspended or vacated, of any court of competent jurisdiction, permanently or temporarily enjoining him from, or otherwise limiting, the following activities;

   | | |
   |---|---|
   | i) | Acting as a futures commission merchant, introducing broker, commodity trading advisor, commodity pool operator, floor broker, leverage transaction merchant, any other person regulated by the Commodity Futures Trading Commission, or an associated person of any of the foregoing, or as an investment adviser, underwriter, broker or dealer in securities, or as an affiliated person, director or employee of any investment company, bank, savings and loan association or insurance company, or engaging in or continuing any conduct or practice in connection with such activity; |
   | ii) | Engaging in any type of business practice; or |
   | iii) | Engaging in any activity in connection with the purchase or sale of any security or commodity or in connection with any violation of Federal or State securities laws or Federal commodities laws; |

4. The subject of any order, judgment or decree, not subsequently reversed, suspended or vacated, of any Federal or State authority barring, suspending or otherwise limiting for more than 60 days the right of such person to engage in any activity described in paragraph 3.i in the preceding paragraph or to be associated with persons engaged in any such activity;

5. Was found by a court of competent jurisdiction in a civil action or by the Commission to have violated any Federal or State securities law, and the judgment in such civil action or finding by the Commission has not been subsequently reversed, suspended, or vacated;

6. Was found by a court of competent jurisdiction in a civil action or by the Commodity Futures Trading Commission to have violated any Federal commodities law, and the judgment in such civil action or finding by the Commodity Futures Trading Commission has not been subsequently reversed, suspended or vacated;

7. Was the subject of, or a party to, any Federal or State judicial or administrative order, judgment, decree, or finding, not subsequently reversed, suspended or vacated, relating to an alleged violation of:

   | | |
   |---|---|
   | i) | Any Federal or State securities or commodities law or regulation; or |
   | ii) | Any law or regulation respecting financial institutions or insurance companies including, but not limited to, a temporary or permanent injunction, order of disgorgement or restitution, civil money penalty or temporary or permanent cease-and-desist order, or removal or prohibition order, or |
   | iii) | Any law or regulation prohibiting mail or wire fraud or fraud in connection with any business entity; or |

-3-

8.     Was the subject of, or a party to, any sanction or order, not subsequently reversed, suspended or vacated, of any self-regulatory organization (as defined in Section 3(a)(26) of the Exchange Act (15 U.S.C. 78c(a)(26))), any registered entity (as defined in Section 1(a)(29) of the Commodity Exchange Act (7 U.S.C. 1(a)(29))), or any equivalent exchange, association, entity or organization that has disciplinary authority over its members or persons associated with a member.

**Term of Office**

Our directors are appointed for a one-year term to hold office until the next annual general meeting of our stockholders or until removed from office in accordance with our Bylaws. Our officers are appointed by our board of directors and hold office until removed by the board.

**Employment Agreement**

We do not have an employment agreement with Mr. Tilton. None is anticipated at this time. Mr. Tilton will be compensated as determined by our board of directors.

### ITEM 5.03     AMENDMENTS TO ARTICLES OF INCORPORATION OR BYLAWS; CHANGE IN FISCAL YEAR.

On September 21, 2015, we amended our articles of incorporation and increased our authorized aggregate number of shares of stock to 3,000,000,000 common shares and 1,000,000,000 preferred shares.

On February 10, 2016, we amended our articles of incorporation and increased our authorized aggregate number of shares of stock to 10,000,000,000 common shares and 1,000,000,000 preferred shares.

### ITEM 5.07     SUBMISSION OF MATTERS TO A VOTE OF SECURITY HOLDERS.

On September 8, 2014 certain common and preferred stockholders, owning approximately 67.46% of combined voting power of the common and preferred stock, approved by written consent in lieu of a stockholders' meeting, the proposal to increase our authorized shares of common stock from 1,000,000,000 shares with a par value of $0.001 per share to 3,000,000,000 shares with a par value of $0.001. On September 8, 2014, our board of directors unanimously approved the above proposal. A definitive information statement describing the foregoing was filed with the SEC on September 24, 2014 and is incorporated herein by reference.

