BC
FILED
7/26/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JC

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

===============================

| | |
|---|---|
| **VIKRAM P. GROVER** d/b/a "IX ADVISORS" a/k/a "IXA," <br><br> Plaintiff, <br><br> v. <br><br> **NET SAVINGS LINK, INC.**, a Colorado corporation and formerly organized as a Nevada corporation, **WILTON GROUP, LIMITED**, as registered in the Isle of Man, U.K., **WILTON UK (GROUP), LIMITED**, as registered in England and Wales, U.K., **CHINA FOOD AND BEVERAGE CO.**, a Colorado corporation, and **JAMES A. TILTON**, <br><br> Defendants. <br><br> **Pacific Stock Transfer, NSAVX.COM, Inc.**, a Wyoming corporation, and **John Doe Corp., NSAVX.COM**, a Puerto Rican Corporation, <br><br> Trustee-Defendants. | <u>Civil Action No. 1:21-cv-05054</u> <br> **Honorable Mary M. Rowland** |

===============================

**DEFENDANT JAMES A. TILTON'S ADDITIONAL RESPONSE TO PLAINTIFF VIKRAM P. GROVER'S EMERGENCY MOTION TO FILE [PROPOSED] SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION TO APPOINT JOHN BUSACCA AS CHIEF RESTRUCTURING OFFICER (CRO) AND AS FURTHER OPPOSITION TO DEFENDANT TILTON'S MOTION TO VACATE ATTACHMENT ORDER AGAINST DEFENDANT JAMES A. TILTON ONLY**

1

1. NOW COMES James Arthur Tilton, and I am the President, sole director, and majority shareholder of Net Savings Link, Inc. ("NSAV") and I am the President, a director, and a minority shareholder of China Food and Beverage Company ("CHIF").

2. I, the defendant, again, wish to request that the Honorable Court vacate the attachment order, entered on June 27, 2024, against defendant James A. Tilton only, for reasons that I will list below.

3. I have not had a judgement against myself personally in this case. At the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that the ruling on plaintiff's request for summary judgment would take place probably by the end of September 2024. I vehemently dispute Plaintiff's counsel's claim that plaintiff has demonstrated a reasonable likelihood of success on the merits of his claims against myself individually.

4. At the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that Plaintiff's emergency motion for preliminary injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton (myself) as an individual.

5. At 4:32 PM CDT, on June 26, 2024, I personally received via email, from this Honorable Court, relating to Document number 166, which stated the following;

2

"Docket' Text:

MINUTE entry before the Honorable Mary M. Rowland: Telephonic motion hearing held. Plaintiff and Mr. Tilton appeared telephonically. Corporate entities are not represented by counsel. Mr. Tilton is reminded he cannot represent the corporate entities. Plaintiff's emergency motion for preliminary injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton as an individual. Because the corporate entities remain unrepresented, Plaintiff's motions are granted. Plaintiff is to send proposed orders to the court's proposed order mailbox for entry. Mailed notice. (dm, )"

6. I do not dispute that Plaintiff's emergency motion for attachment and attachment by trustee process [163] also included myself personally.

7. I do not dispute that the Honorable Court issued an attachment order, entered on June 27, 2024, against myself personally.

8. Again, my dispute and contention is that, as stated in items 4 and 5 above, it is clear that the Honorable Mary M. Rowland stated that I was not to be included in the attachment order.

9. An attachment order against myself personally should be solely based on the threat of me personally transferring my own assets, which I have not done, or attempted to do and plaintiff's counsel has no evidence to support that. In fact, in plaintiff's current motions

I don't believe even discuss the transfer of my personal assets, only corporate assets.

10. My motion to vacate and related plaintiff's opposition, are solely to do with myself personally and not the corporate defendants. However, it is clear that plaintiff's counsel has made his opposition about the corporate defendants, including by submitting emails and text messages that I sent to John Busacca. Therefore, I ask the Honorable Court to allow me to reply to said emails in this response and not grant a motion to strike by plaintiff's counsel, should he make such a motion.

11. In my emails and text messages to John Busacca, I refer to legal ways of dealing with the plaintiff. I meant either through the court process or a settlement. My said emails and text messages never discuss a plan to transfer assets from the defendant corporations. In fact, my messages discuss putting deals into the five public companies that I am or was involved with.

    I am no longer involved with Tianrong Internet Products and Services, Inc. (TIPS), other than being a minority shareholder. I have resigned my officer and director positions. I have not sold or transferred, or attempted to sell or transfer, my shares in TIPS and have no intention to do so.

