UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

===============================

VIKRAM P. GROVER d/b/a
 "IX ADVISORS" a/k/a "IXA,"

      **Plaintiff,**

      v.

NET SAVINGS LINK, INC., a
 Colorado corporation and formerly
 organized as a Nevada corporation,
WILTON GROUP, LIMITED, as
 registered in the Isle of Man, U.K.,
WILTON UK (GROUP), LIMITED, as
 registered in England and Wales, U.K.,
CHINA FOOD AND BEVERAGE CO.,
 a Colorado corporation, and
JAMES A. TILTON,

      **Defendants.**

      v.

PACIFIC STOCK TRANSFER,
NSAVX, INC., a Wyoming corporation,
JOHN DOE CORP., a/k/a
NSAVX.COM, a Puerto Rican
corporation, and JOHN DOES 1-100,

      **Trustee-Defendants.**

Civil Action No. 1:21-CV-05054
Honorable Mary M. Rowland

**REQUEST FOR HEARING**

**LEAVE GRANTED
ON AUGUST 2, 2024**

===============================

**PLAINTIFF VIKRAM GROVER'S FURTHER SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION TO
APPOINT JOHN BUSACCA AS CHIEF RESTRUCTURING OFFICER (CRO)
AND AS FURTHER OPPOSITION TO DEFENDANT TILTON'S MOTION TO VACATE**

The Plaintiff, Vikram P. Grover d/b/a IX Advisors a/k/a IXA (hereinafter the "Plaintiff," or

"Plaintiff Grover"), respectfully submits his Further Supplemental Memorandum to this Honorable

Court to support his Emergency Motion to Appoint John Busacca as the Chief Restructuring

1

Officer (hereinafter "CRO") of Defendant Net Savings Link, Inc. (hereinafter "NSAV") (hereinafter the "CRO Motion"), and in Further Opposition to Defendant James A. Tilton's (hereinafter "Tilton") Motion to Vacate, and to further detail unfolding events, the obstruction of this Court's Attachment Order and Injunction Order (hereinafter the "Orders"), the inability of the Plaintiff and his counsel to secure the assets and shares of the Defendant, and the increasing volatility as to Defendant NSAV and Tilton. *See, e.g.,* Dkt. No. 177. By this Supplemental Memorandum, the Plaintiff respectfully requests a hearing, on an <u>emergency basis</u>, on the pending Motions on July 24, 25 or 26, 2024, or on such time and date that may be convenient for this Court.

First and foremost, Defendant Tilton is the President and control shareholder of NSAV, which has failed to comply with the Plaintiff's Orders. By his own admission in his recently filed Response to Plaintiff's Opposition to Defendant James A. Tilton's Motion to Vacate, Tilton's "sole ownership in NSAV consists of 40 million Preferred A shares . . . . These shares make [him] the majority shareholder of NSAV in terms of voting rights." *See* Dkt. No. 182 p. 5. Despite this fact, Tilton, NSAV, and any agents, officers, or directors thereof have completely ignored several provisions of the Plaintiffs Orders. For example, from the Injunction Order, Tilton and NSAV have failed to:

> "identify and describe, in complete detail, with all relevant information, writing and under oath, by an authorized officer of each such Defendant and Enjoined Defendant, the custodian, location amount, and all complete details, data and information, as to any and all assets, monies, credits, rights, contracts and/or things, tangible and/or intangible, that have been removed, sold, encumbered, hypothecated, conveyed, transferred, assigned and/or moved, directly or indirectly, from the Defendants and the Defendant-Agents since the commencement of this litigation;" and

> "identify and describe, in complete detail, with all relevant information, writing and under oath, by an authorized officer of each such Defendant and Enjoined Defendant, the custodian, location amount, and all complete details, data and information, as to any and all shares of common stock and/or other classes of stock of each Defendant and Enjoined Defendant, as held from September 23, 2021 to the date of the Order, and deliver any and all documentation regarding, relating or supporting the same, by Defendant NSAV and as

certified, under oath and by the pains and penalties of perjury, by the Chief Executive Officer of Defendant NSAV." *See* Dkt. No. 168 p. 4.

Given the utter lack of transparency from Tilton and NSAV, it is unknown, though likely, whether the Defendants have failed to comply with other provisions of the Plaintiff's Orders so as to avoid satisfying the any Judgment against NSAV and thereby defraud the Plaintiff.

