IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VIKRAM P. GROVER d/b/a "IX ADVISORS" a/k/a "IXA"** <br><br> **Plaintiff** <br><br> v. <br><br> **NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Walkes, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and JAMES A. TILTON** <br><br> **Defendants** | No. 1:21-cv-05054 <br><br> Hon. Mary M. Rowland |

## WFD CAPITAL LLC'S MOTION TO INTERVENE

Pursuant to this Court's Order dated August 8, 2024 (ECF No. 193), WFD Capital LLC ("WFD Capital" or "WFD") hereby files this motion to intervene.

## INTRODUCTION

WFD respectfully moves this Court for an order permitting WFD to intervene in this action and to be heard regarding the appointment of a Chief Restructuring Officer ("CRO") and/or receiver, and to seek relief from the attachment order issued by this Court in order to allow WFD access to its remedies under law, and any matters ancillary to the extent necessary. WFD holds an unsatisfied money judgment against two of the Defendants in this action: Net Savings Link, Inc., ("NSAV") and China Food and Beverage Company, in the principal amount of $921,925.00, jointly and severally. This judgment was entered in the Court of Common Pleas of Montgomery County, Pennsylvania, Case No. 2024-14088 on July 7, 2024. The judgment is

1

also for specific property rights in a convertible secured promissory note owed by NSAV in the amount of $2.5 million dollars (the "Convertible Note" or "Note"). The Convertible Note was issued on November 30, 2023, and matures on November 30, 2024.

The terms of the Note allow its holder the right to convert its debt into shares of stock of NSAV. However, because this Court issued an attachment order at Plaintiff's request on June 26, 2024, thereby effectively freezing all NSAV's assets (ECF Nos. 167, 168), WFD is presently unable to collect on its judgment and realize its remedies under the Note against NSAV by following the steps to convert the debt into shares of NSAV stock, to the extent necessary to fully satisfy WFD's judgment. This Convertible Note may be WFD's only way to receive payment on its judgment against NSAV, as WFD is not aware of the location of any of NSAV's cryptocurrency holdings or other assets that it could pursue to satisfy the judgment.

WFD Capital wishes to intervene in this action to ensure that its rights are protected, because it is a judgment creditor and holder of significant property rights in a Convertible Note executed by NSAV. Intervention is driven by pragmatic considerations and motions to intervene must be resolved "with an eye toward the 'elasticity' and 'flexibility' that [Federal] Rule [of Civil Procedure] 24 contemplates." *Pennsylvania v. President of United States of Am.*, 888 F.3d 52, 59, 62 (3d Cir. 2018). Such a pragmatic approach is particularly appropriate here, where WFD seeks to intervene not to assert claims or defences, but simply to ensure that the parties and the Court do not distribute assets without the input of a key security interest holder, and to enable WFD to protect its interests in a Note that was executed and predates the judgment entered on December 5, 2023. Applying this framework and recognizing both "the 'practical consequences' of the litigation" for WFD and "the highly fact-bound nature of requests to intervene," *id.*, the Court should grant this motion and allow WFD to intervene on the terms described herein.

2

WFD respectfully asks that the Court treat it as a party to this action and accord it all accompanying rights to enable WFD to monitor, provide meaningful input on, and ultimately participate in, any receivership that this Court may order in the future. WFD also contemplates filing a motion for relief from the injunction order, which currently prevents WFD, a senior judgment creditor, from collecting on its judgment and Convertible Note. These proceedings will have a direct effect on WFD's rights and interests, and fundamental fairness mandates that WFD be allowed to participate in this case. Accordingly, WFD's rights as an intervenor under Rule 24(c) include, at minimum: (1) the right to be notified of, and to participate in, future proceedings in this matter (including on the issue of appointing a receiver); (2) the right to receive documents relevant to NSAV's finances in aid of execution; (3) the right to seek relief from the Court's attachment order freezing NSAV's shares; and (4) the right to appeal.

