## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

```
===============================
                               :
VIKRAM P. GROVER d/b/a          :
  "IX ADVISORS" a/k/a "IXA,"     :
                               :
        Plaintiff,              :
                               :
        v.                      :
                               :
NET SAVINGS LINK, INC., a       :
  Colorado corporation and formerly :
  organized as a Nevada corporation, :
WILTON GROUP, LIMITED, as       :
  registered in the Isle of Man, U.K., :
WILTON UK (GROUP), LIMITED, as  :
  registered in England and Wales, U.K., :
CHINA FOOD AND BEVERAGE CO.,    :
  a Colorado corporation, and    :
JAMES A. TILTON,                :
                               :
        Defendants.             :
                               :
        v.                      :
                               :
PACIFIC STOCK TRANSFER,         :
NSAVX, INC., a Wyoming corporation, :
and JOHN DOE CORP., a/k/a        :
NSAVX.COM, a Puerto Rican        :
corporation,                    :
                               :
        Trustee-Defendants.     :
                               :
===============================
```

Civil Action No. 1:21-CV-05054

REQUEST FOR HEARING
ON AN EMERGENCY BASIS
ON SEPTEMBER 4, 2024

## PLAINTIFF VIKRAM P. GROVER'S RENEWED EMERGENCY
## MOTION FOR ENTRY OF FINAL JUDGMENT AGAINST DEFENDANTS
## WILTON GROUP, LIMITED, WILTON UK (GROUP), LIMITED, AND
## CHINA FOOD AND BEVERAGE CO. PURSUANT TO FED. R. CIV. P. 54(b)

The Plaintiff, Vikram P. Grover d/b/a IX Advisors a/k/a IXA (hereinafter the "Plaintiff," or

"Plaintiff Grover"), in accordance with the Court's Minute Entry and Order, dated August 16, 2024

(Dkt. No. 206)(hereinafter the "August 16th Minute Entry"), and pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, respectfully submits his Renewed Motion for Entry of Final Judgment, on an <u>emergency basis</u>, on the award against the Defendants, Wilton Group, Limited, Wilton UK (Group), Limited, and China Food and Beverage Co. (hereinafter the "Non-NSAV Corporate Defendants"), as entered on December 5, 2023. For the reasons set forth below, the Plaintiff respectfully states a Rule 54(b) partial Final Judgment is appropriate against the Non-NSAV Corporate Defendants and is consistent with the Seventh Circuit's precedent in that, such Final Judgment will be truly "final," and that there was no just reason to delay. *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019).

Thus, the Plaintiff respectfully requests, on a renewed basis, that this Court order an entry of Final Judgment against the Non-NSAV Corporate Defendants in the amount of **<u>$57,903,750.00</u>**, <u>plus</u> prejudgment interest of **<u>$6,781,877.57</u>**, <u>plus</u> attorney's fees of **<u>$99,066.30</u>** and <u>plus</u> costs of **<u>$11,932.29</u>**, for a total of **<u>$64,796,626.16</u>**, together with post-judgment interest.

The Plaintiff respectfully requests that the instant Renewed Motion be granted on the papers at this Court's earliest convenience. In the alternative, Mr. Grover requests oral argument on his Renewed Motion at the hearing on Wednesday, September 4, 2023. In support hereof and in accordance with the August 16th Minute Entry, the Plaintiff respectfully has filed, contemporaneously herewith, an Emergency Motion for a Short Order of Notice and his Memorandum in Support hereof, with **<u>Exhibits</u>**.

WHEREFORE, and for the reasons stated herein, the Plaintiff respectfully moves this Honorable Court to order an entry of Final Judgment against the Non-NSAV Corporate Defendants in the amount of **$64,796,626.16**, together with post-judgment interest in an amount to be calculated. The Plaintiff respectfully requests that the instant Motion be granted on the papers at this Court's earliest convenience, or, in the alternative, at the hearing on Wednesday, September 4, 2024.

Dated: August 23, 2024

Respectfully submitted,
PLAINTIFF, Vikram P. Grover,

By his Attorneys,


*/s/ Philip M. Giordano*
Philip M. Giordano, Esq. (admitted *pro hac vice*)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

## <u>CERTIFICATE OF SERVICE</u>

       I, Philip M. Giordano, do hereby certify that on the 23d day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's Renewed Emergency Motion for Entry of Final Judgment Against Defendants Wilton Group, Limited; Wilton UK (Group), Limited, and China Food and Beverage Co., Pursuant to Fed. R. Civ. 54(b), with **<u>Exhibits</u>**, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same to the following:

Jawad I. Fitter, Esq. (Local Counsel Defendant NSAV)
Bar ID Number: 6331338
Fitter Law, LLC
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: 312-741-1073
Email: Jawad@FitterLaw.com

Andrew Roman Perrong, Esq. (for prospective *Intervenor* WFD Capital, LLC)
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
Tel: (215) 225-5529
Email: a@perronglaw.com

Mason Cole, Esq. (Counsel to NSAV and Tilton)
Cole Sadkin, LLC
1652 W. Belmont Avenue, Suite 1, Chicago, IL 60657
Telephone: (312) 548-8610
Email: mcole@colesadkin.com

