## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| VIKRAM P. GROVER D/B/A "IX ADVISORS" A/K/A "IXA", | |
| Plaintiff, | Case No. 21-cv-5054 |
| v. | Judge Mary M. Rowland |
| NET SAVINGS LINK, INC., WILTON GROUP, LIMITED, WILTON UK (GROUP), LIMITED, CHINA FOOD AND BEVERAGE CO., JAMES A. TILTON, and JOHN DOES 1 –100, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vikram Grover sued Defendants Net Savings Link, Inc. ("NSAV"), Wilton Group, Limited ("Wilton"), Wilton UK (Group) Limited ("Wilton UK"), China Food and Beverage Co. ("CHIF") (collectively, the "Corporate Defendants"), and James Tilton. Grover has moved for summary judgment against Tilton on Counts V–XV. [152]; [153]. For the reasons explained below, this Court grants Grover's motion for summary judgment in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## PROCEDURAL BACKGROUND

On September 23, 2021, Grover filed this action against NSAV, CHIF, the Wilton Parties, and James Tilton bringing various claims including breach of contract, unjust enrichment, tortious interference, and civil conspiracy based on Defendants failure to issue NSAV shares as compensation to Grover upon a change

of control and as specified in his contract.[1] [1]. Grover seeks specific performance for the issuance of 387,500,000 NSAV shares of Series B stock, convertible into freely tradeable shares of NSAV common stock, and the $50,000.00 debenture. *Id.*

Defendants CHIF, NSAV, and Tilton filed their Answer on February 11, 2022. [36]. The parties worked towards settling the matter but were unsuccessful. [58]; [66]; [80]; [82]. The parties moved forward with the case, but counsel for Defendants NSAV, CHIF, the Wilton Parties, and Tilton filed motions to withdraw from the case in April and May 2023. [87]; [88]; [100]; [101]. The Court granted defense counsel's motions to withdraw and gave all defendants until August 17, 2023 to find replacement counsel. [98]; [108].

At a status hearing on September 19, 2023, the Court noted that none of the defendants had retained counsel and found that the Corporate Defendants were in default in terms of responding to discovery. [113]. As Tilton was proceeding *pro se*, the Court ordered Grover to produce discovery requests directly to Tilton and directed Tilton to respond to discovery by October 3, 2023. *Id.* On October 10, 2023, after Tilton's discovery deadline passed, the Court granted in part Grover's motion to compel discovery by ordering that Tilton "provide response[s] to interrogatories without objections (those are waived) by 10/17/23" and finding that "[a]ll requests to

---

[1] The claims against the Corporate Defendants include specific performance (Ct. I), breach of contract (Cts. II–III), breach of implied covenant of good fair and fair dealing (Ct. IV), and accounting (Ct. XVI). The claims against Tilton, as well as some or all the Corporate Defendants, are unjust enrichment (Ct. V), tortious interference (Cts. VI–VII), promissory estoppel (Ct. VIII), fraud (Ct. IX), negligent misrepresentation (Ct. X), Illinois Wage Payment and Collection Act (Ct. XI), Illinois Securities Law of 1953 (Cts. XII–XIII), Illinois Consumer Fraud and Deceptive Business Practices Act (Ct. XIV), and civil conspiracy (Ct. XV).

admit are deemed admitted." [126]. The Court granted Tilton's request for additional time to produce documents until October 20, 2023, and later granted further extension until October 30, 2023. *Id.*; [131]. On December 5, 2023, the Court granted Grover's motion for default against the Corporate Defendants as they had not been represented for nearly six months and largely failed to participate in discovery. [146].[2]

On January 31, 2024, Grover moved for summary judgment against Tilton. [152]. Tilton filed three separate responses [154–155, 157]. Grover has moved to strike the two responses filed by Tilton after his response deadline. [158]. Long after the motion was briefed and following prompting by the Court, Grover's counsel belatedly complied with Local Rule 56.2's requirement of providing Tilton, as an unrepresented party, the Northern District's notice explaining the summary judgment process. [196]; [199]; *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (holding that a *pro se* litigant is entitled to notice of the consequences of failing to respond to a motion for summary judgment). Thus, the Court permitted Tilton, who as of August 15, 2024 was represented by counsel, to file a supplement to his summary judgment briefing. [202]; [207].