On June 8, 2015 certain common and preferred stockholders, owning approximately 62.69% of combined voting power of the common and preferred stock, approved by written consent in lieu of a stockholders' meeting, the proposal to increase our authorized shares of common stock from 3,000,000,000 shares with a par value of $0.001 per share to 10,000,000,000 shares with a par value of $0.001. On July 8, 2015, our board of directors unanimously approved the above proposal. A definitive information statement describing the foregoing was filed with the SEC on September 11, 2015 and is incorporated herein by reference.

-4-

**ITEM 8.01     OTHER EVENTS.**

We are currently delinquent in our reporting obligations with the SEC.  We are in the process of preparing the delinquent quarterly Form 10-Qs and a Form 10-K for the year ended November 30, 2015.  We intend to diligently proceed with the preparation of the delinquent reports and will file them as soon as they are completed.

**ITEM 9.01     FINANCIAL STATEMENTS AND EXHIBITS.**

| Exhibit | Document Description |
|---|---|
| 3.1 | Amended Articles of Incorporation filed with Nevada Secretary of State on September 21, 2015. |
| 3.2 | Amended Articles of Incorporation filed with Nevada Secretary of State on February 10, 2016. |
| 10.1 | Binding Change of Control Agreement. |

*SIGNATURES*

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Dated this 14th day of June, 2016

NET SAVINGS LINK, INC.

BY:                  *JAMES TILTON*

James Tilton
President, Principal Executive Officer, Secretary, Treasurer, Principal Financial Officer, Principal Accounting Officer and sole Director

-5-

exh3-1.htm ↗ (https://sec.report/Document/0001002014-16-000694/exh3-1.htm) AMENDED ARTICLES OF INCORPORATION FILED WITH NEVADA SECRETARY OF STATE ON SEPTEM

[ Zoom In ] [ Zoom Out ]

Exhibit 3.1

[SEAL]        **BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:   www.nvsos.gov**

## Certificate of Amendment
(PURSUANT TO NRS 78.385 AND 78.390)

| Filed in the office of | Document Number |
| BARBARA K. CEGAVSKE | 20150417555-65 |
| Barbara K. Cegavske Secretary of State State of Nevada | Filing Date and Time **09/21/2015  4:26 PM** |
| | Entity Number **E0121502007-7** |

USE BLACK INK ONLY – DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

**Certificate of Amendment to Articles of Incorporation For Nevada Profit Corporations (Pursuant to NRS 78.385 and 78.390 – After Issuance of Stock)**

1. Name of corporation

NET SAVINGS LINK, INC.

2. The articles have been amended as follows: (provide article numbers, if available)

ARTICLE IV:

The aggregate number of shares that the Corporation will have authority to issue is Four Billion (4,000,000,000) of which Three Billion (3,000,000,000) shares will be common stock, with a par value of $0.001 per share, and One Billion (1,000,000,000) shares will preferred stock, with a par value of $0.00001 per share.

3. The vote by which the stockholders holding shares in the corporation entitling them to exercise at least a majority of the voting power, or such greater proportion of the voting power as may be required in the case of a vote by classes or series, or as may be required by the provisions of the articles of incorporation* have voted in favor of the amendment is:

5,000,000,000 – 62.69%

4. Effective date and time of filing:  (optional)    Date:                        Time:

(must not be later than 90 days after the certificate is filed)

5. Signatures:  (required)

**X  STEVEN BARITZ**

Signature of Officer    Steven Baritz, President

*If any proposed amendment would alter or change any preference or any relative or other right given to any class or series of outstanding shares, then the amendment must be approved by the vote, in additional to the affirmative vote otherwise required, of the holders of shares representing a majority of the voting power of each class or series affected by the amendment regardless to limitations or restrictions on the voting power thereof.

IMPORTANT:   Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State Amend Profit-After Revised:    1-6-16

**ADDITIONAL ARTICLES NET SAVINGS LINK, INC.**

**Section 1. Capital Stock**

The aggregate number of shares that the Corporation will have authority to issue is Four Billion (4,000,000,000) of which Three Billion (3,000,000,000) shares will be common stock, with a par value of $0.001 per share, and One Billion (1,000,000,000) shares will be preferred stock, with a par value of $0.00001 per share.