    I am the president, sole director and minority shareholder of Tianrong Medical Group, Inc. (TNMD). I have not sold or transferred, or attempted to sell or transfer, my shares in TNMD and have no intention to do so.

I am the president, director and own no shares of Lvyuan Green Building Material Technology Corp. (LVYN).

Neither TIPS, TNMD and LVYN are defendants in this case and have nothing to do with this case.

12. Further, regarding said emails and text messages to John Busacca, CHIF's sole asset is a minor beverage business, which it acquired in late 2023 and in 2023 reported roughly $50,000. in sales. There has been no attempt to sell or transfer that business.

13. Finally, regarding said emails and text messages to John Busacca regarding NSAV, my sole ownership in NSAV consists of 40 million Preferred A shares, which do not convert to common stock and have no other rights except voting. These shares make me the majority shareholder of NSAV in terms of voting rights. I have never sold or attempted to sell any of these shares and any statement to the contrary is fraudulent and based on no evidence.

I am the majority shareholder and sole director of NSAV. As such, only I can approve the sale or transfer of assets of NSAV and I have not done so in any way whatsoever. For Plaintiff's counsel to accuse me of such is a fraudulent statement.

On May 10, 2024, I authorized the release of the following press release (in quotes below), which was sent to me by a consultant of NSAV and I believe written by a person or persons operating NSAV's cryptocurrency exchange, NSAVx.

"Net Savings Link, Inc. (OTC: NSAV), a cryptocurrency, blockchain and digital asset technology company, announced today the formation of NSAVx.com https://nsavx.com/ as a wholly-owned subsidiary on May 7, 2024.

NSAVx.com has been incorporated in Wyoming (2024-001453376) with 100,000,000 shares of common stock authorized at zero par value. The purpose of this incorporation is to hold both domestic and international NSAVx.com exchange assets, with the potential for a future spin-off as a special dividend to NSAV shareholders."

Again, only I can transfer assets to NSAVx.com, Inc. (Wyoming) and I have not done so.

I am not a corporate attorney and as NSAVx.com, Inc. (Wyoming) is a wholly-owned subsidiary of NSAV, I am not sure if NSAV transferring assets to a wholly-owned subsidiary is even a violation of the court order, but nonetheless, it will not be done.

However, I can assure the Honorable Court that no assets of NSAV will be sold or transferred without the approval of the court and without notifying the plaintiff.

14. I realize that my motion to vacate and subsequent responses, including this one, are basically the same and mostly repetitive. I wish to sincerely apologize to the Honorable Court for that. However, I feel I have no choice as plaintiff's counsel continues to make filings to oppose my motion to vacate and does so with claims and exhibits that in my opinion should be directed to the corporate defendants, not myself as an individual.

    Again, my motion to vacate the attachment order was only for myself as an individual and not the corporate defendants and I believe this is crystal clear to plaintiff's counsel. Why plaintiff's counsel continues to include items that clearly are related to the corporate defendant cases is a mystery to me. I feel that plaintiff's counsel is doing this on purpose and that I am being harassed by plaintiff's counsel and I kindly request that the Honorable Court instruct plaintiff's counsel to cease and desist with these actions immediately.

    When plaintiff's counsel continues to mix items that should be related to the corporate defendant cases, with my individual case and specifically my motion to vacate the personal attachment order against me, plaintiff's counsel leaves me no choice but to respond and thereby I run the risk of being accused of attempting to represent the corporate defendants as an attorney, which I know that I am legally not allowed to do.

15. In plaintiff's filing of July 19, 2024 (Document # 180), plaintiff's counsel includes a large number of items and exhibits. I have no idea how the items and exhibits from this filing relate to my request to vacate the personal attachment order against myself personally.

16. In plaintiff's filing of July 24, 2024, (Document # 184), plaintiff's counsel states that I have a "checkered and dubious background" without providing evidence to support this statement. This is a personal assault on myself and I ask the Honorable Court to reprimand plaintiff's counsel for this blatantly false statement.

17. Also in plaintiff's filing of July 24, 2024, (Document # 184), plaintiff's counsel states that, "as part of a deal between Tilton, on behalf of NSAV, and Leo's Capital, an acquaintance of Mr. Busacca, Tilton fraudulently failed to issue shares of NSAV to Leo's Capital after receiving money from Leo's Capital."

    As a former senior employee of the U.S. Securities and Exchange Commission (SEC), it is unbelievable that plaintiff's counsel can make such a false statement. On July 28, 2021, NSAV borrowed $50,000. from Leo's New Company, LLC. (Leo's), for a project in China. The project was headed by NSAV's associate in Hong Kong, Peter Chun. Employees and consultants of Leo's spoke to Mr. Chun on multiple occasions and knew exactly what the money was going to be used for. There was no fraud at all. The term of this loan was one year.