Moreover, Tilton's checkered and dubious background continues to be apparent in this action as he has recently threatened Mr. Busacca, the subject of the Plaintiff's CRO Motion, with entirely baseless litigation in an attempt to, seemingly, frighten Mr. Busacca away from becoming the CRO of NSAV. Indeed, on or about July 23, 2024, Tilton sent an e-mail to Mr. Busacca, attached, restated and incorporated by reference as **Exhibit 1**, as well as a letter regarding potential litigation, attached, restated and incorporated by reference as **Exhibit 2**. In the email communication, Tilton attached a text message exchange between himself and Mr. Busacca, attached, restated and incorporated by reference as **Exhibit 3**, which plainly shows that, as part of a deal between Tilton, on behalf of NSAV, and Leo's Capital, an acquaintance of Mr. Busacca, Tilton fraudulently failed to issue shares of NSAV to Leo's Capital after receiving money from Leo's Capital. *See* **Exhibit 3**. Apparently as part of some scheme, Tilton stated that he did not return the money to Leo's Capital because "the money I didn't keep. It went to Peter Chun's people at Silverbear Capital . . . . When the note was due, how could I repay it, the company had no money then." *See id.* p. 2. Understandably, Mr. Busacca responded by saying that he would need to notify the relevant authorities for such fraudulent activity, and it is highly worrisome for the Plaintiff that NSAV's control shareholder would be willing to engage in such activity.

Nevertheless, in Tilton's email correspondence to Mr. Busacca, Tilton claims that his and NSAV's attorneys "are looking into usury violations, unjust enrichment and operating as an unregistered broker-dealer" and will be discussing this matter with law enforcement authorities.

3

*See* **Exhibit 1**. However, as this Court is well aware, both NSAV and Tilton are unrepresented by counsel, and such threats are blatantly false and toothless. Tellingly, the letter regarding potential litigation was not drafted by an attorney, and was instead signed by Tilton himself. *See* **Exhibit 2** p. 2. These intimidation tactics by Tilton, as President and control shareholder of Defendant NSAV, are unacceptable and are a clear indication of the high likelihood of fraudulent activity that the Defendants have taken or will take to avoid satisfying the Plaintiff's Default Judgment or any judgment entered thereafter.

For the foregoing reasons, and for the reasons expressed in the Plaintiff's Supplemental Memorandum filed with this Court on July 18, 2024, the Plaintiff respectfully requests that a hearing in the coming days as to Plaintiff's Motion to Appoint John Busacca as the Chief Restructuring Officer of NSAV is in order so as to reign in the Defendant's dishonest and deceitful corporate misdeeds. *See* Dkt. No. 180.

Dated: August 14, 2024

Respectfully submitted,
PLAINTIFF, Vikram P. Grover,

By his Attorneys,

*/s/ Philip M. Giordano*
Philip M. Giordano, Esq. (admitted *pro hac vice*)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

## **CERTIFICATE OF SERVICE**

      I, Philip M. Giordano, do hereby certify that on the 14th day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's Further Supplemental Memorandum, with **Exhibits**, in support of his Emergency Motion for Appointment of John Busacca as Chief Restructuring Officer for Defendant Net Savings Link, Inc. and in Further Opposition to Defendant Tilton's Motion to Vacate, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all counsel and parties of record.

Dated: August 14, 2024                                    */s/ Philip M. Giordano*
                                                                          Philip M. Giordano

# Exhibit "1"

----- Forwarded Message -----
**From:** James Tilton <jamtilton@yahoo.com>
**To:** John Busacca <john.busacca@yahoo.com>
**Sent:** Tuesday, July 23, 2024 at 07:28:13 AM EDT
**Subject:** URGENT: NSAV

Attention: John Brian Busacca III

Dear Mr. Busacca,

Please see the attached letter regarding the destruction of all forms of communications between yourself and various parties.

I have also attached a text message exchange between yourself and myself regarding Leo's New Company, LLC./Miguel Santana (Leo's) and their NSAV notes and related shares. I don't have a clue why this is any of your business, but I suspect you do. I did not initiate this text message exchange, as you are aware.

The bottom line is that there were threats from you against myself and companies that I control and Leo's received a lot of free trading NSAV shares and made a lot of money. Perhaps ten times their original $60K investment in NSAV.

I am not an attorney and I'm not sure if any securities laws, civil laws, criminal laws, ect., were violated here, but extortion is a very serious crime. Of course, I'm not accusing you of being guilty of extortion.

Our attorneys are also looking into usury violations, unjust enrichment and operating as an unregistered broker-dealer, in regards to the Leo's shares.

NSAV's attorneys will be discussing this matter with law enforcement authorities in New York and Florida and possibly the SEC and FINRA.

I will leave it up to NSAV's attorneys to decide if any of the attachments will be submitted to the Illinois Court in the current NSAV vs. Grover case.

Of course, I am always available to discuss a mutually beneficial settlement.


Thank you.
Kind Regards,


James A. Tilton
President
NSAV

# Exhibit "2"

**NET SAVINGS LINK, INC.**
**2374 Route 390, P.O. Box 609**
**Mountainhome, PA 18342**

July 23, 2024

Re: Potential Litigation

Attention: John Brian Busacca III

Dear Mr. Busacca,

URGENT -- PLEASE READ THE FOLLOWING MESSAGE REGARDING POTENTIAL LITIGATION

PRIVILEGED AND CONFIDENTIAL

We are currently investigating a number of claims on behalf of Net Savings Link, Inc. (NSAV). It appears that a number of state and federal securities laws may have been violated based on recent trading activity. Our investigation is ongoing .