## BACKGROUND

Pennsylvania Rule of Civil Procedure 3101(b) provides that a judgment creditor may attach any entity deemed to have possession of the defendant's property by virtue of owing a debt to the defendant, having the defendant's property in his or her possession or control, holding as fiduciary property in which the defendant has an interest, holding legal title to the property of the defendant, or owning or possessing real property subject to a mortgage, judgment, or other lien in which the defendant has an interest. Sums owing from banks to deposit customers are the classic intangible personal property assets subject to attachment execution. Other examples include debts owing for goods sold and delivered, or debts owing for services performed. Under Pennsylvania law, service of a Writ of Execution attaches a judgment debtor's property in the possession of a garnishee. *See* PA R.C.P. 3111(b). The garnishee is also served with interrogatories in attachment, pursuant to PA R.C.P. 3144(a), which ask the garnishee if it owes a

3

debt to or is holding property of the defendant. The garnishee must answer the interrogatories. The procedure under Pennsylvania law between a judgment creditor and a garnishee is the same as though interrogatories were a complaint and the answers were an answer in a civil action. Pa.R.C.P. 3145(a); *Paine Webber, Inc. v. Devin*, 658 A.2d 409 (Pa.Super. 1995).

PA R.C.P. 3146(b)(1) also permits further proceedings against the garnishee, as here:
> "[T]he Prothonotary, on praecipe of the plaintiff, shall enter judgment against the garnishee for the property of the defendant admitted in the answer to interrogatories to be in the garnishee's possession, subject to any right therein claimed by the garnishee, but no money judgment entered against the garnishee shall exceed the amount of the judgment of the plaintiff against the defendant together with interest and costs. The entry of judgment shall not bar the right of the plaintiff to proceed against the garnishee as to any further property or to contest any right in the property claimed by the garnishee."

PA R.C.P. 3148 also states that a judgment against a garnishee is itself an independently enforceable judgment allowing execution against the garnishee:

> **(a)** A judgment entered against the garnishee under Rules 3146(b) or 3147, shall
>   **(1)** be in the form of a money judgment if the garnishee owes a debt to the defendant;
>   **(2)** specify any other property of the defendant in the possession of the garnishee; and
>   **(3)** be in the form of a charging order in the case of attachment against a partnership interest.
> **(b)** If a money judgment is entered against the garnishee the plaintiff may have execution against the garnishee generally for the amount of the judgment.
> **(c)** If judgment is entered against the garnishee for specific property of the defendant determined to be in the possession of the garnishee, the plaintiff may have execution against the property. If the garnishee fails to make the property available to the sheriff for execution, the plaintiff upon leave of court may have execution against the garnishee generally for the amount of the plaintiff's judgment against the defendant, together with interest and costs, unless the garnishee shows good cause for nonproduction of the property, or that its value is less than the amount of plaintiff's judgment, interest and costs, in which event judgment shall be entered for the lesser amount.

## LAW AND ARGUMENT

**A. Judgment has been entered in favour of WFD against NSAV as garnishee, giving WFD the right to intervene under Rule 24.**

As background, WFD held a $921,925 judgment against Active World Holdings Inc. and Alfonso Knoll.[1] On May 23, 2024, WFD obtained a Writ of Execution in Montgomery County,

---

[1] Active World Holdings Inc. is not a party to this action. This entity declared Chapter 11 Bankruptcy on August 8, 2024, and there is an automatic stay in place currently preventing any creditors from enforcing judgments against

Pennsylvania, naming NSAV and China Food and Beverage Company ("CHIF") as Garnishees. (Exh. 1)., a copy of the Writ. WFD also filed Interrogatories in conjunction with the Writ, as per Rules 3144 and 3145. On May 29, 2024, the Writ and Interrogatories were served upon the Garnishees' agent. (Exh. 2). This service attached all property of judgment debtors in Garnishee's possession. PA. R.C.P. 3111(b). The attachment effectively created a "judicial lien" under 11 U.S.C. § 101(36), meaning a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *In re The Salem Baptist Church of Jenkintown*, 455 B.R. 857, 865 (E.D. Pa. 2011) (observing that judicial lien arises upon the service of a writ of garnishment). Accordingly, WFD obtained a judicial lien on the Note on May 29, 2024.