Jeffrey R. Tone, Esq. (Local Counsel for Plaintiff)
KATTEN & TEMPLE, LLP
The Rookery Building
209 South LaSalle Street, Suite 950
Chicago, Illinois 60604
Telephone: (312) 663-4400
Email: jtone@kattentemple.com

Dated: August 23, 2024             */s/ Philip M. Giordano*
                                Philip M. Giordano

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

```
================================
                                    :
VIKRAM P. GROVER d/b/a              :
  "IX ADVISORS" a/k/a "IXA,"        :
                                    :
           Plaintiff,               :
                                    :
           v.                       :
                                    :
NET SAVINGS LINK, INC., a           :
  Colorado corporation and formerly :
  organized as a Nevada corporation,:         Civil Action No. 1:21-CV-05054
WILTON GROUP, LIMITED, as           :         Honorable Mary M. Rowland
  registered in the Isle of Man, U.K.,:
WILTON UK (GROUP), LIMITED, as      :         REQUEST FOR ORAL
  registered in England and Wales, U.K.,:     ARGUMENT ON AN
CHINA FOOD AND BEVERAGE CO.,        :         SEPTEMBER 4, 2024
  a Colorado corporation, and       :
JAMES A. TILTON,                    :
                                    :
           Defendants.              :
                                    :
           v.                       :
PACIFIC STOCK TRANSFER,             :
NSAVX, INC., a Wyoming corporation, :
JOHN DOE CORP., a/k/a               :
NSAVX.COM, a Puerto Rican           :
corporation, and JOHN DOES 1-100,   :
                                    :
           Trustee-Defendants.      :
                                    :
================================
```

**PLAINTIFF VIKRAM GROVER'S MEMORANDUM OF LAW IN SUPPORT OF HIS RENEWED EMERGENCY MOTION FOR ENTRY OF FINAL JUDGMENT AGAINST DEFENDANTS WILTON GROUP, LIMITED, WILTON UK (GROUP), LIMITED, AND CHINA FOOD AND BEVERAGE CO. PURSUANT TO RULE 54(b) OF FED. R. CIV. P.**

# I. <u>INTRODUCTION</u>

The Plaintiff, Vikram P. Grover d/b/a "IX Advisors" (hereinafter the "Plaintiff), respectfully submits his Memorandum, pursuant to this honorable Court's August 16, 2024 Minute Entry, in support of his Renewed Motion, on an emergency basis, for Entry of Final Judgment solely against certain corporate Defendants, Wilton Group, Limited, Wilton UK (Group), Limited (collectively with Wilton Group, Limited as the "Wilton Parties"), and China Food and Beverage Co. (hereinafter "CHIF" and with the Wilton Parties as the "Non-NSAV Corporate Defendants"), in the above-captioned dispute. The Plaintiff respectfully requests that Final Judgment be entered against the Non-NSAV Corporate Defendants pursuant to the Federal Rule of Civil Procedure 54(b) on all Counts of the Plaintiff's Complaint. The Plaintiff respectfully requests that the instant Renewed Motion be granted on the papers at this Court's earliest convenience.  In the alternative, Mr. Grover requests his Renewed Motion be heard on Wednesday, September 4, 2023

# II. <u>BRIEF PROCEDURAL HISTORY</u>

On December 5, 2023, this Honorable Court entered an entry of default against the Wilton Parties, CHIF, and Net Savings Link, Inc. ("NSAV" and collectively with the Wilton Parties and CHIF, the "Corporate Defendants") upon motion by the Plaintiff pursuant to Fed. R. Civ. P. 55(a) due to the Defendants' failure to participate in the ongoing litigation. *See* Dkt. No. 146. Nearly seven (7) months later, on July 3, 2024, the Plaintiff filed a motion for Entry of Final Judgment pursuant to Fed. R. Civ. P. 54(b) against the Corporate Defendants, as the entities still remained without counsel throughout the continuation of the litigation. *See* Dkt. No. 174.

On August 6, 2024, two (2) days prior to a scheduled hearing on the Plaintiff's various pending motions, Jawad Fitter, Esq., filed an Appearance as Local Counsel on behalf of Defendant NSAV. *See* Dkt. No. 191. Notably, Attorney Fitter expressly stated that he was not representing the

1

Wilton Parties or CHIF with respect to the pending action. On August 8, 2024, after the Plaintiff's Motion for Default Judgment was discussed, the Court granted such Motion as against the Wilton Parties and CHIF, but excluded NSAV as now being represented by counsel. *See* Dkt. No. 197.

On August 16, 2024, this Court held another hearing regarding the Plaintiff's Motion for the Appointment of John Busacca as Chief Restructuring Officer of NSAV (Dkt. No. 177). At the hearing, the Court subsequently reversed its prior grant of the Plaintiff's Motion for Entry of Final Judgment, indicating that Seventh Circuit precedent, specifically *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 540 (7th Cir. 2019), may preclude the Court from entering Final Judgment as against the Non-NSAV Corporate Defendants. Understanding the Plaintiff's pressing need for entry of Final Judgment, particularly as against the Wilton Parties, the Court allowed the Plaintiff to file a Renewed Motion and Memorandum to address whether Final Judgment against the Wilton Parties and CHIF would be appropriate under Seventh Circuit precedent. *See* Dkt. No. 206.