Tilton's supplement [207] raises several objections based in the federal rules of civil discovery to the nature and number of Plaintiff's requests to admit. Had Tilton been represented by counsel, he would have objected to them as burdensome, since there were 222 of them, and although he is not specific, he indicates that several of

---

[2] Defendant NSAV has recently obtained counsel and moved to vacate the default judgment. [203].

them are overly vague or call for legal conclusions. Tilton's supplement then asserts that the Complaint "contains genuine issues of law." [207] ¶ 12. He asserts that Complaint is flawed because Tilton was (1) not aware of any contract between former NSAV CEO Steven Baritz; (2) Plaintiff did not name Baritz as a defendant; (3) Plaintiff did not raise any concerns regarding his alleged employment status with Tilton; and (4) Plaintiff did not identify the parties to the conspiracy in alleging a civil conspiracy.[3] *Id.* ¶¶ 12–16.

## ANALYSIS

As a preliminary matter, Grover moves to strike Tilton's additional responses to his motion for summary judgment. [158]. Tilton timely filed a response to Grover's motion for summary judgment, *pro se,* on February 21, 2024. [154]. A day before Grover's reply was due, Tilton filed an additional response, and filed a second additional response two weeks later. [155]; [157]. The Court grants the motion to strike the additional responses in part and denies it in part. The Court strikes ¶ 10 of Tilton's response dated February 21, 2024 [154], because it discloses confidential settlement information. *See* Fed. R. Evid. 408. The Court denies Grover's request for sanctions. In light of Tilton's *pro se* status, the Court otherwise allows Tilton's filings to stand and considers them in response.

Even considering Tilton's filings, including the recent supplement filed with the assistance of counsel, Tilton has failed to respond to Grover's statement of material facts. The Seventh Circuit has explained the consequences of failing to

---

[3] In addition to being undeveloped, none of these arguments create genuine issues of material fact in order to defeat the motion to summary judgment.

comply with district courts' local rules governing summary judgment proceedings and filings:

> Normally, when both a district court and this court consider a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party. When the non-movant fails to comply with the district court's procedures for handling summary judgment motions, however, the non-movant may as a practical matter lose much of the benefit of that rule. Here, Adams failed to respond specifically to Wal-Mart's statement of material facts, as S.D. Ind. L.R. 56.1 required her to do if she wished to contest those facts. Therefore, as authorized by the rule, the district court treated Adams as having admitted Wal-Mart's version of the material facts. See S.D. Ind. L.R. 56.1(e). We too consider the facts in this light, accepting as true the material facts submitted by Wal-Mart that Adams did not properly contest.

*Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003) (citing *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000)). *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020) (no abuse of discretion where the district court struck a party's entire statement of material facts "because requiring the district court to sift through improper denials and legal argument in search of a genuinely disputed fact would defeat the purpose of the [local summary-judgment] rule. The district court does not shoulder the obligation to separate the fair from the foul, doing the work for the parties and identifying what facts are truly disputed and may require resolution at a trial."); *see also Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the

nonmoving party bears the responsibility of identifying the evidence upon which he relies.").

Tilton is not excused from these requirements and the consequences of failing to abide by them by virtue of his *pro se* status. "Even *pro se* litigants … are not exempt from procedural rules or the consequences of failing to comply with them." *Delices v. Bd. of Regents of U. of Wisconsin System*, No. 23-1594, 2023 WL 7272358, at *2 (7th Cir. Nov. 3, 2023). Given the failure to respond to Grover's statement of facts and failure to submit any cognizable facts of his own, the Court adopts the version of facts submitted by the Grover in whole. *See DJM Logistics, Inc. v. FedEx Ground Package System, Inc.*, 39 F.4th 408, 415 (7th Cir. 2022) ("Pro se litigants should be granted appropriate latitude in their dealings with courts and counsel for correct and honorable reasons. But being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders.")

Additionally, Federal Rule of Civil Procedure 36(b) provides that "[a] matter admitted … is conclusively established." "Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). As such, when a non-moving party has failed to timely respond to a movant's properly served request for

7

admissions, the default admissions may be used to support the movant's subsequent motion for summary judgment to establish undisputed facts. *See id.*