The Preferred Stock may be divided into and issued in series. The Board of Directors of the Corporation is authorized to divide the authorized shares of Preferred Stock into one or more series, each of which shall be so designated as to distinguish the shares thereof from the shares of all other series and classes. The Board of Directors of the Corporation is authorized, within any limitations prescribed by law and this Article, to fix and determine the designations, rights, qualifications, preferences, voting rights, limitations and terms of the shares of any series of Preferred Stock including but not limited to the following:

(a)      The rate of dividend, the time of payment of dividends, whether dividends are cumulative, and the date from which any dividends shall accrue;

(b)      Whether shares may be redeemed, and if so, the redemption price and the terms and conditions of redemption;

(c)      The amount payable upon shares in the event of voluntary or involuntary liquidation;

(d)      Sinking fund or other provisions, if any, for the redemption or purchase of shares;

(e)      The terms and conditions on which shares may be converted, if the shares of any series are issued with the privilege of conversion;

(f)      Voting powers, including but not limited to super voting rights and the right to have the preferred stock vote as a single class with the common shares on all matters submitted to shareholders; and,

(g)      Subject to the foregoing, such other terms, qualifications, privileges, limitations, options, restrictions, and special or relative rights and preferences, if any, of shares or such series as our Board of Directors may, at the time so acting, lawfully fix and determine under the laws of the State of Nevada.

In the event of our liquidation, holders of preferred stock will be entitled to received, before any payment or distribution on the common stock or any other class of stock junior to the preferred stock upon liquidation, a distribution per share in the amount of the liquidation preference, if any, fixed or determined in accordance with the terms of such preferred stock plus, if so provided in such terms, an amount per share equal to accumulated and unpaid dividends in respect of such preferred stock (whether or not earned or declared) to the date of such distribution. Neither the sale, lease, or

exchange of all or substantially all of our property and assets, nor any consolidation or merger, shall be deemed to be a liquidation.

**Section 2.  Acquisition of Controlling Interest.**

The Corporation elects not to be governed by NRS 78.378 to NRS 78.3793, inclusive.

**Section 3.  Combinations with Interest Stockholders.**

The Corporation elects not to be governed by NRS 78.411 to 78.444, inclusive.

**Section 4.  Liability.**

To the fullest extent permitted by NRS 78, a director or officer of the Corporation will not be personally liable to the Corporation or its stockholders for damages for breach of fiduciary duty as a director or officer, provided that this article will not eliminate or limit the liability of a director or officer for:

(a)         acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or

(b)         the payment of distributions in violation of NRS 78.300, as amended.

Any amendment or repeal of this Section 4 will not adversely affect any right or protection of a director of the Corporation existing immediately prior to such amendment or repeal.

**Section 5.  Indemnification**

(a)         Right to Indemnification.  The Corporation will indemnify to the fullest extent permitted by law any person (the "Indemnitee") made or threatened to be made a party to any threatened, pending or completed action or proceeding, whether civil, criminal, administrative or investigative (whether or not by or in the right of the Corporation) by reason of the fact that he or she is or was a director of the Corporation or is or was serving as a director, officer, employee or agent of another entity at the request of the Corporation or any predecessor of the Corporation against judgments, fines, penalties, excise taxes, amounts paid in settlement and costs, charges and expenses (including attorneys' fees and disbursements) that he or she incurs in connection with such action or proceeding.

(b)         Inurement.  The right to indemnification will inure whether or not the claim asserted is based on matters that predate the adoption of this Section 5, will continue as to an Indemnitee who has ceased to hold the position by virtue of which he or she was entitled to indemnification, and will inure to the benefit of his or her heirs and personal representatives.

(c)         Non-exclusivity of Rights.  The right to indemnification and to the advancement of expenses conferred by this Section 5 are not exclusive of any other rights that an Indemnitee may have or acquire under any statue, bylaw, agreement, vote of stockholders or disinterested directors, the Certificate of Incorporation or otherwise.