    On January 12, 2022, Leo's paid $10,000. to a New York attorney on behalf of NSAV. This was also treated as a loan and for the term of one year.

8

When the two loans to Leo's were due, NSAV was unable to repay the loans and interest with cash. NSAV did not have the cash to repay the loans. These were unsecured loans to NSAV, not to myself personally. Not being able to repay a business loan is not fraud and certainly not a criminal offense. Plaintiff's counsel is purposely misleading the court.

Plaintiff's counsel clearly states that Mr. Busacca was merely an acquaintance of Leo's. Therefore, why is Mr. Busacca sending me text messages regarding the loans from Leo's to NSAV?

Plaintiff's counsel states that, "Understandably, Mr. Busacca responded by saying that he would need to notify the relevant authorities for such fraudulent activity, and it is highly worrisome for the Plaintiff that NSAV's control shareholder would be willing to engage in such activity."

The above statement by plaintiff's counsel is misleading, false and fraudulent. Again, there was no fraud here at all. At the time the two note were due, NSAV simply did not have the money to repay Leo's. In addition, why would Mr. Busacca, an acquaintance of Leo's understandably respond to anything regarding the Leo's notes?

It is clear that Mr. Busacca had no legal or ethical right to be involved with that Leo's notes. This is beyond dispute. What is more worrying, are the threats that Mr. Busacca

made against myself personally, NSAV and CHIF in his text messages to me, which plaintiff's counsel submitted to the Honorable Court on July 24, 2024, (Document # 184). Respectfully, I will now comment on these text messages.

On March 16, 2024, at 00:57 Central European Time (CET), Mr. Busacca, in a text message to myself, uses foul language and says that I cheated Leo's out of their shares. Again, Leo's purchased two notes from NSAV, not NSAV shares.

On March 16, 2024, at 20:31 CET, Mr. Busacca threatens me, stating that he will go to the SEC, but doesn't state on what grounds. In the same text exchange with me. Mr. Busacca states that I didn't reserve shares for Leo's and I better call him asap. As previously stated, Leo's notes did not call for a reserve of shares.

In the same text message exchange with me, Mr. Busacca, personally threatens me by stating, "You are done". Also, "So is CHIF". What does CHIF have to do with Leo's notes? Why is Mr. Busacca threatening CHIF? This is probably a criminal act, among other things.

In the same text message exchange with me, Mr. Busacca, personally threatens me by stating, "Have to notify your fraud As per money law act." Respectfully, I have no idea what the money law act is. Perhaps plaintiff's counsel can educate myself and the Honorable Court.

Also in the same text message exchange with me, Mr. Busacca, personally threatens me by stating, "You are going to jail" . Respectfully, as I have never been arrested, or charged with a crime in my life, perhaps plaintiff's counsel can clarify why I am going to jail?

Also in the same text message exchange with me, Mr. Busacca states "You could have returned the money but kept it" I had already explained to Mr. Busacca and now the Honorable Court that the money from Leo's went to legitimate business purposes and Leo's knew that in advance.

What plaintiff's counsel no doubt purposely fails to mention to the Honorable Court, is that NSAV repaid Leo's in full, including interest and Leo's has no monetary claims against NSAV. Mr. Busacca knows that as well.

Mr. Busacca concludes this text message exchange with me by stating, "Calling Grover and his lawyer today" Grover of course is the plaintiff and I assume plaintiff's counsel is the lawyer. As this text message exchange between myself and Mr. Busacca occurred on March 16, 2024, which was months before plaintiff requested that Mr. Busacca be appointed Chief Restructuring Officer (CRO) of NSAV, I question if whether this was a scheme planned for months and designed to benefit the plaintiff and Mr. Busacca and harm myself, NSAV and its tens of thousands of thousands of shareholders.

On March 16, 2024, at 23:43 CET, Mr. Busacca sent me a text message which states, "Curt is loyal to me and a long time client". Speaking only for myself personally and only as a shareholder of NSAV and the largest shareholder in terms of voting rights, for someone wishing to be the CRO of NSAV, this statement by Mr. Busacca is more than troubling.

Also in the same text message exchange with me, Mr. Busacca states "I will call Curt tomorrow"

Mr. Busacca doesn't state why he is telling me about Curt's loyalty to him, or why he is calling Curt. As the Honorable Court is aware, my response is made under the penalty of perjury and on that note, I can categorically state and beyond any doubt or dispute, that the Curt that Mr. Busacca is referring to is Curt Kramer. As Mr. Kramer is a very wealthy and powerful person in the securities industry, perhaps Mr. Busacca felt that I would feel threatened if Mr. Kramer was involved in the Leo's matter.