 In connection with these Claims, we write to advise you ("You") of your legal obligation to preserve relevant documents and data in this matter and enlist your assistance in this regard.

Until further notice, You may not destroy, delete or alter any documents, data, or other information (including metadata of electronic documents) in your possession, custody and/or control whether it be on paper or stored electronically (including emails), containing information about or relating to, directly or indirectly, any of the following:

Your complete files relating to the Claims, including but not limited to any correspondence (including without limitation emails), disclosures, contracts, affidavits, invoices, statements, receipts, worksheets, or other documents concerning, created in connection with, relating to, or arising out of any work done by you or your firm concerning the Claims.

Until further notice from me, there will also be a hold on all normal document destruction procedures that may relate to or contain this information.

Page 2

To be a little more specific, you must preserve all forms of communications with, but not limited to, myself, NSAV, Quick Capital, LLC., Eilon Natan, Ari Gold, Alpine Securities Corporation, Scottsdale Capital Advisors, Pacific Stock Transfer, Billy Miller (of Pacific Stock Transfer), Vikram P. Grover, IX Advisors, Philip M. Giordano, Esq., Giordano & Company, P.C., REED & GIORDANO, P.A., Curt Kramer, Power Up Lending Group, Ltd., Geneva Roth Remark Holdings, Inc., 1800 Diagonal Lending, LLC, Miguel Santana and Leo's New Company, LLC.

Thank you in advance for your cooperation in these efforts because it is very important for you to strictly adhere to the foregoing directive to preserve all documents. Failure to take every reasonable step to preserve this information could result in extreme penalties against you.

Thank you.

Kind Regards,

*James Tilton*
James A. Tilton
President

# Exhibit "3"



**John Busacca Sr. Cell.**

Sat, 16 Mar at 00:57

> Heard from my son you are fucking over Leo's Capital for their shares? If this is true I'm done with you
> Need to know asap
> Not happy if true
> Tell me I'm wrong?

Sat, 16 Mar at 20:31

> I have to go to SEC on Monday AM unless I hear from you

**About what?**

> You didn't reserve shares for Leo's??????

> Better call me asap

> I am not an expert on notes, so when they gave me a note with no share purchase agreement (SPA) or a reserve letter for the TA, I didn't question it. Their lawyers drafted the documents, not my side. Their was no



> You are going to be in jail
> You could have returned the money but kept it
> You also kept asking for MORE money
> Calling Grover and his lawyer

> Calling Grover and his lawyer today

The money I didn't keep. It went to Peter Chun's people at Silverbear Capital to fund the NSAV Crypto Exchange in the summer of 2021. Miguel knew that. This is all disclosed. When the note was due, how could I repay it, the company had no money then. Their note was 6 months before the Grover lawsuit.

Curt had no problem funding two new notes and another buying restricted shares in August 2021, at the same time he had an existing note. I don't think Curt's lawyers would let him do anything illegal. Also, neither of us want Curt to have a problem. I

  
      



**John Busacca Sr. Cell.**

> I am not an expert on notes, so when they gave me a note with no share purchase agreement (SPA) or a reserve letter for the TA, I didn't question it. Their lawyers drafted the documents, not my side. Their was no mention of share reserve in the note. At that time the shares were on the way .147 and the Reg A they funded was at .006 and they had exclusive or first rights on the Reg A if I remember correctly. The Reg A was their benefit for the note, but sadly the SEC never approved.

> Out now. Will call you soon.

You are done

So is CHIF
Have to notify your Fraud
As per money law act

What fraud? I am very confused.

You are going to be in jail
You could have returned the



John Busacca Sr. Cell.

Curt had no problem funding two new notes and another buying restricted shares in August 2021, at the same time he had an existing note. I don't think Curt's lawyers would let him do anything illegal. Also, neither of

> us want Curt to have a problem. I was 100% open with Miguel on a long call and he agreed to fund more.

Sat, 16 Mar at 23:43

Curt is loyal to me and a long time client
You screwed up royally

> Respectfully John, when I met Curt in 2016, he had $240K in dead notes and a dead NSAV. I got him paid and I'm sure doubled his money. I did the same with two successive notes. He may hate me like everyone else, but he made good money with me and this business is all about the money. Curt has never complained about me directly to



**Sat, 16 Mar at 23:43**

Curt is loyal to me and a long time client
You screwed up royally

Respectfully John, when I met Curt in 2016, he had $240K in dead notes and a dead NSAV. I got him paid and I'm sure doubled his money. I did the same with two successive notes. He may hate me like everyone else, but he made good money with me and this business is all about the money. Curt has never complained about me directly to me. My take is he wants to stay neutral because he has also funded and I assume made money with Grover. I can't fault



him for that. If Curt has any issues with me, he will let me know. Thanks. James

I will call Curt tomorrow
Good night