On July 3, 2024, the Garnishee NSAV's Answers to Interrogatories were filed with the Pennsylvania Court, in which NSAV stated "Garnishee confesses that it owes Defendant, Active World Holdings Inc., a two and one half million dollar ($2,500.000) one year, secured, convertible promissory note, bearing an interest rate of 8% per annum." (Exh. 3, NSAV's Answers to Interrogatories). On July 3, 2024, the Garnishee CHIF's Answers to Interrogatories were filed with the Pennsylvania Court, in which CHIF stated "Garnishee confesses that it owes Defendant Active World Holdings, Inc a one million U.S. dollar ($1,000,000.00) one year, secured, convertible promissory note, bearing an interest rate of 8% per annum." (Exh. 4, CHIF's Answers to Interrogatories). Both promissory notes predate the instant judgment here.

On July 7, 2024, pursuant to PA. R.C.P. 3146 and 3148, WFD filed a Praecipe to Enter Judgment against the Garnishees, NSAV and CHIF, upon admission, for $921,925.00, and the

---

Active World Holdings. However, WFD Capital is not seeking to pursue the assets of Active World Holdings Inc. by this Motion. Instead, WFD seeks here to pursue its rights under the Convertible Note and its judgment against NSAV only, which stands independently. Moreover, the individual debtor, Alfonso Knoll, has not declared bankruptcy and is jointly and severally liable for the judgment.

specific property rights of the Defendants in NSAV's possession, to wit: all of the Defendants' rights to convert the Promissory Note into equity in NSAV, to the extent necessary to satisfy the judgment. Pursuant to PA Rule 236, the Montgomery County Prothonotary served notice of entry of this judgment to both NSAV and CHIF. Exhibit 5 attached hereto reflects WFD's judgment against NSAV and CHIF certified from the records of the Court and the docket entries incidental thereto. WFD requests that the Court take judicial notice of these documents.

As such, WFD now owns judgments giving it the specific property rights in the Convertible Notes and allowing WFD to convert those Notes into equity in NSAV and CHIF, to satisfy its judgment of $921,925.00 together with post-judgment interest. These judgments, which are legally untethered to the underlying judgment, have not been vacated, stayed, appealed, or otherwise invalidated and remain enforceable and unsatisfied as of this date.

B. *This Court must permit intervention to protect WFD's interests and judgment.*

This Court has already expressed concerns regarding the veracity and truthfulness of NSAV's financial reports and ability to satisfy the default judgement in this matter, not to mention WFD's own judgment. NSAV reported $43.00 in cash in the bank in its most recent quarterly filing dated August 19, 2024. (Exh. 6). However, it did report over $11.69 *billion* in revenue and $11.75 *billion* in "cryptocurrency holdings," without identifying in greater detail what those cryptocurrency holdings consist of, nor disclosing their nature and contents, despite numerous orders of this Court ordering them to do so. (*Id.*).

Intervention is especially appropriate where, as here, there is evidence that NSAV (and CHIF) may be painting a less than truthful picture of their assets and ability to satisfy both the Plaintiff's judgment in this matter, as well as WFD's far smaller and senior judgment. However,

6

crediting NSAV's financial statements submitted to this Court and appropriate regulators, those statements represent assets far in excess to those needed to satisfy both judgments.

WFD's rights under the Note, which was executed *prior to* the judgment in this matter, and corresponding judgment against NSAV cannot be exercised because of the Court's injunction entered in this action on June 26, 2024, attaching all of NSAV's assets. (ECF Nos. 167, 168). WFD therefore cannot presently proceed with a Section 3(a)(10) process, or other processes to which it is entitled in order to have NSAV issue WFD equity shares which WFD can then sell on the open market and apply to WFD's judgments against NSAV, CHIF, and the underlying debt owed by Mr. Knoll. Permitting intervention would permit WFD to do that.

WFD Capital, with its security interest in the Note and its judgment against NSAV, not to mention changes to its interests if a receiver is appointed, entitle WFD to intervene as of right under Rule 24(a)(2). These same interests, coupled with the public interests in preserving judicial resources and in ensuring that WFD Capital may recover on its judgment, militate strongly in favour of permissive intervention under Rule 24(b) as well.