## III. ISSUE PRESENTED

Is the Court allowed to enter Final Default Judgment pursuant to Fed. R. Civ. P. 54(b) against the Wilton Parties and CHIF, while Defendant NSAV remains in default and Defendant James Tilton remains active in the litigation?

## IV. BRIEF ANSWER

Yes, this Court may appropriately enter Final Judgment against the Wilton Parties and CHIF. Rule 54(b) allows a district court to enter Final Judgment as to fewer than all parties when there is no just reason for delay. As there is a low risk that entering final judgment against the Wilton Parties and CHIF will result in logically inconsistent judgments as to the remaining

Defendants in this litigation, there is no just reason for delay, and thus this Court may enter Final

Default Judgment against these particular Corporate Defendants.

# V. ARGUMENT

Final Default Judgment against the Wilton Parties and CHIF is appropriate under Fed. R.

Civ. P. 54(b) because default judgment against these entities would be "final" and there is no just

reason for delay. Fed. R. Civ. P. 54(b) states, in pertinent part:

> "(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents
> more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-
> party claim—*or when multiple parties are involved*, the court may direct entry of a final
> judgment as to one or more, but fewer than all, claims *or parties* only if the court expressly
> determines that there is no just reason for delay."

Fed. R. Civ. P. 54(b) (emphasis added). In evaluating whether a Rule 54(b) partial final judgment

is appropriate, the Seventh Circuit analyzes two (2) issues: 1) whether the final judgment was truly

"final"; and 2) whether there was no just reason to delay the appeal of the claim that was finally

decided. *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019).

Above all, a Court must be cognizant in its goal to prevent "piece-meal appeals" involving the

same facts. *See Gen. Ins. Co. of Am. V. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011).

### A.    Default Judgment Against the Wilton
####       Parties and CHIF Will Be a Final Judgment

First, an order of default judgment against the Non-NSAV Corporate Defendants will

dispose all of the claims against these entities, and thus such Order will be "final" for purposes of

Rule 54(b). Rule 54(b) permits entry of a partial final judgment when all of one party's claims or

rights have been "fully adjudicated." *Mwangangi v. Nielsen*, 48 F.4th 816, 822 (7th Cir. 2022).

Orders of default judgment which completely dispose of all of a party's claims against another

party are considered "final" for purposes of Rule 54(b). *See Cent. Laborers' Pension Fund v. AEH*

*Constr., Inc.*, No. 14-3052, 2015 WL 5450350, at *2 (C.D. Ill. Sept. 15, 2015) (Noting that the

3

Rule 54(b) finality requirement had been met when the Court ordered a default judgment against one of the two defendants in the case).

Here, there is little doubt that an entry of Default Judgment on all Counts of the Plaintiff's Complaint against the Non-NSAV Corporate Defendants would be "final" for purposes of Rule 54(b). CHIF and the Wilton Parties are entirely separate Defendants, which would otherwise have a proper course through appeal as a result of the default judgment absent the participation of Defendants NSAV and James Tilton in the same litigation. *See O'Brien v. Sage Grp., Inc.*, 141 F.R.D. 273, 275 (N.D. Ill. 1992) (finding finality under 54(b) because the "[defendant] would clearly have the right to appeal the default judgment."). Entry of a Default Judgment would render all of the Plaintiff's claims against the Wilton Parties and CHIF fully adjudicated and disposed, and thus such Judgments sufficiently fulfill Rule 54(b)'s requirement of "finality."

During the August 16th hearing, the District Court indicated that *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 540 (7th Cir. 2019) might possibly preclude this Court from entering final judgment against the Non-NSAV Corporate Defendants. However, *Peerless* and related cases can be distinguished from this present action. *Peerless* involved a Local Exchange Carrier ("LEC") that sued Verizon for, among other claims, breach of federal and state tariffs. *Peerless*, 917 F.3d at 541. Importantly, Verizon filed its own counterclaims against the LEC on the LEC's own alleged breach of federal and state tariffs arising from the same transactions. *Id.* at 542. Due to the technical nature of Verizon's counterclaims, the district court stayed litigation of such counterclaims pending resolution of numerous interpretive issues by the Federal Communications Commission (FCC). *Id.* The LEC then moved for partial summary judgment on its own breach of tariffs claim, and the district court granted the motion, subsequently entering a partial final judgment on the LEC's breach of tariffs claims pursuant to Rule 54(b). *Id.* at 543.