### A. Unjust Enrichment and Promissory Estoppel

Grover moves for summary judgment on his unjust enrichment (Count V) and promissory estoppel (Count VIII) claims. To establish unjust enrichment, Grover must show the defendant has "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016). Here, it is undisputed that Grover, to his detriment, conferred a benefit to Tilton in the form of his services on behalf of NSAV in his role as Director of Corporate Finance. [152-1] ("SOF") ¶ 48; [152-3], Pl.'s Ex. 4 ("RFA") No. 4. Grover introduced Tilton to Steven Baritz, then-CEO of NSAV, with the intention of conducting a merger & acquisition and joint venture transaction ("MA&JV transaction") between the Wilton Parties and NSAV. SOF ¶ 14; RFA Nos. 20–21. Shortly after, because of Grover's services, Baritz, at the direction of Tilton, transferred his controlling shares to CHIF, of which Tilton is president, resulting in CHIF acquiring a majority of NSAV shares and effectuating a "change of control" as defined in Grover's Consulting Agreement, which triggered Grover's bonus of 5% of fully diluted NSAV stock. SOF ¶¶ 29, 32–33. Tilton, as NSAV's president, received the full benefit of Grover's services of organizing the transaction without compensating him for such.

To establish a claim of promissory estoppel under Illinois law, Grover must prove: "(1) defendant made an unambiguous promise to [him]; (2) [Grover] relied on such promise; (3) [Grover]'s reliance was expected and foreseeable by defendant; and (4) [Grover] relied on the promise to [his] detriment." *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 780 (Ill. 2016). Here, it is undisputed Grover relied on representations made by Tilton stating Grover would receive 5% of the Company's fully diluted shares upon completion of a MA&JV transaction with the Wilton Parties and CHIF. Throughout the negotiation process, before any such transaction occurred, Tilton delivered numerous letters of intent personally to Grover and Steven Baritz which outlined the proposed MA&JV transaction. SOF ¶¶ 21–23. These letters of intent explicitly reaffirmed Grover's compensation by stating that "Steven Baritz and Vikram Grover will each be issued three hundred eighty-seven million, five hundred thousand (387,500,000) Series B preferred shares and $50,000.00 in debentures" upon completion of the transaction. *Id.* ¶ 22; [152-3], Pl.'s Ex. 9. Tilton assured Grover numerous times that he would "get paid." SOF ¶ 23; [152-3], Pl.'s Ex. 10. As a result of Tilton's promise that the proposed transaction would trigger Grover's bonus, Grover relied to his detriment and continued to perform services to complete such transaction. When the transaction was complete, as evidenced through NSAV's Form 8-K filing, Grover received nothing. SOF ¶ 40. Tilton has refused to deliver Grover the shares. *Id.* ¶ 38; RFA No. 36.

Therefore, the Court grants summary judgment against Tilton on the unjust enrichment and promissory estoppel claims.

### B.    Tortious Interference

Grover moves for summary judgment on his tortious interference with advantageous business and contractual relations (Count VI) and tortious interference with prospective economic advantage claims (Count VII). The elements of a claim for tortious interference with prospective economic advantage are: "(1) a reasonable expectancy of entering into a valid business relationship, (2) defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007). Tilton admitted he interfered with, convinced, and encouraged NSAV and Baritz to discontinue their business dealings with Grover and discontinue any business relationships between him and Grover. SOF ¶ 42; RFA Nos. 48–49. Tilton further admitted that he has interfered with the Grover's prospective business and economic advantage with PowerUp and other third parties and convinced and encouraged PowerUp to discontinue its business dealings and relationships with Grover in the future. SOF ¶ 43; RFA No. 50. Tilton has further admitted he did so intentionally, willfully, recklessly, and knowingly with improper motives. RFA Nos. 49, 51. Thus, the Court grants summary judgment against Tilton on both tortious interference claims.

### C.    Fraud and Negligent Misrepresentation

Grover moves for summary judgment on his fraud (Count IX) and negligent misrepresentation claims (Count X). To sustain an action for fraud under Illinois law,

Grover must prove that: "(1) the defendant made a false statement of material fact; (2) the defendant knew or believed that the statements were false, or the statements made with a reckless disregard of whether they were true or false; (3) the statements were made with the intent to induce action; (4) the plaintiff reasonably believed the statements and justifiably acted in reliance on those statements; and (5) the plaintiff suffered damages as a result." *Kapelanski v. Johnson*, 390 F.3d 525, 530–31 (7th Cir. 2004). To prove a negligent misrepresentation claim under Illinois law, Grover must prove: "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty on the party making the statement to communicate accurate information." *Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 547 (7th Cir. 2020) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006)).