(d)      Other Sources.  The Corporation's obligation, if any, to indemnify or to advance expenses to any Indemnitee who was or is serving at the request as a director, officer employee or agent of another corporation, partnership, joint venture, trust, enterprise or other entity will be reduced by any amount such Indemnitee may collect as indemnification or advancement or expenses from such other entity.

(e)      Advancement of Expenses.  The Corporation will, from time to time, reimburse or advance to any Indemnitee the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with defending any proceeding from which he or she is indemnified by the Corporation, in advance of the final disposition of such proceeding; provided that the Corporation has received the undertaking of such director or officer to repay any such amount so advanced if it is ultimately determined by a final unappealable judicial decision that the director or officer is not entitled to be indemnified for such expenses.

External Resources:

---

exh3-2.htm ⬈ (https://sec.report/Document/0001002014-16-000694/exh3-2.htm) AMENDED ARTICLES OF INCORPORATION FILED WITH NEVADA SECRETARY OF STATE ON FEBRUA

                [ Zoom In ] [ Zoom Out ]

---

Exhibit 3.2

[SEAL]      **BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
Website:  **www.nvsos.gov**

| Filed in the office of | Document Number |
|---|---|
| <u>BARBARA K. CEGAVSKE</u> | **20160062072-16** |
| Barbara K. Cegavske Secretary of State State of Nevada | Filing Date and Time<br>**02/10/2016  10:40 AM** |
| | Entity Number<br>**E0121502007-7** |

## Certificate of Amendment
(PURSUANT TO NRS 78.385 AND 78.390)

USE BLACK INK ONLY – DO NOT HIGHLIGHT          ABOVE SPACE IS FOR OFFICE USE ONLY

**<u>Certificate of Amendment to Articles of Incorporation</u> For Nevada Profit Corporations (Pursuant to NRS 78.385 and 78.390 – After Issuance of Stock)**

1.  Name of corporation

| |
|---|
| NET SAVINGS LINK, INC. |

2.  The articles have been amended as follows: (provide article numbers, if available)

| |
|---|
| ARTICLE IV:<br><br>The aggregate number of shares that the Corporation will have authority to issue is Eleven Billion (11,000,000,000) of which Ten Billion (10,000,000,000) shares will be common stock, with a par value of $0.001 per share and One Billion (1,000,000,000) shares will be preferred stock, with a par value of $0.00001 per share. |

3.   The vote by which the stockholders holding shares in the corporation entitling them to exercise at least a majority of the voting power, or such greater proportion of the voting power as may be required in the case of a vote by classes or series, or as may be required by the provisions of the articles of incorporation* have voted in favor of the amendment is:

| 5,014,900,000 – 62.69% |
| --- |

4.   Effective date and time of filing:  (optional)    Date: [_____] Time: [_____]

(must not be later than 90 days after the certificate is filed)

5.   Signatures:  (required)

**X  JAMES TILTON**

Signature of Officer     James Tilton, President

*If any proposed amendment would alter or change any preference or any relative or other right given to any class or series of outstanding shares, then the amendment must be approved by the vote, in additional to the affirmative vote otherwise required, of the holders of shares representing a majority of the voting power of each class or series affected by the amendment regardless to limitations or restrictions on the voting power thereof.

IMPORTANT:   Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*            Nevada Secretary of State Amend Profit-After Revised:   1-6-16

**ADDITIONAL ARTICLES NET SAVINGS LINK, INC.**

**Section 1. Capital Stock**

The aggregate number of shares that the Corporation will have authority to issue is Eleven Billion (11,000,000,000) of which Ten Billion (10,000,000,000) shares will be common stock, with a par value of $0.001 per share, and One Billion (1,000,000,000) shares will be preferred stock, with a par value of $0.00001 per share.