I stated above that I was troubled by Mr. Busacca's statement that Curt's loyalty is to him and that Curt is a long time client of Mr. Busacca. My concern stems from a recent lawsuit by the SEC against Curt Kramer, which can be evidenced by what I paste below from the SEC's website and the related link. This is not the first time that Curt Kramer has been sued by the SEC for alleged securities violations, as plaintiff, plaintiff's counsel and Mr. Busacca are fully aware.

https://www.sec.gov/enforcement-litigation/litigation-releases/lr-25995

"Power Up Lending Ltd., et al.

U.S. SECURITIES AND EXCHANGE COMMISSION

Litigation Release No. 25995 / May 7, 2024

Securities and Exchange Commission v. Power Up Lending Ltd., et al., No. 1:24-cv-03498

(S.D.N.Y. filed May 7, 2024)

SEC Sues Curt Kramer and Three of His Businesses for Acting as Unregistered Securities Dealers"

18) It is my belief that I have proven, beyond any doubt, that it was Mr. Busacca threatened myself personally, NSAV and CHIF and for reasons unknown to me, as Mr. Busacca has no formal relationship with Leo's according to plaintiff's counsel.

I don't know if threaten is the correct word, but yes, I informed Mr. Busacca that I am in the process of checking with law enforcement to see if Mr. Busacca's proven threats against me are a criminal action. We may also inform the SEC. We are definitely filing a complaint today with FINRA (FINANCIAL INDUSTRY REGULATORY AUTHORITY), which oversees U.S. broker-dealers and stockbrokers.

13

19) As plaintiff's counsel states that I have a "checkered and dubious background" and given the proven threats to myself from Mr. Busacca, I feel that I have a legal and moral right to provide evidence on Mr. Busacca's background, which can be evidenced by what I paste below from the FINRA website and the related link.

https://brokercheck.finra.org/individual/summary/2302780

Regulator Statement

HEARING PANEL DECISION RENDERED JANUARY 16, 2009 WHEREIN BUSACCA IS SUSPENDED IN ALL PRINCIPAL CAPACITIES FOR SIX MONTHS AND FINED $25,000 FOR FAILING TO EXERCISE REASONABLE SUPERVISION AND FINED $5,000 FOR PERMITTING HIS FIRM TO EMPLOY AN UNREGISTERED CHIEF COMPLIANCE OFFICER. BUSACCA IS ORDERED TO PAY $2,078.60 IN COSTS. APPEALED TO THE NAC ON FEBRUARY 11, 2009. NAC DECISION RENDERED DECEMBER 16, 2009, WHEREIN THE FINDINGS MADE ARE AFFIRMED AND THE SANCTIONS IMPOSED BY THE HEARING PANEL ARE HELD THEREFORE, RESPONDENT IS FINED $25,000 FOR HIS SUPERVISORY VIOLATION, FINED $5,000 FOR HIS REGISTRATION VIOLATION, ORDERED TO PAY COSTS OF $2,078.60, AND SUSPENDED IN ALL PRINCIPAL CAPACITIES FOR SIX MONTHS. APPEALED TO THE SECURITIES AND EXCHANGE COMMISSION (SEC)ON JANUARY 11, 2010. ON NOVEMBER 12, 2010, THE SEC ISSUED AN ORDER THAT SUSTAINED FINRA'S

DISCIPLINARY ACTION. ON DECEMBER 23, 2010, BUSACCA APPEALED THE SEC'S ORDER TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT. DECEMBER 28, 2011- THE U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT DENIED BUSACCA'S PETITION FOR REVIEW OF THE SEC DECISION. THE SUSPENSION IS IN EFFECT FROM APRIL 16, 2012 THROUGH OCTOBER 15, 2012.

I fully understand that Mr. Busacca's violation and issues with FINRA and/or the SEC, as stated above, are over a decade old and everyone makes mistakes. I even made one myself in 1999. Under normal circumstances, I would never include such a dated violation in a filing in this case. However, given plaintiff's counsel's derogatory personal comments about me and Mr. Busacca's uncalled for and horrendous threats, including personal threats against myself, I felt obligated to show the Honorable Court that Mr. Busacca has not learned from his past mistakes, including this loyalty relationship with Curt Kramer is just another example of that.

Again, and for the reasons stated above, I kindly request that the Honorable Court vacate the attachment order, entered on June 27, 2024, against defendant James A. Tilton only.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

15

Executed this 26th day of July, 2024.

                                                                                _____
                                                                                James A. Tilton