C. *WFD is entitled to intervene as of right.*

Permitting WFD to intervene at this stage of the proceedings will serve judicial economy and will benefit all parties by ensuring that WFD gets paid on its judgment. Rule 24(a)(2) affords a non-party the right to intervene in litigation upon proof of four elements: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994). Far from prescribing a rigid test, the Third Circuit has recognized that "pragmatism is a substantial factor that must be

7

considered"; "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970, 972 (3d Cir. 1998). And, in light of these standards, the question of intervention is a fact-intensive one. *Id.* The same analysis applies in motions to intervene in proceedings to attach and execute on property pursuant to Federal Rule of Civil Procedure 69. *See, e.g.*, *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 529, 532–33 (S.D.N.Y. 2001) (granting bank's motion to intervene in judgment-execution proceedings). Each of the requisites of mandatory intervention under Rule 24(a)(2) is amply satisfied here.

*First*, there can be no genuine dispute that WFD's motion is timely. Timeliness depends on four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013). Here, the Court already has used its discretion to invite WFD to file the instant motion. And WFD has fully complied with the Court's invitation: WFD has filed this Motion within the timeframe directed by the Court. Moreover, the key timeliness factors clearly weigh in favour of intervention. WFD obtained its judicial lien on May 29, 2024 for a senior promissory note, and obtained a judgment on July 7, 2024. The Court's injunction order attaching NSAV's assets was entered June 26, 2024, and the Plaintiff's motion for a receiver is still pending. Likewise, WFD promptly intervened upon learning that its interests were imperilled.. Simply put, there is no delay, let alone a lengthy one. This motion is unquestionably timely.

*Second*, WFD has a "significantly protectable" interest in the proceedings. Due regard for the principles of pragmatism and flexibility underlying Rule 24(a)(2) compels the conclusion that

8

WFD possesses an interest in this action that gives rise to mandatory intervention. "To justify intervention as of right, the applicant must have an interest 'relating to the *property or transaction* which is the subject of the action' that is 'significantly protectable.'" *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (cleaned up). An intervenor "must therefore demonstrate that its interest is 'specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.'" *Pennsylvania*, 888 F.3d at 58. This is a flexible and fact-intensive inquiry. *Id.*

While a "mere economic interest in the outcome of the litigation" might not support the right to intervene, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top Condo. v. Master*, 72 F.3d 361, 366 (3d Cir. 1995). The same is true of an intervenor's interest in a specific contract, in specific property, or even in a specific legal right or policy outcome. *Pennsylvania*, 888 F.3d at 58. Our Seventh Circuit has held that a shareholder was entitled to participate as an intervening party in an action where the shareholder's value was affected and the shareholder had a claim in common with the main action. *Alcaraz v. Akorn, Inc.*, 99 F.4th 368 (7th Cir. 2024). Where interests may be jeopardized by litigation, the law sensibly affords a right of intervention. *See Pennsylvania*, 888 F.3d at 58; *Mountain Top*, 72 F.3d at 368 (condominium owners in litigation between condominium association and builders); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 12-193-LPS, 2014 WL 4445953, at *3 (D. Del. Sept. 8, 2014) (manufacturer in patent-infringement litigation).

WFD plainly has a qualifying interest in these proceedings. Whether framed in terms of the "property" or the "transaction" that is the "subject of this action," FED. R. CIV. P. 24(a)(2), WFD's security interest in the Note and its judgment against NSAV bears the necessary direct relationship to this proceeding. The "property" that is "the subject of this action" is NSAV's

9

common stock, and the corresponding "transaction" is the execution of WFD's rights to receive stock in lieu of payment on its Note. As the holder of a judgment interest in the Note, WFD has a significant security interest NSAV's principal asset: its common stock, which is the best and possibly only method that will allow WFD to recover its judgment. The issuance of securities *necessarily* implicates WFD's interests. Accordingly, WFD possesses an interest in a specific fund or specific property that will be directly affected by the proceeding, and that interest is at least as strong as those economic and policy interests endorsed by other courts.