4

On appeal, the Seventh Circuit held that the order of partial final judgment in the district court was improper because it failed at Rule 54(b)'s first step – entering judgment on the LEC's breach of tariffs claim was not a "final" appealable judgment, because such claim "substantially overlap[ped]" with the stayed counterclaims brought by Verizon still pending before the FCC. *Id.* When determining whether the judgment was truly final, the Seventh Circuit considered whether there was too much factual overlap between the claims remaining below and the claims now set forth on appeal. *Id.* As the Seventh Circuit found, if the "final" claims could be undercut by a claim still pending before the district court, there would be "unacceptable overlap" which would render a judgment on such claims nonfinal. *Id.* The Seventh Circuit found that Verizon's pending counterclaims on the LEC's breach of tariffs could be used as actual defenses to the LEC's own breach of tariffs claim. *Id.* at 544. A successful outcome of these counterclaims, thus, would severely undercut the LEC's breach of tariffs claims, causing inconsistencies, and making it likely that the very same facts and issues would arise before the Seventh Circuit again once the district court resolved Verizon's counterclaims – a situation in which Rule 54(b) was designed to prevent. *Id.* at 545. Because the two parties' claims against each other were so "factually and legally intertwined," the district court could not order a final judgment as to only some of them. *Id.* at 543.

In the instant case, however, *Peerless* is inapposite because it rules on a different aspect of Rule 54(b) than the one most applicable here. Namely, the *Peerless* Court considered when a district court may direct entry of a final judgment as to one or more, but fewer than all, <u>claims</u>. *Id.*. Here, the question turns on when a district court may direct entry of a final judgment as to one or more, but fewer than all, <u>parties</u>. Under a *Peerless* analysis, no such overlap or tension between the Plaintiff's claims and the Non-NSAV Corporate Defendants exists or will exist. Unlike in *Peerless*, neither the Wilton Parties nor CHIF have filed counterclaims in the present action, nor

are there any outstanding claims left to be resolved amongst these three parties if Final Judgment was to be entered. As previously stated, Default Judgment would render all of the Plaintiff's claims against the Wilton Parties and CHIF fully adjudicated. Any defense, argument against, or other type of claim between the Plaintiff and the Non-NSAV Corporate Defendants will be fully disposed of through the entry of Default Judgment. As such, the doctrinal holding of *Peerless* will not conflict with the "finality" of an order for final judgment in this case.

## B.    There is No Just Reason For Delay

Second, this Court can order default judgment against the Wilton Parties and CHIF because there is no just reason to delay such order. As previously stated, after an analysis of whether an order for judgment is final, courts look to see whether there is "no just reason for delay." Fed. R. Civ. P. 54(b). When the situation calls for a final judgment against parties in default, the Seventh Circuit and other federal courts will find a "just reason for delay" only if there is a sufficiently high risk that default judgment against one party will lead to "logically inconsistent" judgments as to the other active parties in the litigation. *See Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 812 (7th Cir. 1987); *Philadelphia Indem. Ins. Co. v. Specialty Contracting, Inc.*, No. 18-CV-987-NJR, 2019 WL 13210028, at *2 (S.D. Ill. Mar. 27, 2019); *See also Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

### i.    Judgment Against the Non-NSAV Corporate Defendants Will Not Be Logically Inconsistent With a Judgment Against Defendant Tilton

To begin, there is <u>no</u> likelihood that a judgment against the Non-NSAV Corporate Defendants will be logically inconsistent with any judgment regarding Defendant Tilton. First, there is only a very limited chance that a judgment with regard to Defendant Tilton will hold an outcome that is different in any way from the default judgment against the Wilton Parties and CHIF. As the Plaintiff notes in his Motion for Summary Judgment, Dkt. Nos. 152 and 153,

Defendant Tilton has admitted all of the Plaintiff's Admissions, which include admissions of blatant fraud and securities violations. Furthermore, his supplemental response to such summary judgment motion, Dkt. No. 207, fails to cite any law in support of his defenses and is otherwise wanting as a basis for denial. As such, there is little risk of any inconsistent judgments between Tilton and the non-NSAV Corporate Defendants in terms of liability on the Plaintiff's claims.

Although unlikely, even assuming, *arguendo*, however that Defendant Tilton succeeds in his defense of the Plaintiff's claims, such result still would not be logically inconsistent with a judgment on all counts against the Wilton Parties and CHIF. Importantly, this Court has found that, in cases of joint and severally liable defendants, "[a] finding of liability as to one defendant is consistent with a finding of no liability as to the others." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980). In *In Re Uranium*, the Seventh Circuit upheld a district court's grant of partial final default judgment against nine foreign defendants that failed to answer the plaintiff's complaint. 617 F.2d at 1257. The court found that the severable nature of the defendants as to liability allowed the district court to grant partial final judgment against the non-answering defendants, as any of the remaining defendants could still be exonerated from the claims upon a showing that they did not participate in the actions giving rise to the claims. *Id.*

Here, a finding of liability as to the Wilton Parties and CHIF would still be consistent with a finding of no liability as to Defendant Tilton. The Non-NSAV Corporate Defendants and Defendant Tilton are jointly and severally liable for the harm incurred by the Plaintiff. As such, even if judgment is entered against the Non-NSAV Corporate Defendants on all claims of the Complaint, Tilton may still provide a defense that he did not participate with the such Defendants in the actions giving rise to such claims. Indeed, Tilton has frequently provided such defense throughout this litigation. *See* Response by James A Tilton in Opposition to Motion by Plaintiff

Vikram P Grover for Summary Judgment, Dkt. No. 207. This defense would not lead to a logical inconsistency with the entry of Final Judgment as to the Non-NSAV Corporate Defendants.