It is undisputed that Tilton, by and through representations made in his various agreements with Grover, falsely asserted that Grover would receive 5% of NSAV's fully diluted shares upon completion of a MA&JV transaction with another private entity. SOF ¶¶ 21–23. Tilton circulated numerous letters of intent to Grover with the express provision that Grover would receive his contractually owed issuance of NSAV shares, and Tilton affirmatively reassured Grover that he would get paid for his services. *Id.* Tilton knew these representations were made solely to induce Grover to provide his services and knew Grover was not going to be compensated regardless

of the services he provided. SOF ¶¶ 37–38; RFA Nos. 36, 68, 70. Tilton induced Grover to provide his efforts, expertise, and contacts to NSAV by intentionally concealing from Grover the full and complete negotiations and transactions between and among Defendants Tilton, CHIF, the Wilton Parties, and then-CEO Baritz of NSAV, including but not limited to the change of control as to NSAV. RFA No. 70. Thus, the Court grants summary judgment against Tilton on the fraud and negligent misrepresentation claims.

### D.    IWPCA

Grover moves for summary judgment on his Illinois Wage Payment and Collection Act ("IWPCA") claim (Count XI). The IWPCA defines an employer as "any individual … acting directly or indirectly in the interest of the employer in relation to an employee, for which one of more persons is gainfully employed." 820 ILL. COMP. STAT. 115/2. Additionally, "wages" are defined as "as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." *Id.* Here, it is undisputed that Grover was party to an employment contract with NSAV at all relevant times. SOF ¶ 11. Grover signed a Consulting Agreement with NSAV that outlined his employment duties and responsibilities at NSAV, as well as a compensation plan that laid out a commission-based salary. *Id.* ¶ 5. It is undisputed that Grover became an "employee" of NSAV as defined within the Act upon the execution of such Consulting Agreement. *Id.* ¶ 6. On January 23, 2016, Tilton became the president, principal executive officer, secretary, treasurer, principal financial officer and principal accounting officer of NSAV, and therefore

became Grover's "employer" for purposes of the IWPCA. *Id.* ¶ 28. Tilton admits that the transfer of controlling NSAV shares to CHIF effectuated a "change of control" under the Agreements and Grover was owed 387,500,000 Series B preferred shares of NSAV stock and $50,000.00 in debentures, triggering a provision of the Consulting Agreement. *Id.* ¶¶ 32–35; RFA Nos. 33–35, 210. Grover has never received that compensation. Thus, the Court grants summary judgment against Tilton on the IWPCA claim.

### E. Illinois Securities Law

Grover moves for summary judgment on his claims under the Illinois Securities Law of 1953 (Counts XII–XIII). A defendant is in violation of the Security Law if he

> Engage[s] in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof, [or] ... obtain[s] money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

815 Ill. Comp. Stat. 5/12 (F) & (G). Any person who participates or aids in the making of a fraudulent sale in violation of the Illinois Securities Law is jointly and severally liable to the purchaser:

> (1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated … less any income or other amounts received by the purchaser on the securities; … or (2) if the purchaser no longer owns the securities, [then liability will be] for the amounts set forth in clause (1) … less any amounts received by the purchaser for or on account of the disposition of the securities.

815 ILL. COMP. STAT. 5/13(A)(1) & (2). Moreover, a "controlling person" is "any person offering or selling a security, or group of persons acting in concert in the offer or sale of a security, owning beneficially ... such number of outstanding securities of the issuer of such security as would enable such person, or group of persons, to elect a majority of the board of directors or other managing body of such issuer." 815 ILL. COMP. STAT. 5/2.4.

Here, it is undisputed that Tilton fraudulently induced Grover to provide services for NSAV in exchange for the promise of payment via securities. SOF ¶ 65; RFA No. 59. The agreement was never meant to be honored and was made solely to persuade Grover to perform services on behalf of the companies. SOF ¶ 27; RFA Nos. 30–31, 70, 197–98. The fraud was continuous throughout Grover's employment at NSAV, as his Consulting Agreement with NSAV containing these misrepresentations, constantly renewed monthly. SOF ¶ 10; RFA No. 9. Further, Tilton is a "controlling person" under the Illinois Securities Law because it is undisputed that on February 9, 2016, upon Steven Baritz's transfer of 5,000,000 restricted shares of Series A Preferred stock to Tilton, Tilton possessed 62.69% of NSAV's voting control. SOF ¶ 44. As such, Tilton owned the number of shares that would enable him "to elect a majority of the board of directors or other managing body" of NSAV. *See* 815 ILL. COMP. STAT. 5/2.4. Thus, Tilton is liable and the Court grants summary judgment against him on the Illinois Securities Law claims.