The Preferred Stock may be divided into and issued in series. The Board of Directors of the Corporation is authorized to divide the authorized shares of Preferred Stock into one or more series, each of which shall be so designated as to distinguish the shares thereof from the shares of all other series and classes. The Board of Directors of the Corporation is authorized, within any limitations prescribed by law and this Article, to fix and determine the designations, rights, qualifications, preferences, voting rights, limitations and terms of the shares of any series of Preferred Stock including but not limited to the following:

(a)     The rate of dividend, the time of payment of dividends, whether dividends are cumulative, and the date from which any dividends shall accrue;

(b)     Whether shares may be redeemed, and if so, the redemption price and the terms and conditions of redemption;

(c)     The amount payable upon shares in the event of voluntary or involuntary liquidation;

(d)     Sinking fund or other provisions, if any, for the redemption or purchase of shares;

(e)     The terms and conditions on which shares may be converted, if the shares of any series are issued with the privilege of conversion;

(f)     Voting powers, including but not limited to super voting rights and the right to have the preferred stock vote as a single class with the common shares on all matters submitted to shareholders; and,

(g)     Subject to the foregoing, such other terms, qualifications, privileges, limitations, options, restrictions, and special or relative rights and preferences, if any, of shares or such series as our Board of Directors may, at the time so acting, lawfully fix and determine under the laws of the State of Nevada.

In the event of our liquidation, holders of preferred stock will be entitled to received, before any payment or distribution on the common stock or any other class of stock junior to the preferred stock upon liquidation, a distribution per share in the amount of the liquidation preference, if any, fixed or determined in accordance with the terms of such preferred stock plus, if so provided in such terms, an amount per share equal to accumulated and unpaid dividends in respect of such preferred stock (whether or not earned or declared) to the date of such distribution. Neither the sale, lease, or

exchange of all or substantially all of our property and assets, nor any consolidation or merger, shall be deemed to be a liquidation.

**Section 2.  Acquisition of Controlling Interest.**

The Corporation elects not to be governed by NRS 78.378 to NRS 78.3793, inclusive.

**Section 3.  Combinations with Interest Stockholders.**

The Corporation elects not to be governed by NRS 78.411 to 78.444, inclusive.

**Section 4.  Liability.**

To the fullest extent permitted by NRS 78, a director or officer of the Corporation will not be personally liable to the Corporation or its stockholders for damages for breach of fiduciary duty as a director or officer, provided that this article will not eliminate or limit the liability of a director or officer for:

(a)        acts or omissions which involve intentional misconduct, fraud or a knowing violation of law; or

(b)        the payment of distributions in violation of NRS 78.300, as amended.

Any amendment or repeal of this Section 4 will not adversely affect any right or protection of a director of the Corporation existing immediately prior to such amendment or repeal.

**Section 5.  Indemnification**

(a)        Right to Indemnification.  The Corporation will indemnify to the fullest extent permitted by law any person (the "Indemnitee") made or threatened to be made a party to any threatened, pending or completed action or proceeding, whether civil, criminal, administrative or investigative (whether or not by or in the right of the Corporation) by reason of the fact that he or she is or was a director of the Corporation or is or was serving as a director, officer, employee or agent of another entity at the request of the Corporation or any predecessor of the Corporation against judgments, fines, penalties, excise taxes, amounts paid in settlement and costs, charges and expenses (including attorneys' fees and disbursements) that he or she incurs in connection with such action or proceeding.

(b)        Inurement.  The right to indemnification will inure whether or not the claim asserted is based on matters that predate the adoption of this Section 5, will continue as to an Indemnitee who has ceased to hold the position by virtue of which he or she was entitled to indemnification, and will inure to the benefit of his or her heirs and personal representatives.

(c)        Non-exclusivity of Rights.  The right to indemnification and to the advancement of expenses conferred by this Section 5 are not exclusive of any other rights that an Indemnitee may have or acquire under any statue, bylaw, agreement, vote of stockholders or disinterested directors, the Certificate of Incorporation or otherwise.

(d)    Other Sources.  The Corporation's obligation, if any, to indemnify or to advance expenses to any Indemnitee who was or is serving at the request as a director, officer employee or agent of another corporation, partnership, joint venture, trust, enterprise or other entity will be reduced by any amount such Indemnitee may collect as indemnification or advancement or expenses from such other entity.