To conclude otherwise would require the Court *to* adopt a restrictive view of the type of interest required for intervention, contrary to the express policy of flexibility. Moreover, any injunction attaching NSAV's assets, including its common stock, would affect WFD's interests in a manner similar to a change in control transaction, which undoubtedly would give rise to a protectable interest. *See In re Chemed Corp. S'holder Derivative Litig.*, No. 13-1854, 2017 WL 1712530, at *10 (D. Del. Apr. 25, 2017) (granting shareholder's motion for mandatory intervention in derivative suit). Intervention is informed as a practical matter of the facts here to ensure all of NSAV's creditors are compensated when NSAV has the ability to do so.

Moreover, WFD's interests will not only *will affect* these proceedings but also *will be affected by* these proceedings. For example, WFD has the right to collect its debt from NSAV's assets without seeking shares. If WFD avails itself of this or any similar remedy, such remedies will necessarily affect any assets remaining for Mr. Grover to recover on *his* judgment against NSAV. Equally, the attachment and sale of NSAV's holdings by Mr. Grover would interfere with WFD's judgment against NSAV. Therefore, WFD's interests are "specific to [it]," are "capable of definition," and "will be directly affected in a substantially concrete fashion by the relief sought" in this action. *Pennsylvania*, 888 F.3d at 59.

*Third*, WFD's interests may be affected or impaired, as a practical matter, by the disposition of this action. For largely the same reasons articulated above, the conduct of these proceedings may imperil WFD's interests. This is not an onerous showing; WFD need only "demonstrate that [its] interest *might* become affected or impaired, as a practical matter, by the disposition of the action in [its] absence." *Mountain Top*, 72 F.3d at 368. Again, pragmatism is the touchstone of this inquiry. "Because [the Court's] focus is on the '*practical consequences*' of the litigation, [the Court] 'may consider any significant legal effect on the applicant's interest,' including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention." *Pennsylvania*, 888 F.3d at 59 (cleaned up). It is not necessary that intervention constitute the only possible avenue of relief, rather, only that intervention, as a matter of judicial economy, favours intervention over subsequent collateral attacks.

As detailed above, WFD Capital obtained a judgment against NSAV, including for specific property rights under the Note, entitling WFD to issuance of NSAV stock in lieu of repayment of the debt, to the extent necessary to satisfy WFD's judgment. WFD's contractual rights and remedies under the Note are *sure* to be affected by the attachment of NSAV's common stock provided by this Court's injunction among the other proceedings herein. This is especially true in light of the pragmatic focus of Rule 24(a)(2); it is beyond serious dispute that an injunction preventing shares of stock from being issued, will and does have "practical consequences" for WFD. *See Pennsylvania*, 888 F.3d at 59. Further, both the immediacy of WFD's interests and the certainty of their impairment suffice to justify intervention under settled law. *See id.* at 59–60 (litigation with "the potential" to result in an adverse legal holding constituted sufficient evidence of possible impairment); *Mountain Top*, 72 F.3d at 322 (possibility of settlement following mediation made out potential impairment).

11

*Fourth* and finally, WFD's interests are not adequately represented by any existing party. The course of these and related proceedings dispel any possible doubt that WFD's interests can only be represented adequately by WFD alone. "This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest "*may be*" inadequate.'" *Pennsylvania*, 888 F.3d at 60 (quoting *Mountain Top*, 72 F.3d at 368). Neither Plaintiff nor Defendant will adequately represent WFD's interests.

Indeed, Mr. Grover has obtained a massive judgment for over $57 million and has made it clear that he is intent on collecting his judgment, up to seizing any assets or otherwise absorbing the entire company. WFD seeks to collect its judgment as well. However, NSAV is resisting those efforts and has not complied with court orders to produce financial information to Plaintiff. To that end, neither Plaintiff nor NSAV have any interest in assisting WFD in receiving payment on its judgment. *See Mountain Top*, 72 F.3d at 323 (condominium owners' interests were inadequately represented by condominium association). To the extent that Plaintiff asserts a shared interest with WFD in "maximiz[ing] the value of NSAV for the future," this is no reason to presume adequate representation, much less to deny WFD any involvement in these critically important processes which might otherwise conclude to WFD's detriment. Under these circumstances, WFD has carried its "minimal" burden" to show inadequate representation, and the motion should be granted. *Mountain Top*, 72 F.3d at 323.