**ii.**      **There Is Very Little Risk That Judgment Against the Wilton Parties <u>and CHIF Will Be Inconsistent With the Judgment Regarding NSAV</u>**

Moreover, there is no just reason for delay in ordering Final Default Judgment because there is no sufficiently high risk that judgment against the Wilton Parties and CHIF will be logically inconsistent with the judgment in regard to NSAV. Courts have concluded that final judgment may enter against a defaulted party when another party in the litigation is also in default because there is low risk of inconsistent judgments. *See Philadelphia Indem. Ins. Co. v. Specialty Contracting, Inc.*, No. 18-CV-987-NJR-RJD, 2019 WL 13210028, at *2 (S.D. Ill. Mar. 27, 2019) ("[A] Clerk's Entry of Default has been entered as to all defendants in this action. Thus, the Court does not find that there is a possibility of inconsistency among judgments."); *See Societe D'Equipments Internationaux Nigeria, Ltd v. Dolarian Cap., Inc.*, No. 115CV01553GEBSKO, 2016 WL 2347434, at *10 (E.D. Cal. May 4, 2016) (finding that a slight risk of inconsistent judgments should another defaulted party begin to actively to defend the suit was not sufficient to prevent the court from entering final judgment against the other defaulted parties).

Here, there is very limited likelihood that Defendant NSAV will obtain a judgment contrary to the default judgment against the Non-NSAV Corporate Defendants in the instant dispute. As of December 5, 2023, a default judgment entered against NSAV. Prior to such Order, it remained without counsel for months. After the Order, it remained in default without counsel for another eight (8) months, only hiring counsel after the Plaintiff continuously sought interim relief in anticipation of entry the final judgment. Defendant NSAV provided no good cause for this delay, no good excuse as to why it took over a year to obtain counsel, and no meritorious defense as to

why the default judgment should be vacated.[1] Given this situation, it is highly likely that default judgment will also be entered against Defendant NSAV, thus making such judgment logically consistent with the requested default judgments against the Wilton Parties and CHIF.

### iii.    Plaintiff Stands to Be Harmed If Final Judgment Is Delayed

As a last consideration, the Plaintiff respectfully states that there is a likelihood of significant difficulty in obtaining any satisfaction of the Default Judgments if the entry is further delayed. As counsel for Plaintiff has represented, the Wilton Parties have been in the midst of administration proceedings in the United Kingdom since the summer of 2022. The wind-up proceedings were, in large part, the result of a Wilton Party affiliate, Hartley Pensions, allegedly misappropriating client monies and failing to meet certain liquid capital requirements. An article addressing this issue, dated December 7, 2022, is attached hereto as **Exhibit A**.

In a move that drew the direct ire of creditors, the Wilton Parties and its President, Anthony Flanagan, appointed Quantuma Advisory Ltd. on April 3, 2023 as administrator to wind it up. The appointment, which was performed through an out-of-court route without a hearing, was strongly asserted by multiple Wilton Party creditors as illegitimate. An article addressing the problems with Quantuma, dated June 13, 2023, is attached hereto as **Exhibit B**. The Plaintiff has communicated with various UK solicitors and creditors of the Wilton Parties about the appointment of Quantuma as the administrator, and it is clear that time is of the essence. Various reports exist as to the potential dissipation and concealment of assets and moneys to avoid reimbursing any creditors that the Wilton Parties may owe – without obstacle or remedy by the appointed administrator. The Wilton creditors, such as Silverback Capital Ltd., have spent the last year continuously applying

---

[1] The Plaintiff reserves the rest of his arguments against Defendant NSAV's Motion to Vacate Default Judgment, Dkt. No. 203, for his formal opposition memorandum, which will be submitted upon the setting of a briefing schedule by this Court.

pressure on Quantuma to prevent them from stripping assets. Needless to say, all trust and good faith around these proceedings have evaporated.

As potentially the Wilton Parties' largest creditor, the Plaintiff will have significant influence in the mission to relocate and track down all of these assets and moneys, a mission that can not begin until Final Judgment is rendered in this case and subsequently registered in the UK. The Plaintiff has already begun to coordinate with the Wilton creditors to address Quantuma's role in the administration and how to best preserve all of the creditors' rights from the undoubtedly fraudulent actions being performed over in the UK.

The Seventh Circuit has given considerable weight to the possibility of difficulty in obtaining satisfaction of judgment when determining whether there is no just reason for delay. *See In re Uranium Antitrust Litig.*, 473 F. Supp. 382, 390 (N.D. Ill. 1979) (plaintiff faced the possibility that the "defaulting defendants, which are all foreign corporations, may conceal or transfer their assets which are subject to execution by United States Courts"). Given the situation, thus, the Plaintiff respectfully submits that this Court can and should enter a Final Default Judgment against the Non-NSAV Corporate Defendants so the Plaintiff can seek satisfaction of such Judgments.

## VI. <u>CONCLUSION</u>

For the reasons set forth, the Plaintiff respectfully submits that Seventh Circuit precedent allows this Court to enter Final Default Judgment against the Wilton Parties and CHIF pursuant to Fed. R. Civ. P. 54(b), and thus this Court should enter such Final Judgments to avoid any further harm to the Plaintiff and to wrap up this side of the nearly three-year long litigation.