### F.   ICFA

Grover moves for summary judgment on his Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count XIV). The ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILL. COMP. STAT. 505/2. The elements of an ICFA claim are: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 934-35 (7th Cir. 2010). Here, Grover asserts that it is undisputed that Tilton fraudulently induced Grover to perform services on behalf of himself and the NSAV under the false promise that Grover would receive securities and payment for such work. SOF ¶¶ 22–23; RFA No. 70. Additionally, Tilton attempted to fraudulently conceal from Grover the change-of-control resulting from Steven Baritz's stock transfer to Tilton, to deprive Grover of his rightfully earned commission for facilitating the transaction. SOF ¶ 27; RFA Nos. 30–31, 70, 197–98. Grover then asserts that he is entitled to a recovery under the ICFA because, due to Tilton's deceptive acts, Grover has not received any compensation for his work at NSAV and has continuously experienced harm resulting therefrom. SOF ¶ 38; RFA No. 36.

While Tilton's actions may qualify as "deceptive acts" under ICFA, Grover does not have standing to bring a claim. The Consumer Fraud Act is, not surprisingly,

15

concerned with protecting consumers. The Act defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT. 505/1(e). A business may bring suit under the Act when it is the consumer. *Vulcan Golf, LLC v. Google Inc.*, 552 F.Supp.2d 752, 777 (N.D. Ill. 2008); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358, 1368 (N.D. Ill. 1996); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010). There are no facts establishing that Grover d/b/a IX Advisors is a consumer. To the contrary, several undisputed facts establish that it is in an employment relationship with NSAV and Tilton.

Non-consumer businesses can sue other businesses under the Act if they are able to allege that the deceptive conduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Indus. Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 812 (N.D. Ill. 1995); *Freedom Mortg. Corp.*, 720 F.Supp.2d at 1004; *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989); *see also Gold v. Golden G.T., LLC*, 2005 WL 2465815, at *4 (N.D.Ill. Oct. 4, 2005) (explaining that the consumer nexus requirement may be satisfied by showing that the alleged deception was "directed to 'consumers,' as opposed to simply 'customers' of the business plaintiff"); *Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 912 (N.D.Ill.2012) (allegations insufficient where plaintiff "fail[ed] to allege that the letters and written notices she received concerned anyone other than her or that

Defendants made misrepresentations to the general public"). The deception here was directed to Grover and whether he would personally be compensated pursuant to promises made to him. He cannot properly assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Count XIV is dismissed with prejudice.

### G. Civil Conspiracy

Grover moves for summary judgment on his civil conspiracy claim (Count XV). To prevail on a conspiracy claim under Illinois law, Grover must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509. As discussed, Tilton, in concert with then-CEO Steven Baritz, CHIF and the Wilton Parties, fraudulently concealed NSAV's change-of-control from Grover to prevent Grover from receiving his commission and refused to compensate him when such change of control occurred. SOF ¶¶ 22–23, 27; RFA Nos. 30–31, 70, 197–98. Inferring from the circumstances, the fraud was perpetuated by the Corporate Defendants and Tilton, together in concert, to avoid any payment to Grover while they reaped the benefits of his services. *See id*. Thus, the Court grants summary judgment against Tilton on the civil conspiracy claim.

### H. Damages

Grover seeks damages in the amount of $57,903,750.00. As described above, Tilton directly participated in various fraudulent schemes to deprive Grover of his

contractually owed issuance of 387,500,000 Series B preferred shares of NSAV stock and $50,000.00 in debentures. On August 2, 2021, NSAV's price peaked at a price of $0.1493 per share, meaning that Grover was deprived of shares worth a total value of $57,853,750.00. This, in addition to the $50,000 in debentures also contractually owed, Grover has suffered damages in an amount of at least $57,903,750.00.[4]

## CONCLUSION

For the stated reasons, the Court grants in large part Plaintiff's motion for summary judgment [152] [153] and enters judgment against Tilton on Counts V–XIII and XV. The Court dismisses Count XIV with prejudice. The Court denies Plaintiff's motion to strike the additional responses [158] in part and grants it in part.

E N T E R :

Dated: August 26, 2024

_____
MARY M. ROWLAND
United States District Judge

---

[4] Grover also seeks equitable relief in terms of specific performance. As the Court has granted certain injunctive relief against NSAV [167, 168], the Court declines to grant any further equitable relief.