(e)    Advancement of Expenses.  The Corporation will, from time to time, reimburse or advance to any Indemnitee the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with defending any proceeding from which he or she is indemnified by the Corporation, in advance of the final disposition of such proceeding; provided that the Corporation has received the undertaking of such director or officer to repay any such amount so advanced if it is ultimately determined by a final unappealable judicial decision that the director or officer is not entitled to be indemnified for such expenses.

External Resources:

exh10-1.htm (https://sec.report/Document/0001002014-16-000694/exh10-1.htm) BINDING CHANGE OF CONTROL AGREEMENT

Zoom In   Zoom Out

Exhibit 10.1

# China Food and Beverage Company – Net Savings Link
## Binding Change of Control Agreement

This binding Change of Control Agreement supersedes all prior Agreements between the parties and is between the following entities:

China Food and Beverage Company (CHIF) James A. Tilton President 311 South State Street Suite 380 Salt Lake City, UT 84111

and

**Net Savings Link, Inc. (NSAV)** Steven Baritz Chief Executive Officer 4747-20 Nesconset Highway Port Jefferson, NY 11776 U.S.A.

Transaction Details:
CHIF, a Wilton Group affiliate, intends to facilitate the purchase by NSAV of Hartley SAS Ltd. "Hartley") and The Lifetime SIPP Company ("Lifetime") to NSAV in a change of control transaction as follows:
Step 1: Upon signing of this Agreement, CHIF will have the right to full due diligence on NSAV. Steven Baritz will assign 5.0 million Series A preferred shares to CHIF no later than 24 hours after CHIF or its affiliates pay the required fees to the Secretary of State of Nevada to activate the Company's 14C share increase (preferred A & B and common).  Upon this change of control and fee payments, NSAV will pledge 3.0 billion shares irrevocably at the Transfer Agent to KBM Worldwide (KBM) for potential future conversions of their debentures, and Baritz will obtain indemnification from CHIF regarding NSAV on a go forward basis in order for this transaction to continue.  Steven Baritz and Vikram Grover will each be issued three hundred eighty-seven million, five hundred thousand (387,500,000) Series B preferred shares and $50,000.00 in debentures paying 0% interest, convertible into 1.25% of the fully-diluted shares outstanding of the entity at any time for a period of 18 months from closing, and having an 18- month maturity (for clarity, $100,000.00 total amount of debentures).  CHIF will name a representative to the positions of CEO and Chairman of the Board at the time of the transfer of control, and all of the above actions in Step 1 will be ratified by NSAV Board resolution.

January 27, 2016      Steven Baritz
James A. Tilton

Step 2: Definitive merger agreements for Hartley and Lifetime must be drawn up and executed on a best efforts basis no later than February 29, 2016. Upon consummation of the merger transaction(s) contemplated by March 15, 2016, NSAV will issue to the counterparties consideration as follows:
- 1.0 billion common shares,
- 95.0 million Series A Preferred shares, and
- $5.0 million note convertible into 50.0 billion common shares. This note shall convert upon completion of a reverse split, to be filed no later than June 30, 2016 via form 14C with the SEC.


NSAV is currently trading on OTC Markets in New York under the stock symbol NSAV (/Ticker/NSAV). NSAV is a presently a fully-reporting company with the SEC and is currently one 10Q behind in its SEC filings. NSAV represents that it is not a legal shell, as defined by the U.S. Securities and Exchange Commission (SEC) and was not a legal shell, as defined by the SEC at the time the above reference debentures were issued to KBM Worldwide.

CHIF agrees to provide, either directly or through its service providers, all the services necessary to obtain fully-reporting status with the U.S SEC. These services include U.S. GAAP accounting, SEC approved audits, legal service for the filings of 10K's and 10Q's with the SEC, all FINRA filings, all OTC Markets filings, compliance, corporate services, transfer agent issues, investor relations and all other aspects of services for a public company. NSAV's August 31, 2015 10Q will be prepared, completed and filed on a best efforts basis by February 15, 2016. Further, NSAV's November 30, 2015 10K will be prepared, completed and filed with the SEC on a best efforts basis by March 14, 2016, which would require a 15-business-day extension to be filed with the SEC by February 29, 2016.