    D. *The court, in its discretion, should allow WFD to intervene permissively.*

The foregoing analysis equally justifies a favourable exercise of the Court's discretion in granting WFD's request for permissive intervention. Under Rule 24(b)(1)(B), the Court "may permit anyone to intervene who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Intellectual Ventures*, 2014 WL 4445953, at *2 (quoting FED.

R. CIV. P. 24(b)(1)(B)). The decision to grant *permissive* intervention, as the doctrine's name suggests, is within the discretion of the district court. And that discretion is considerable. *Pennsylvania*, 888 F.3d at 57 (orders on permissive intervention are "'highly discretionary' decisions" into which appellate courts "are more reluctant to intrude"). "The central consideration for the exercise of discretion is whether allowing intervention will cause 'delay or prejudice.'" *Getty Oil Co. v. Dep't of Energy*, 117 F.R.D. 540, 549 (D. Del. 1987).

As detailed above, WFD has a significantly protectable interest in these proceedings, asserts a claim to assets bearing directly on the property or transaction that is the subject of this action, and seeks involvement in the remedy and judgment collection phases alone. And, as that phase is barely under way, intervention will cause no delay or cognizable prejudice. *See King v. Governor of the State of N.J.*, 767 F.3d 216, 246 (3d Cir. 2014) (affirming permissive intervention and rejecting as "not convincing" the plaintiffs' argument that "they are unduly prejudiced by having to respond to 'superfluous arguments'"). To the contrary, allowing WFD to intervene at this stage will only serve the interests of all parties.

Again, bearing in mind the "'elasticity' and 'flexibility' that Rule 24 contemplates," *Pennsylvania*, 888 F.3d at 59, 62, a host of practical considerations weigh in favour of intervention. First and foremost, WFD's interest in the Note and its judgment, as well as its remedies under the Note, give it a significant stake in these proceedings. It would defy common sense and basic fairness to allow one judgment creditor to recover his judgment but block an equally-deserving judgment creditor as is the case here – WFD, from participating in a recovery of its lawful judgment and proceedings that will necessarily affect its own recovery.

As a practical matter, proceeding in WFD's absence would only invite *post hoc* litigation and needlessly waste judicial resources. If nothing else, intervention would avoid any appearance

of unfairness that otherwise would result from handing the reins to a singular judgment creditor who has his own interests at heart and is not otherwise obligated to respect or advance WFD's interests. Simply put, Mr. Grover will not protect WFD's rights on his own accord, nor is he required to. Only WFD will be able to adequately protect and advance WFD's rights to recover on a Note that was issued on November 30, 2023, prior to when Mr. Grover's judgment was even rendered. The Court unquestionably has an interest in ensuring the orderly distribution of available assets for creditors operates in a fair and just manner. Allowing WFD to participate in these proceedings will ensure its rights are protected. For all of these reasons, the Court should avail itself of its broad discretion to grant permissive intervention to WFD. *See Intellectual Ventures*, 2014 WL 4445953, at \*3 (finding both mandatory and permissive intervention appropriate and granting motion to intervene).

## **CONCLUSION**

For the foregoing reasons, WFD Capital respectfully requests that the Court grant this motion and permit it to intervene as of right and/or permissively in the appointment of a receiver, for the purposes of seeking relief from the injunction, and for other such aspects of the judgment collection process and this litigation appurtenant thereto. As set out in the attached proposed order, WFD Capital requests that it be granted all of the rights attendant to party status, including but not limited to: (1) the right to be notified of, and to participate in, future proceedings in this case (including, without limitation, the right to participate in any appointment of a receiver processes); (2) the right to seek relief from the injunction entered on June 26, 2024; (3) the right to receive discovery of any financial documents produced by NSAV; and (4) the right to appeal from any adverse decisions, among others not specifically enumerated but of the same type and manner.

Dated: August 22, 2024

                                           */s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
N.D. Ill Gen. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Proposed Third Party Intervenor,*
*WFD Capital LLC*

## Certificate of Service

The foregoing document has been filed electronically, is available for viewing and downloading from the ECF system, and has been served on all parties of record via electronic service through the ECF system on August 22, 2024.

                                           */s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
N.D. Ill Gen. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Proposed Third Party Intervenor,*
*WFD Capital LLC*