Dated: August 23, 2024

Respectfully submitted,

PLAINTIFF, Vikram P. Grover,

By his Attorneys,

*/s/ Philip M. Giordano*
Philip M. Giordano, Esq. (admitted *pro hac vice*)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Philip M. Giordano, do hereby certify that on the 23d day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's Memorandum in Support of His Renewed Emergency Motion for Entry of Final Judgment Against Defendants Wilton Group, Limited; Wilton UK (Group), Limited, and China Food and Beverage Co., Pursuant to Fed. R. Civ. 54(b), with <u>**Exhibits**</u>, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same to the following:

Jawad I. Fitter, Esq. (Local Counsel Defendant NSAV)
Bar ID Number: 6331338
Fitter Law, LLC
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: 312-741-1073
Email: Jawad@FitterLaw.com

Andrew Roman Perrong, Esq. (for prospective *Intervenor* WFD Capital, LLC)
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
Tel: (215) 225-5529
Email: a@perronglaw.com

Mason Cole, Esq. (Counsel to NSAV and Tilton)
Cole Sadkin, LLC
1652 W. Belmont Avenue, Suite 1, Chicago, IL 60657
Telephone: (312) 548-8610
Email: mcole@colesadkin.com

Jeffrey R. Tone, Esq. (Local Counsel for Plaintiff)
KATTEN & TEMPLE, LLP
The Rookery Building
209 South LaSalle Street, Suite 950
Chicago, Illinois 60604
Telephone: (312) 663-4400
Email: jtone@kattentemple.com

Dated: August 23, 2024                    */s/ Philip M. Giordano*
                                          Philip M. Giordano

# **EXHIBIT A**

Case: 1:21-cv-05054 Document #: 210 Filed: 08/23/24 Page 19 of 29 PageID #:3744

# FCA probe claims Hartley Pensions took client money 'without consent'

 **Michael Klimes**

7 December 2022

Hartley Pensions took client money without their consent and failed to meet liquid capital requirements, the FCA says.

These details are mentioned in a Financial Conduct Authority document seen by *Money Marketing* that sheds new light on why Hartley Pensions was stopped from conducting any new business in March.

It explains how the firm ended up where it did after failing to answer key concerns from the regulator about its solvency.

These concerns centred on rescue plans the management of Hartley Pensions proposed to the FCA.

The rescue plans involved intercompany loans that Hartley Pensions claimed it would be able to recoup from affiliated companies [Wilton UK (Group) Ltd and Wilton & Partners Ltd] to meet liquid capital requirements (LCR) and solvency issues.

Wilton UK (Group) Ltd bought Hartley Pensions in 2016 and is wholly owned by Wilton Group Ltd in the Isle of Man.

Michael Anthony Flanagan (also known as Tony Flanagan) is a Hartley Pensions director listed on Companies House and is also mentioned on other Wilton firm entries.

Flanagan and the FCA have given different accounts about what happened to Hartley Pensions.

According to the FCA note as at 31 October 2021 Wilton UK (Group) Ltd owed Hartley Pensions £5,216,522.

And also Wilton & Partners Ltd owed Hartley £1,282,378 as at 31 October 2021.

The dispute centres on whether Hartley Pensions was able to meet liquid capital requirements using these loans and the process that led to it entering administration in July.

Flanagan has rejected claims Hartley Pensions took client money without consent; its capital liquidity requirements were irresolvable and the wind down of Hartley Pensions was inevitable.

The FCA has been equally robust in its comments that can be seen towards the end of the article.

## FCA note

According to the document seen by *Money Marketing,* Hartley Pensions gave repeated assurances its business plans were solid but these did not stand up to scrutiny from the FCA.

It said Hartley Pensions wrote to the FCA on 15 March 2022 proposing an £18.5m fundraising round.

The document said: "The firm [Hartley Pensions] intended to use the funds to settle both of its intercompany loans which total approx. £4.8m and to repay in full Hartley scheme member funds which had been removed without the consumer's consent although it did not reflect the return of interest or any client redress due which is to be determined. Supervision [FCA] is concerned that the funds may not be sufficient as a result."

The FCA paper added the £18.5m fund raising round was also intended to settle the outstanding client money shortfall of £14.5m.

Flanagan said at the time of the March meetings with the FCA he was a non-executive director at the company [Hartley Pensions] and has been for several years.

He added: "At one of the meetings with the FCA a former chief executive of Hartley Pensions admitted voluntarily he had made investments without applying for member consent to do so. This a procedural point. I want to be clear. At no time did any pension scheme money leave the scheme. I was shocked to discover this and internal investigation was launched."

The correspondence between the FCA and Hartley Pensions also mentions why Hartley attempted to get the ban on it lifted.

Case: 1:21-cv-05054 Document #: 21-0 Filed: 08/23/24 Page 21 of 29 PageID #:3746

The FCA's note said it held a call with the firm on 18 March 2022 where Hartley Pensions explained more about its proposed £18.5m fundraising.

It said the £18.5m fundraising was contingent on lifting the requirement to cease new business.