CHIF agrees to assume the estimated $40,000.00 of payables in NSAV and pay them off promptly. CHIF will have the right and authority to negotiate with each of these creditors.

CHIF agrees to purchase or locate a non-affiliated investor to purchase the convertible debt held by KBM Worldwide for $180,000.00 cash. This transaction will be papered with KBM and completed as follows:
1) $60,000.00 to be paid no later than 7 business days after the filing of the Company's form 10Q for the quarter ended August 31, 2015
2) $120,000.00 to be paid no later than 14 business days after the filing of the Company's form 10K for the fiscal year ended November 30, 2015.

It is further agreed that the Series A Preferred shares that Baritz will be transferring to CHIF will be returned to Baritz if the $60,000.00 tranche is not paid in accordance with the terms stated above and all fees and payables paid up to that point by CHIF will be non-refundable.

Further, if CHIF or said non-affiliated investor does not pay the $120,000.00 tranche to KBM Worldwide in accordance with the terms stated above then CHIF will return said Series A Preferred shares to Steven Baritz upon CHIF being reimbursed for all costs it incurred in this transaction up to that point, including the $60,000 cash paid to KBM.

<u>Steven Baritz</u>
<u>James A. Tilton</u>

January 27, 2016
Page 2

CHIF will have the right and authority to renegotiate any of the above referenced terms directly with KBM and will retain ownership of the above referenced Series A Preferred shares upon receiving an unconditional release from KBM regarding the above referenced KBM debentures. This clause is included solely with the intention of protecting all parties in the event of circumstances that may arise that are unforeseen and not under the control of any of the parties named in this agreement.

CHIF agrees and warrantees that the KBM debt will be paid off only by means of cash or cash equivalent (subject to the approval of KBM) and under no circumstances will the KBM debt be paid off by debt of NSAV (/Ticker/NSAV).

This Change of Control Agreement is binding on all parties.

CHIF represents that Wilton Group currently owns 100% of Hartley and Lifetime. If the Hartley and Lifetime mergers are not consummated by March 15,2016, CHIF will have 90 days to put businesses and/or assets of value equal to or greater than Hartley and Lifetime into NSAV under similar terms to this Agreement, or CHIF will return said Series A Preferred shares back to Steven Baritz by June 30, 2016. CHIF will return said Series A Preferred shares to Baritz upon being reimbursed for all costs it incurred in this transaction up to that point, including the $180,000. cash paid to KBM.

*This represents our Agreement in its entirety, subject to the laws of the State of New York, U.S.A., effective January 27, 2016.*


*JAMES A. TILTON*

**James A. Tilton**
**President**
**China Food and Beverage**
**Company**
**Date**          **1/29/2016**


*STEVEN BARITZ*

**Steven Baritz**
**Chief Executive Officer**
**Net Savings Link, Inc.**
**Date**          **1/29/2016**


January 27, 2016

Page 3


| Additional Files | | | | |
| --- | --- | --- | --- | --- |
| **File** | **Sequence** | **Description** | **Type** | **Size** |
| 0001002014-16-000694.txt (https://sec.report/Document/0001002014-16-000694/0001002014-16-000694.txt) | | Complete submission text file | | 135303 |

$NCS (/Ticker/NCS) $OBCI (/Ticker/OBCI) $NSAV (/Ticker/NSAV)

© 2021 SEC.report | Contact (https://sec.report/contact.php) | 👽 (https://www.reddit.com/search/?q=site%3Asec.report) | 🐦 (https://twitter.com/EdgarInsider)

Data is automatically aggregated and provided "as is" without any representations or warranties, express or implied.

SEC.report is not affiliated with the U.S. S.E.C. or EDGAR System. Disclosure & Privacy Policy (https://sec.report/privacy_policy.php)

SEC CFR Title 17 of the Code of Federal Regulations. (https://ecfr.io/Title-17/)