And also that it would raise the funds within seven days of the ban on new business being lifted.

In response the FCA said that the outstanding £4.8m intercompany balance may not be liquid and wanted Hartley Pensions to recall the loans by 30 March 2022 to validate the loans as liquid.

The firm's solicitor confirmed that the chief executive at the time had requested in writing on 2 March 2022 that 'Wilton' recall the loans.

Flanagan has told *Money Marketing* he is not sure where the £18.5m figure came from and that he proposed to the FCA he would raise money to help Hartley Pensions.

He said: "I raised £5m, £2m of which is for capital adequacy. But the FCA decided that Hartley Pensions should be wound down and went for a trading administration. I advised against this."

There was back and forth between the FCA and Hartley Pensions about whether the £5,216,522 and £1,282,378 intercompany loans owed to it could be paid on time.

And also whether they could be treated as liquid capital.

According to the FCA both Wilton UK (Group) Ltd and Wilton & Partners Ltd confirmed on 25 January 2022 both loans would be payable to Hartley Pensions within 30 days of it requesting them.

But Hartley Pensions indicated that it wanted to review IPRU-INV 5.8 in the FCA Handbook, that sets out the rules for calculating liquid capital.

Effectively this imposes a requirement for a loan to fall due for repayment within 90 days to be treated as liquid.

The FCA's paper said Hartley Pensions suggested repayment extending beyond 30 days should still be treated as liquid capital.

Case: 1:21-cv-05054-Document-21.0-Filed: 08/23/24 Page 22 of 29 PageID #:3747

It added the FCA disagreed on "the basis that Mr [Tony] Flanagan's letters are a binding commitment to repay within 30 days".

Flanagan told *Money Marketing*: "The FCA in a dispute with Hartley Pensions decided to discard intercompany loans it had seen as fine for the last five years [for capital adequacy requirement purposes]. The regulator decided they were non-performing in a short space of time."

In the document the FCA said it would not lift the requirement to restrict new business until Hartley Pensions addressed its concerns, which included the LCR shortfall.

The FCA then claims Hartley Pensions requested approval for a dividend payment which it refused.

It said Hartley Pensions then requested approval for an interim dividend declaration which would improve the firm's LCR shortfall.

The FCA added that it reiterated that the lifting of the requirement to cease all new business was contingent on Hartley Pensions full return of member funds and an injection of additional funds to meet its LCR.

Therefore the FCA refused the Hartley Pensions request to declare an interim dividend from unverified current year profits to offset against amounts owed by Wilton UK (Group) Ltd.

At the end of the document labelled 'analysis of failings and risks' the FCA wrote that when it challenged Hartley Pensions to prove the intercompany loans were realisable it failed.

This meant Hartley Pensions failed to meet its LCR and fulfil its regulatory obligations as an authorised firm.

It pointed out the uncooperative stance by the firm appeared to be in breach of PRIN 11 of the FCA Handbook.

This states that a firm must deal with its regulators in an open and cooperative way.

Flanagan has also told *Money Marketing*: "The real story here is that no one is looking after the members and their pensions. I made the point in a recent

Case: 1:21-cv-05054  Document #: 210  Filed: 08/23/24  Page 23 of 29  PageID #:3748

letter that the way the administration has been handled means that members' funds will be partially used to fund the administration."

The letter he refers to is from 24 November when he wrote to members of Hartley Pensions where he warned there is an "imminent risk" that the value of their pensions will be reduced.

The FCA refuted this and made clear the document *Money Marketing* has seen did not come from it.

In a new statement it also said: "We know consumers will have been concerned by recent communications from Hartley Pensions and by the issues raised in this article.

"Our priority throughout our engagement with the firm has been to reduce consumer harm through the significant supervisory actions we've taken, which are shown on the FCA register. We have worked to fix problems identified as a matter of urgency.

"We are in close contact with the administrators, who are currently working to cross reference records and provide reassurance that all client assets remain in the Sipp trust and, as they have already advised customers, they are working to secure a new Sipp operator to transfer client Sipps to."

### Background In Depth

On 9 March the Financial Conduct Authority stopped Sipp provider Hartley Pensions from conducting any new business.

Hartley Pensions is known for buying the books of collapsed Sipp administrators over the past several years.

These have included Guinness Mahon Trust Corporation, Lifetime Sipp Company, Berkeley Burke and GPC Sipp.

A 4 March notice on the regulator's register shows Hartley Pensions can no longer carry out regulated activities and will stay in place until the FCA is satisfied it can be lifted.

This was the third restriction placed on it after the first from 17 February that said no assets could be disposed of.

A second on 25 February said Hartley Pensions Trustees Limited must not transfer any client funds held in Sipp and SSAS schemes.

This applied to any person in Hartley Pensions or that is otherwise a connected person of the firm.

The main thing the FCA instructed Hartley Pensions to do is contact the top five Sipp client business relationships to inform them it cannot accept work from them.

The FCA register entry for Hartley Pensions also shows a liquid capital requirement was imposed in June.

And in September the FCA said Hartley Pensions can no longer receive new or ongoing contributions.

On 9 November advisers reported clients stuck in collapsed Sipp provider Hartley Pensions have been cold called.

The warning from advisers came as Hartley's administrators Hacker Young LLP issued an important update on Monday 7 November.

It said reconciliation work underway to allow investors to transfer their holdings from the firm should be completed by January 2023.

On 12 September 2022 the Financial Conduct Authority lifted the restriction preventing clients from transferring their schemes to an alternative provider.

Hacker Young anticipates there will be a further update posted on its website about the progress of the administration in December 2023.

On 24 November members of pension schemes administered by Hartley Pensions were warned there is an "imminent risk" that the value of their pensions will be reduced.

In a letter seen by *Money Marketing,* Hartley director Tony Flanagan told members the funds within their pension schemes will

be used to fund administration and liquidation costs.

The Sipp provider was placed into administration and appointed Peter Kubik and Brian Johnson of UHY Hacker Young as joint administrators on 29 July.

An email sent out to clients by advisory firm Insight Financial Associates following the circulation of the letter claimed it was an unauthorised communication.

"We have spoken to the administrators and the Financial Conduct Authority who have confirmed this is not an authorised email," it said.

"The FCA has confirmed the claims are not true and there is not an "imminent risk" to your monies held with Hartleys.

"As we have previously highlighted the latest updates, including the recent email with Hartleys are available on the administrators website and the administrators will be issuing communications to all clients to verify this."

A spokesperson for the FCA said the communication contains "factual inaccuracies which may have caused customers concern".

# **<u>EXHIBIT B</u>**

8/22/24, 4:41 PM
Creditors question Hartley parent firm administrator Quantuma | Money Marketing
Case: 1:21-cv-05054 Document #: 240 Filed: 08/23/24 Page 27 of 29 PageID #:2752

# Creditors question Hartley parent firm administrator Quantuma

 **Michael Klimes**

13 June 2023

---

Hartley Pensions creditors owed money by parent firm Wilton UK (Group) Ltd have raised questions about its administrator Quantuma Advisory Ltd.

Their concerns centre on how Quantuma was appointed to the job and its approach to the wind-up so far.

Inter-company loans between Hartley Pensions and various Wilton affiliates ultimately led to the Financial Conduct Authority stopping it from conducting any new business in March 2022.

According to an FCA note as at 31 October 2021 Wilton UK (Group) Ltd owed Hartley Pensions £5,216,522.

This means the wind-up of Wilton UK (Group) Ltd is connected to the settlement Hartley Pensions creditors should receive from the collapsed Sipp operator.

Tony Flanagan, Wilton UK (Group) Ltd director, appointed Quantuma on 3 April 2023 via a floating charge through an out-of-court route.

This allows a charge holder to start the wind-up of a firm without the need for a court hearing.

Ex-football administrator Andrew Andronikou, Michael Kiely and Chris Newell are the three Quantuma managing directors handling Wilton UK (Group) Ltd.

In a previous article Andronikou told *Money Marketing* that the qualifying floating charge used for the appointment was valid as "our lawyers have said so".

According to a Companies House entry for Wilton UK (Group) Ltd, the persons entitled under the charge are: Michael Anthony Flanagan [Tony Flanagan], Nicole Hewson and Margaret Flanagan.

Case: 1:21-cv-05054 Document #: 210 Filed: 08/23/24 Page 28 of 29 PageID #:2753

They are all listed as the Trustees of the Wildwood Trust, based in the Isle of Man.

But Andronikou has now acknowledged that Quantuma is going back to court to seek a creditors appointment as the charge is invalid.

This may require approval of creditors.

We also understand several details about the administration process up to now has unsettled creditors.

They want Quantuma to resolve these outstanding issues.

Why Tony Flanagan remains listed as the director of Wilton UK (Group) Ltd.

Why Quantuma has not reversed Wilton UK (Group) Ltd's ownership transfer of its subsidiary, Guinness Mahon Ltd, to two people called Nicole Hewson and Margaret Flanagan on 16 September 2022.

*Money Marketing* understands this fact could result in less money for Hartley Pensions creditors and investors.

And finally why Quantuma missed its statutory filing date for accounts for Wilton UK (Group) Limited due two weeks ago.

When these questions were put to Andronikou he replied in an email statement that answered these points in turn.

He wrote that on the appointment of an administrator the statutory powers of the executives are suspended, and so there is no requirement to remove directors.

The directors have a fiduciary and statutory requirement to assist the administration process, so there is a practical reason why they are not removed, he added.

On the shares of Guinness Mahon Ltd being transferred Andronikou explained that Quantuma is aware of the transaction.

And the transfer is challengeable as an "antecedent transaction", in due course will "be reversed" and Quantuma has "taken steps" to protect the interests of creditors.

Case: 1:21-cv-05054 Document #: 240 Filed: 08/23/24 Page 29 of 29 PageID #:2754

On missing the filing date for Wilton UK (Group) UK on Companies House he said: "We are in a hiatus period where we are going back to court to have our appointment ratified. Therefore, until that application process is completed we are limited in terms of what actions we can take.

"In any case, we are at the very early stages of ratifying the information in the books and records of the company, and we were not in any position to file any documents at Companies House. I have nothing further to add until after our application is heard in court."