## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

```
============================
                                       :
VIKRAM P. GROVER d/b/a                 :
  "IX ADVISORS" a/k/a "IXA,"           :
                                       :
          Plaintiff,                   :
                                       :
          v.                           :
                                       :
NET SAVINGS LINK, INC., a              :
  Colorado corporation and formerly    :
  organized as a Nevada corporation,   :
WILTON GROUP, LIMITED, as              :
  registered in the Isle of Man, U.K., :
WILTON UK (GROUP), LIMITED, as         :
  registered in England and Wales, U.K.,:
CHINA FOOD AND BEVERAGE CO.,           :
  a Colorado corporation, and          :
JAMES A. TILTON,                       :
                                       :
          Defendants.                  :
                                       :
          v.                           :
                                       :
PACIFIC STOCK TRANSFER,                :
NSAVX, INC., a Wyoming corporation,    :
and JOHN DOE CORP., a/k/a              :
NSAVX.COM, a Puerto Rican              :
corporation,                          :
                                       :
          Trustee-Defendants.          :
                                       :
============================
```

Civil Action No. 1:21-CV-05054

REQUEST FOR HEARING
ON SEPTEMBER 4, 2024

## PLAINTIFF VIKRAM P. GROVER'S EMERGENCY
## MOTION FOR ATTACHMENT AND ATTACHMENT BY
## TRUSTEE PROCESS AGAINST DEFENDANT JAMES TILTON

The Plaintiff, Vikram P. Grover (hereinafter "Mr. Grover"), pursuant to Federal Rule of

Civil Procedure 64(b) and the Local Rules of the U.S. District Court for the Northern District of

Illinois, respectfully moves this Honorable Court, for an emergency hearing upon a Short Order of

1

Notice and on an emergency basis, for an Order attaching the shares and the assets of the Defendant, James Tilton (hereinafter "Tilton"), together with his representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with him with actual notice of this Court's Orders, including but not limited to Pacific Stock Transfer Co. (hereinafter the "Pacific Stock" or "Pacific") in the amount of <u>Fifty-Seven Million — Nine Hundred –Three Thousand – Seven Hundred – Fifty and 00/100 ($57,903,750.00) U.S. Dollars</u>, including but not limited to any and all shares of NSAV and/or CHIF, as held by Pacific and/or any successor transfer agent (collectively hereinafter the "Transfer Agent") including, but not limited to the Tilton NSAV shares as held by Pacific, the Corporate Defendants and/or other transfer agents.

The Plaintiff requests that the Court join Tilton the Order of Attachment, dated June 26, 2024 (hereinafter the "Attachment Order" or the "Order") in order to preserve the status quo and maintain the availability of the Defendant's assets and/or shares, public, restricted, treasury and/or otherwise, for satisfaction of an anticipated Judgment in this action. The Plaintiff respectfully submits that, given that the Defendant lives overseas, routinely transfers and coveys assets through various nominees, shell corporations and other entities, that an Order of Attachment specifically be entered on **<u>all</u>** of Tilton's assets and **<u>all</u>** of his shares in Defendants NSAV and CHIF, in order to ensure satisfaction of the Plaintiff's award.

The Plaintiff also requests that this Court order the Defendant Tilton to immediately disclose, in writing and under pains and penalties of perjury, the location, custodian and amount of any and all assets which may be subject to such Order of Attachment.

The Plaintiff relies upon, and restates and incorporates by reference, a) this Court's Order and Decision on Motion for Summary Judgment against James Tilton, dated August 26, 2024 (Dkt. No. 211) (attached as **<u>Exhibit A</u>**); b) the Attachment Order, dated June 26, 2024 (Dkt. No. 167);

c) the Preliminary Injunction Order, dated June 26, 2024 (Dkt. No. 168); d) his Memorandum, submitted herewith; and e) the prior filings in this action. The Plaintiff respectfully requests the Court enter such Attachment Order against Tilton on the papers. In the alternative, Mr. Grover requests oral argument at a hearing, on an emergency basis, on a Short Order of Notice for remote hearing on September 4, 2024, or at such opportunity as may be reasonably convenient for the Court.

WHEREFORE, as set forth in the submissions herewith, the Plaintiff, Vikram Grover, respectfully moves this Honorable Court for an Order attaching the assets of Defendant Tilton, including all of his NSAV and CHIF shares, by trustee process, as set forth herein. The Plaintiff respectfully requests the Court enter such Attachment Order against Tilton on the papers, or at a remote hearing on September 4, 2024,

<div style="margin-left:50%">

Respectfully submitted,
PLAINTIFF, Vikram Grover,

By his Attorneys,


   */s/ Philip M. Giordano*   .
Philip M. Giordano, Esq. (#193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109
Telephone: (617) 723-7755
Email: pgiordano@reedgiordano.com

</div>

Dated: August 26, 20224

3

## CERTIFICATE OF SERVICE

I, Philip M. Giordano, do hereby certify that on the 26th day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's Emergency Motion for an Attachment and Attachment by Trustee Process Against Defendant James Tilton, with **Exhibits**, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same to the following:

Jawad I. Fitter, Esq. (Local Counsel Defendant NSAV)
Bar ID Number: 6331338
Fitter Law, LLC
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: 312-741-1073
Email: Jawad@FitterLaw.com

Andrew Roman Perrong, Esq. (for prospective *Intervenor* WFD Capital, LLC)
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
Tel: (215) 225-5529
Email: a@perronglaw.com

Mason Cole, Esq. (Counsel to NSAV and Tilton)
Cole Sadkin, LLC
1652 W. Belmont Avenue, Suite 1, Chicago, IL 60657
Telephone: (312) 548-8610
Email: mcole@colesadkin.com

Jeffrey R. Tone, Esq. (Local Counsel for Plaintiff)
KATTEN & TEMPLE, LLP
The Rookery Building
209 South LaSalle Street, Suite 950
Chicago, Illinois 60604
Telephone: (312) 663-4400
Email: jtone@kattentemple.com

Dated: August 26, 2024                    */s/ Philip M. Giordano*
                                          Philip M. Giordano

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

===============================

| | |
|---|---|
| **VIKRAM P. GROVER d/b/a** : | |
| **"IX ADVISORS" a/k/a "IXA,"** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **NET SAVINGS LINK, INC., a** : | |
| **Colorado corporation and formerly** : | **Civil Action No. 1:21-CV-05054** |
| **organized as a Nevada corporation,** : | |
| **WILTON GROUP, LIMITED, as** : | **REQUEST FOR HEARING** |
| **registered in the Isle of Man, U.K.,** : | **ON SEPTEMBER 4, 2024** |
| **WILTON UK (GROUP), LIMITED, as** : | |
| **registered in England and Wales, U.K.,** : | |
| **CHINA FOOD AND BEVERAGE CO.,** : | |
| **a Colorado corporation, and** : | |
| **JAMES A. TILTON,** : | |
| : | |
| **Defendants.** : | |
| : | |
| **v.** : | |
| : | |
| **PACIFIC STOCK TRANSFER,** : | |
| **NSAVX, INC., a Wyoming corporation,** : | |
| **and JOHN DOE CORP., a/k/a** : | |
| **NSAVX.COM, a Puerto Rican** : | |
| **corporation,** : | |
| : | |
| **Trustee-Defendants.** : | |
| : | |

===============================

## PLAINTIFF VIKRAM P. GROVER'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS EMERGENCY MOTION FOR ATTACHMENT
## BY TRUSTEE PROCESS AGAINST DEFENDANT JAMES TILTON

## I. INTRODUCTION

The Plaintiff, Vikram P. Grover (hereinafter "Mr. Grover"), pursuant to Federal Rule of

Civil Procedure 64(b) and the Local Rules of the U.S. District Court for the Northern District of

1

Illinois, respectfully moves this Honorable Court, for an emergency hearing upon a Short Order of Notice and on an emergency basis, for an Order attaching the shares and the assets of the Defendant, James Tilton (hereinafter "Tilton"), together with his representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with him with actual notice of this Court's Orders, including but not limited to Pacific Stock Transfer Co. (hereinafter the "Pacific Stock" or "Pacific") in the amount of <u>Fifty-Seven Million — Nine Hundred –Three Thousand – Seven Hundred – Fifty and 00/100 ($57,903,750.00)  U.S. Dollars</u>, including but not limited to any and all cryptocurrency assets, tokens, coins or otherwise; and any and all shares of NSAV and/or CHIF, as held by Pacific and/or any successor transfer agent (collectively hereinafter the "Transfer Agent") including, but not limited to the Tilton NSAV shares as held by Pacific, the Corporate Defendants and/or other transfer agents.

The Plaintiff requests that the Court join Tilton the Order of Attachment, dated June 26, 2024 (hereinafter the "Attachment Order" or the "Order") in order to preserve the status quo and maintain the availability of the Defendant's assets and/or shares, public, restricted, treasury and/or otherwise, for satisfaction of an anticipated Judgment in this action. The Plaintiff respectfully submits that, given that the Defendant lives overseas, routinely transfers and coveys assets through various nominees, shell corporations and other entities, that an Order of Attachment specifically be entered on **all** of Tilton's assets and **all** of his shares in Defendants NSAV and CHIF, in order to ensure satisfaction of the Plaintiff's award.

The Plaintiff also requests that this Court order the Defendant Tilton to immediately disclose, in writing and under pains and penalties of perjury, the location, custodian and amount of any and all assets which may be subject to such Order of Attachment.

The Plaintiff relies upon, and restates and incorporates by reference, a) this Court's Order and Decision on Motion for Summary Judgment against James Tilton, dated August 26, 2024 (Dkt. No. 211) (attached as **Exhibit A**); b) the Attachment Order, dated June 26, 2024 (Dkt. No. 167); c) the Preliminary Injunction Order, dated June 26, 2024 (Dkt. No. 168); d) his Memorandum, submitted herewith; and e) the prior filings in this action. The Plaintiff respectfully requests the Court enter such Attachment Order against Tilton on the papers. In the alternative, Mr. Grover requests oral argument at a hearing, on an emergency basis, on a Short Order of Notice for remote hearing on September 4, 2024, or at such opportunity as may be reasonably convenient for the Court.

## II. UNDISPUTED FACTS

### A.     Entry of Summary Judgment Against Tilton

On August 26, 2024, this Court entered Summary Judgment against Defendant James Tilton as to the substantial majority of the claims against him. See Order on Summary Judgment Against James Tilton, dated August 26, 2024 (Dkt. No. 211).    The Plaintiff restates, and incorporates by reference herein, his Statement of Undisputed Material Facts, as cited in the Court in such Summary Judgment Order.

## III. ARGUMENT

### A.     Plaintiff Is Entitled to an Order of Attachment of all of Defendant's Assets

Pursuant to Federal Rule 64 and the Illinois Attachment Act, 735 ILCS 5/4-101 *et. seq*., the Plaintiff seeks an Order of Attachment. Federal courts are authorized to issue an order for an attachment "in the manner provided by the law of the state in which the district court is held." Fed. R. Civ. P. 64. Section 4-101 of the Illinois Procedure Code (hereinafter the "Illinois Attachment Statute") permits attachment in specific circumstances, including, *inter alia*, when the debtor is

not a resident of the state and where the debt sued for was fraudulently contracted on the part of the debtor. Attachment is not confined to certain types of property – any personal property owned by the debtor, including bank accounts or cars, may be attached. 735 ILCS 5/4-126. Typically, to qualify for an order for attachment, a plaintiff must establish: (1) by a preponderance of the evidence at least one of varieties of "cause" pursuant to the Illinois Attachment Act and (2) a probability of success on the merits. If the factual findings establish both cause and a probability of success, the court retains no discretion to deny attachment—the court "shall" enter the order. 24 Illinois Jurisprudence Civ. Pro. § 4:03 (2021). "Attachment is a pretrial remedy wherein a defendant's property is seized and held until the rights of the parties are determined in the principal action. The purpose of attachment is to permit a creditor to secure and hold a debtor's property to satisfy a debt which the creditor hopes to prove." *Starr v. Gay*, 354 Ill. App. 3d 610, 615 (2004).

### 1.  Plaintiff Can Establish Cause Arising from <u>Fraud and Other Counts by the Defendant</u>

The plaintiff must show at least one of the ten varieties of cause listed in 735 ILCS 5/4-101 *et. seq*. to obtain an Order of Attachment. The Plaintiff submits that several elements of cause exist. Section (1) of 735 ILCS 5/4-101 provides cause where the debtor is not a resident of the state, and Section (9) provides cause where the debt sued for was fraudulently contracted on the part of the debtor. *See* 735 ILCS 5/4-101. The statements of the debtor, his or her agent or attorney, which constitute the fraud, shall have been reduced to writing, and his or her signature attached thereto, by himself or herself, agent or attorney. *Id.* Further, Section (8) provides for cause when "the debtor is about fraudulently [sic] to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors." *Id.*

Section (1) applies because the debtor Defendant James Tilton lives in the Netherlands, and does not reside in the state of Illinois. The Complaint, the Plaintiff's submissions in support

4

of his Motion for Summary Judgment, and together with numerous other filings establish that such factors are clearly met.

The Illinois Attachment Act is to be "construed in all courts in the most liberal manner for the detection of fraud." 735 ILCS 5/4-102. Actual fraud is required to establish cause under subsection 4-101(9). *U.S. Bank Nat'l Ass'n v. Rose*, 2014 IL App (3d) 130356, ¶ 19, 378 Ill. Dec. 718, 722, 4 N.E.3d 601, 605. Furthermore, "[a] claim of actual fraud requires five elements: (1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *Id*. By entering the Default Judgment, this Court has found in favor of the Plaintiff on his claims of fraud. There can be no dispute that the Illinois Attachment Statute applies in this circumstance.

Lastly, the Plaintiff has shown cause by a preponderance of evidence pursuant to Section (8) of the Illinois Attachment Statute. The Plaintiff has bona fide concerns that Tilton seeks to fraudulently "conceal, assign, or otherwise dispose" of his assets through overseas shell corporations and various other entities, such as NSAVx.com and NSAVx.com, Inc. Due to this concern, the Plaintiff has also satisfied Section (8) for cause of the Illinois Attachment Statute. *See* 735 ILCS 5/4-101.

### 2. Plaintiff Grover Has a Reasonable Likelihood of Success on the Merits for Recovering Judgment

While the second prong of the attachment test typically requires a showing of a likelihood of success on the merits, the Plaintiff respectfully submits that, by way of this Court's Summary Judgment Order against Tilton, the Plaintiff has already succeeded on his claims against the Defendant. Thus, the Plaintiff supported his request for attachment on all assets and, in particular, all shares of NSAV and CHIF as held by Tilton.

**3.      Plaintiff Seeks Attachment of All of Defendant's Assets and
All Tilton Shares in Defendants NSAV, CHIF and Other Entities**

Given the Summary Judgment Order, the Plaintiff seeks an attachment that will adequately preserve his $57,903,750.00 claim against Tilton beyond the shares of NSAV and CHIF which are owned by Tilton. Due to the noncompliance of Defendant NSAV with respect to the June 26th Order, and in light of this Court's finding of fraud against Tilton, the actual existence of these purported assets is uncertain. As such, the Plaintiff additionally seeks an Order of Attachment on all NSAV Shares in possession of its Transfer Agent to be beneficially held by Tilton, as well as any and all shares in possession, custody and/or control of James A. Tilton, until such assets can be readily identified.

## IV. <u>CONCLUSION</u>

In sum, the Plaintiff, Vikram Grover, respectfully moves this Honorable Court for an Order of Attachment that will adequately provide potential satisfaction for Plaintiff's $57,903,750.00 claim against Tilton, including any and all cryptocurrency assets, tokens, coins or otherwise; and any and all shares of NSAV and/or CHIF, as held by Pacific and/or any successor transfer agent including, but not limited to the Tilton NSAV shares as held by Pacific, the Corporate Defendants and/or other transfer agents. The Plaintiff also that this Court order Defendant Tilton immediately disclose, in writing and under pains and penalties of perjury, the custodian, identity, amount, location and amount of any and all assets which may be subject to the Attachment Order and provides prejudgment interest, costs and expenses, and attorney's fees, and for statutory post-judgment interest and costs.

The Plaintiff respectfully requests that his Attachment Motion against Tilton be decided on the papers, or, in the alternative, at the hearing scheduled for September 4, 2024.

Respectfully submitted,
PLAINTIFF, Vikram Grover,

By his Attorney,


_____/s/ Philip M. Giordano_____.
Philip M. Giordano, Esq. (#193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109
Telephone: (617) 723-7755
Email: pgiordano@reedgiordano.com

Dated: August 26, 2024

7

## <u>CERTIFICATE OF SERVICE</u>

I, Philip M. Giordano, do hereby certify that on the 26th day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's Memorandum in Support of His Emergency Motion for an Attachment and Attachment by Trustee Process Against Defendant James Tilton, with **Exhibits**, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same to the following:

Jawad I. Fitter, Esq. (Local Counsel Defendant NSAV)
Bar ID Number: 6331338
Fitter Law, LLC
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: 312-741-1073
Email: Jawad@FitterLaw.com

Andrew Roman Perrong, Esq. (for prospective *Intervenor* WFD Capital, LLC)
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
Tel: (215) 225-5529
Email: a@perronglaw.com

Mason Cole, Esq. (Counsel to NSAV and Tilton)
Cole Sadkin, LLC
1652 W. Belmont Avenue, Suite 1, Chicago, IL 60657
Telephone: (312) 548-8610
Email: mcole@colesadkin.com

Jeffrey R. Tone, Esq. (Local Counsel for Plaintiff)
KATTEN & TEMPLE, LLP
The Rookery Building
209 South LaSalle Street, Suite 950
Chicago, Illinois 60604
Telephone: (312) 663-4400
Email: jtone@kattentemple.com

Dated: August 26, 2024                    */s/ Philip M. Giordano*
                                          Philip M. Giordano

# Exhibit "A"

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VIKRAM P. GROVER D/B/A "IX ADVISORS" A/K/A "IXA", | |
| Plaintiff, | Case No. 21-cv-5054 |
| v. | Judge Mary M. Rowland |
| NET SAVINGS LINK, INC., WILTON GROUP, LIMITED, WILTON UK (GROUP), LIMITED, CHINA FOOD AND BEVERAGE CO., JAMES A. TILTON, and JOHN DOES 1 –100, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vikram Grover sued Defendants Net Savings Link, Inc. ("NSAV"), Wilton Group, Limited ("Wilton"), Wilton UK (Group) Limited ("Wilton UK"), China Food and Beverage Co. ("CHIF") (collectively, the "Corporate Defendants"), and James Tilton. Grover has moved for summary judgment against Tilton on Counts V–XV. [152]; [153]. For the reasons explained below, this Court grants Grover's motion for summary judgment in part.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

1

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## PROCEDURAL BACKGROUND

On September 23, 2021, Grover filed this action against NSAV, CHIF, the Wilton Parties, and James Tilton bringing various claims including breach of contract, unjust enrichment, tortious interference, and civil conspiracy based on Defendants failure to issue NSAV shares as compensation to Grover upon a change

2

of control and as specified in his contract.[1] [1]. Grover seeks specific performance for the issuance of 387,500,000 NSAV shares of Series B stock, convertible into freely tradeable shares of NSAV common stock, and the $50,000.00 debenture. *Id.*

Defendants CHIF, NSAV, and Tilton filed their Answer on February 11, 2022. [36]. The parties worked towards settling the matter but were unsuccessful. [58]; [66]; [80]; [82]. The parties moved forward with the case, but counsel for Defendants NSAV, CHIF, the Wilton Parties, and Tilton filed motions to withdraw from the case in April and May 2023. [87]; [88]; [100]; [101]. The Court granted defense counsel's motions to withdraw and gave all defendants until August 17, 2023 to find replacement counsel. [98]; [108].

At a status hearing on September 19, 2023, the Court noted that none of the defendants had retained counsel and found that the Corporate Defendants were in default in terms of responding to discovery. [113]. As Tilton was proceeding *pro se*, the Court ordered Grover to produce discovery requests directly to Tilton and directed Tilton to respond to discovery by October 3, 2023. *Id.* On October 10, 2023, after Tilton's discovery deadline passed, the Court granted in part Grover's motion to compel discovery by ordering that Tilton "provide response[s] to interrogatories without objections (those are waived) by 10/17/23" and finding that "[a]ll requests to

---

[1] The claims against the Corporate Defendants include specific performance (Ct. I), breach of contract (Cts. II–III), breach of implied covenant of good fair and fair dealing (Ct. IV), and accounting (Ct. XVI). The claims against Tilton, as well as some or all the Corporate Defendants, are unjust enrichment (Ct. V), tortious interference (Cts. VI–VII), promissory estoppel (Ct. VIII), fraud (Ct. IX), negligent misrepresentation (Ct. X), Illinois Wage Payment and Collection Act (Ct. XI), Illinois Securities Law of 1953 (Cts. XII–XIII), Illinois Consumer Fraud and Deceptive Business Practices Act (Ct. XIV), and civil conspiracy (Ct. XV).

3

admit are deemed admitted." [126]. The Court granted Tilton's request for additional time to produce documents until October 20, 2023, and later granted further extension until October 30, 2023. *Id.*; [131]. On December 5, 2023, the Court granted Grover's motion for default against the Corporate Defendants as they had not been represented for nearly six months and largely failed to participate in discovery. [146].[2]

On January 31, 2024, Grover moved for summary judgment against Tilton. [152]. Tilton filed three separate responses [154–155, 157]. Grover has moved to strike the two responses filed by Tilton after his response deadline. [158]. Long after the motion was briefed and following prompting by the Court, Grover's counsel belatedly complied with Local Rule 56.2's requirement of providing Tilton, as an unrepresented party, the Northern District's notice explaining the summary judgment process. [196]; [199]; *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (holding that a *pro se* litigant is entitled to notice of the consequences of failing to respond to a motion for summary judgment). Thus, the Court permitted Tilton, who as of August 15, 2024 was represented by counsel, to file a supplement to his summary judgment briefing. [202]; [207].

Tilton's supplement [207] raises several objections based in the federal rules of civil discovery to the nature and number of Plaintiff's requests to admit. Had Tilton been represented by counsel, he would have objected to them as burdensome, since there were 222 of them, and although he is not specific, he indicates that several of

---

[2] Defendant NSAV has recently obtained counsel and moved to vacate the default judgment. [203].

them are overly vague or call for legal conclusions. Tilton's supplement then asserts that the Complaint "contains genuine issues of law." [207] ¶ 12. He asserts that Complaint is flawed because Tilton was (1) not aware of any contract between former NSAV CEO Steven Baritz; (2) Plaintiff did not name Baritz as a defendant; (3) Plaintiff did not raise any concerns regarding his alleged employment status with Tilton; and (4) Plaintiff did not identify the parties to the conspiracy in alleging a civil conspiracy.[3] *Id.* ¶¶ 12–16.

## ANALYSIS

As a preliminary matter, Grover moves to strike Tilton's additional responses to his motion for summary judgment. [158]. Tilton timely filed a response to Grover's motion for summary judgment, *pro se,* on February 21, 2024. [154]. A day before Grover's reply was due, Tilton filed an additional response, and filed a second additional response two weeks later. [155]; [157]. The Court grants the motion to strike the additional responses in part and denies it in part. The Court strikes ¶ 10 of Tilton's response dated February 21, 2024 [154], because it discloses confidential settlement information. *See* Fed. R. Evid. 408. The Court denies Grover's request for sanctions. In light of Tilton's *pro se* status, the Court otherwise allows Tilton's filings to stand and considers them in response.

Even considering Tilton's filings, including the recent supplement filed with the assistance of counsel, Tilton has failed to respond to Grover's statement of material facts. The Seventh Circuit has explained the consequences of failing to

---

[3] In addition to being undeveloped, none of these arguments create genuine issues of material fact in order to defeat the motion to summary judgment.

comply with district courts' local rules governing summary judgment proceedings and

filings:

> Normally, when both a district court and this court consider a motion
> for summary judgment, the facts are taken in the light most favorable
> to the non-moving party. When the non-movant fails to comply with the
> district court's procedures for handling summary judgment motions,
> however, the non-movant may as a practical matter lose much of the
> benefit of that rule. Here, Adams failed to respond specifically to Wal-
> Mart's statement of material facts, as S.D. Ind. L.R. 56.1 required her to
> do if she wished to contest those facts. Therefore, as authorized by the
> rule, the district court treated Adams as having admitted Wal-Mart's
> version of the material facts. See S.D. Ind. L.R. 56.1(e). We too consider
> the facts in this light, accepting as true the material facts submitted by
> Wal-Mart that Adams did not properly contest.

*Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003) (citing *Schneiker*

*v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000)). *See Hinterberger v. City of*

*Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020) (no abuse of discretion where the

district court struck a party's entire statement of material facts "because requiring

the district court to sift through improper denials and legal argument in search of a

genuinely disputed fact would defeat the purpose of the [local summary-judgment]

rule. The district court does not shoulder the obligation to separate the fair from the

foul, doing the work for the parties and identifying what facts are truly disputed and

may require resolution at a trial."); *see also Harney v. Speedway SuperAmerica, LLC*,

526 F.3d 1099, 1104 (7th Cir. 2008) ("It is not the duty of the court to scour the record

in search of evidence to defeat a motion for summary judgment; rather, the

nonmoving party bears the responsibility of identifying the evidence upon which he relies.").

Tilton is not excused from these requirements and the consequences of failing to abide by them by virtue of his *pro se* status. "Even *pro se* litigants … are not exempt from procedural rules or the consequences of failing to comply with them." *Delices v. Bd. of Regents of U. of Wisconsin System*, No. 23-1594, 2023 WL 7272358, at *2 (7th Cir. Nov. 3, 2023). Given the failure to respond to Grover's statement of facts and failure to submit any cognizable facts of his own, the Court adopts the version of facts submitted by the Grover in whole. *See DJM Logistics, Inc. v. FedEx Ground Package System, Inc.*, 39 F.4th 408, 415 (7th Cir. 2022) ("Pro se litigants should be granted appropriate latitude in their dealings with courts and counsel for correct and honorable reasons. But being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders.")

Additionally, Federal Rule of Civil Procedure 36(b) provides that "[a] matter admitted … is conclusively established." "Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). As such, when a non-moving party has failed to timely respond to a movant's properly served request for

7

admissions, the default admissions may be used to support the movant's subsequent motion for summary judgment to establish undisputed facts. *See id.*

### A.  Unjust Enrichment and Promissory Estoppel

Grover moves for summary judgment on his unjust enrichment (Count V) and promissory estoppel (Count VIII) claims. To establish unjust enrichment, Grover must show the defendant has "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016). Here, it is undisputed that Grover, to his detriment, conferred a benefit to Tilton in the form of his services on behalf of NSAV in his role as Director of Corporate Finance. [152-1] ("SOF") ¶ 48; [152-3], Pl.'s Ex. 4 ("RFA") No. 4. Grover introduced Tilton to Steven Baritz, then-CEO of NSAV, with the intention of conducting a merger & acquisition and joint venture transaction ("MA&JV transaction") between the Wilton Parties and NSAV. SOF ¶ 14; RFA Nos. 20–21. Shortly after, because of Grover's services, Baritz, at the direction of Tilton, transferred his controlling shares to CHIF, of which Tilton is president, resulting in CHIF acquiring a majority of NSAV shares and effectuating a "change of control" as defined in Grover's Consulting Agreement, which triggered Grover's bonus of 5% of fully diluted NSAV stock. SOF ¶¶ 29, 32–33. Tilton, as NSAV's president, received the full benefit of Grover's services of organizing the transaction without compensating him for such.

To establish a claim of promissory estoppel under Illinois law, Grover must prove: "(1) defendant made an unambiguous promise to [him]; (2) [Grover] relied on such promise; (3) [Grover]'s reliance was expected and foreseeable by defendant; and (4) [Grover] relied on the promise to [his] detriment." *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 780 (Ill. 2016). Here, it is undisputed Grover relied on representations made by Tilton stating Grover would receive 5% of the Company's fully diluted shares upon completion of a MA&JV transaction with the Wilton Parties and CHIF. Throughout the negotiation process, before any such transaction occurred, Tilton delivered numerous letters of intent personally to Grover and Steven Baritz which outlined the proposed MA&JV transaction. SOF ¶¶ 21–23. These letters of intent explicitly reaffirmed Grover's compensation by stating that "Steven Baritz and Vikram Grover will each be issued three hundred eighty-seven million, five hundred thousand (387,500,000) Series B preferred shares and $50,000.00 in debentures" upon completion of the transaction. *Id.* ¶ 22; [152-3], Pl.'s Ex. 9. Tilton assured Grover numerous times that he would "get paid." SOF ¶ 23; [152-3], Pl.'s Ex. 10. As a result of Tilton's promise that the proposed transaction would trigger Grover's bonus, Grover relied to his detriment and continued to perform services to complete such transaction. When the transaction was complete, as evidenced through NSAV's Form 8-K filing, Grover received nothing. SOF ¶ 40. Tilton has refused to deliver Grover the shares. *Id.* ¶ 38; RFA No. 36.

Therefore, the Court grants summary judgment against Tilton on the unjust enrichment and promissory estoppel claims.

**B.** **Tortious Interference**

Grover moves for summary judgment on his tortious interference with advantageous business and contractual relations (Count VI) and tortious interference with prospective economic advantage claims (Count VII). The elements of a claim for tortious interference with prospective economic advantage are: "(1) a reasonable expectancy of entering into a valid business relationship, (2) defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007). Tilton admitted he interfered with, convinced, and encouraged NSAV and Baritz to discontinue their business dealings with Grover and discontinue any business relationships between him and Grover. SOF ¶ 42; RFA Nos. 48–49. Tilton further admitted that he has interfered with the Grover's prospective business and economic advantage with PowerUp and other third parties and convinced and encouraged PowerUp to discontinue its business dealings and relationships with Grover in the future. SOF ¶ 43; RFA No. 50. Tilton has further admitted he did so intentionally, willfully, recklessly, and knowingly with improper motives. RFA Nos. 49, 51. Thus, the Court grants summary judgment against Tilton on both tortious interference claims.

**C.** **Fraud and Negligent Misrepresentation**

Grover moves for summary judgment on his fraud (Count IX) and negligent misrepresentation claims (Count X). To sustain an action for fraud under Illinois law,

Grover must prove that: "(1) the defendant made a false statement of material fact; (2) the defendant knew or believed that the statements were false, or the statements made with a reckless disregard of whether they were true or false; (3) the statements were made with the intent to induce action; (4) the plaintiff reasonably believed the statements and justifiably acted in reliance on those statements; and (5) the plaintiff suffered damages as a result." *Kapelanski v. Johnson*, 390 F.3d 525, 530–31 (7th Cir. 2004). To prove a negligent misrepresentation claim under Illinois law, Grover must prove: "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty on the party making the statement to communicate accurate information." *Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 547 (7th Cir. 2020) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006)).

It is undisputed that Tilton, by and through representations made in his various agreements with Grover, falsely asserted that Grover would receive 5% of NSAV's fully diluted shares upon completion of a MA&JV transaction with another private entity. SOF ¶¶ 21–23. Tilton circulated numerous letters of intent to Grover with the express provision that Grover would receive his contractually owed issuance of NSAV shares, and Tilton affirmatively reassured Grover that he would get paid for his services. *Id.* Tilton knew these representations were made solely to induce Grover to provide his services and knew Grover was not going to be compensated regardless

11

of the services he provided. SOF ¶¶ 37–38; RFA Nos. 36, 68, 70. Tilton induced Grover to provide his efforts, expertise, and contacts to NSAV by intentionally concealing from Grover the full and complete negotiations and transactions between and among Defendants Tilton, CHIF, the Wilton Parties, and then-CEO Baritz of NSAV, including but not limited to the change of control as to NSAV. RFA No. 70. Thus, the Court grants summary judgment against Tilton on the fraud and negligent misrepresentation claims.

### D. IWPCA

Grover moves for summary judgment on his Illinois Wage Payment and Collection Act ("IWPCA") claim (Count XI). The IWPCA defines an employer as "any individual … acting directly or indirectly in the interest of the employer in relation to an employee, for which one of more persons is gainfully employed." 820 ILL. COMP. STAT. 115/2. Additionally, "wages" are defined as "as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." *Id.* Here, it is undisputed that Grover was party to an employment contract with NSAV at all relevant times. SOF ¶ 11. Grover signed a Consulting Agreement with NSAV that outlined his employment duties and responsibilities at NSAV, as well as a compensation plan that laid out a commission-based salary. *Id.* ¶ 5. It is undisputed that Grover became an "employee" of NSAV as defined within the Act upon the execution of such Consulting Agreement. *Id.* ¶ 6. On January 23, 2016, Tilton became the president, principal executive officer, secretary, treasurer, principal financial officer and principal accounting officer of NSAV, and therefore

became Grover's "employer" for purposes of the IWPCA. *Id.* ¶ 28. Tilton admits that the transfer of controlling NSAV shares to CHIF effectuated a "change of control" under the Agreements and Grover was owed 387,500,000 Series B preferred shares of NSAV stock and $50,000.00 in debentures, triggering a provision of the Consulting Agreement. *Id.* ¶¶ 32–35; RFA Nos. 33–35, 210. Grover has never received that compensation. Thus, the Court grants summary judgment against Tilton on the IWPCA claim.

### E. Illinois Securities Law

Grover moves for summary judgment on his claims under the Illinois Securities Law of 1953 (Counts XII–XIII). A defendant is in violation of the Security Law if he

> Engage[s] in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof, [or] ... obtain[s] money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

815 Ill. Comp. Stat. 5/12 (F) & (G). Any person who participates or aids in the making of a fraudulent sale in violation of the Illinois Securities Law is jointly and severally liable to the purchaser:

> (1) for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated ... less any income or other amounts received by the purchaser on the securities; ... or (2) if the purchaser no longer owns the securities, [then liability will be] for the amounts set forth in clause (1) ... less any amounts received by the purchaser for or on account of the disposition of the securities.

815 ILL. COMP. STAT. 5/13(A)(1) & (2). Moreover, a "controlling person" is "any person offering or selling a security, or group of persons acting in concert in the offer or sale of a security, owning beneficially ... such number of outstanding securities of the issuer of such security as would enable such person, or group of persons, to elect a majority of the board of directors or other managing body of such issuer." 815 ILL. COMP. STAT. 5/2.4.

Here, it is undisputed that Tilton fraudulently induced Grover to provide services for NSAV in exchange for the promise of payment via securities. SOF ¶ 65; RFA No. 59. The agreement was never meant to be honored and was made solely to persuade Grover to perform services on behalf of the companies. SOF ¶ 27; RFA Nos. 30–31, 70, 197–98. The fraud was continuous throughout Grover's employment at NSAV, as his Consulting Agreement with NSAV containing these misrepresentations, constantly renewed monthly. SOF ¶ 10; RFA No. 9. Further, Tilton is a "controlling person" under the Illinois Securities Law because it is undisputed that on February 9, 2016, upon Steven Baritz's transfer of 5,000,000 restricted shares of Series A Preferred stock to Tilton, Tilton possessed 62.69% of NSAV's voting control. SOF ¶ 44. As such, Tilton owned the number of shares that would enable him "to elect a majority of the board of directors or other managing body" of NSAV. *See* 815 ILL. COMP. STAT. 5/2.4. Thus, Tilton is liable and the Court grants summary judgment against him on the Illinois Securities Law claims.

**F.  ICFA**

Grover moves for summary judgment on his Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count XIV). The ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILL. COMP. STAT. 505/2. The elements of an ICFA claim are: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 934-35 (7th Cir. 2010). Here, Grover asserts that it is undisputed that Tilton fraudulently induced Grover to perform services on behalf of himself and the NSAV under the false promise that Grover would receive securities and payment for such work. SOF ¶¶ 22–23; RFA No. 70. Additionally, Tilton attempted to fraudulently conceal from Grover the change-of-control resulting from Steven Baritz's stock transfer to Tilton, to deprive Grover of his rightfully earned commission for facilitating the transaction. SOF ¶ 27; RFA Nos. 30–31, 70, 197–98. Grover then asserts that he is entitled to a recovery under the ICFA because, due to Tilton's deceptive acts, Grover has not received any compensation for his work at NSAV and has continuously experienced harm resulting therefrom. SOF ¶ 38; RFA No. 36.

While Tilton's actions may qualify as "deceptive acts" under ICFA, Grover does not have standing to bring a claim. The Consumer Fraud Act is, not surprisingly,

concerned with protecting consumers. The Act defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT. 505/1(e). A business may bring suit under the Act when it is the consumer. *Vulcan Golf, LLC v. Google Inc.*, 552 F.Supp.2d 752, 777 (N.D. Ill. 2008); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358, 1368 (N.D. Ill. 1996); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010). There are no facts establishing that Grover d/b/a IX Advisors is a consumer. To the contrary, several undisputed facts establish that it is in an employment relationship with NSAV and Tilton.

Non-consumer businesses can sue other businesses under the Act if they are able to allege that the deceptive conduct "involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Indus. Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 812 (N.D. Ill. 1995); *Freedom Mortg. Corp.*, 720 F.Supp.2d at 1004; *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989); *see also Gold v. Golden G.T., LLC*, 2005 WL 2465815, at *4 (N.D.Ill. Oct. 4, 2005) (explaining that the consumer nexus requirement may be satisfied by showing that the alleged deception was "directed to 'consumers,' as opposed to simply 'customers' of the business plaintiff"); *Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 912 (N.D.Ill.2012) (allegations insufficient where plaintiff "fail[ed] to allege that the letters and written notices she received concerned anyone other than her or that

Defendants made misrepresentations to the general public"). The deception here was directed to Grover and whether he would personally be compensated pursuant to promises made to him. He cannot properly assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Count XIV is dismissed with prejudice.

### G. Civil Conspiracy

Grover moves for summary judgment on his civil conspiracy claim (Count XV). To prevail on a conspiracy claim under Illinois law, Grover must establish: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino*, 477 F.3d at 509. As discussed, Tilton, in concert with then-CEO Steven Baritz, CHIF and the Wilton Parties, fraudulently concealed NSAV's change-of-control from Grover to prevent Grover from receiving his commission and refused to compensate him when such change of control occurred. SOF ¶¶ 22–23, 27; RFA Nos. 30–31, 70, 197–98. Inferring from the circumstances, the fraud was perpetuated by the Corporate Defendants and Tilton, together in concert, to avoid any payment to Grover while they reaped the benefits of his services. *See id.* Thus, the Court grants summary judgment against Tilton on the civil conspiracy claim.

### H. Damages

Grover seeks damages in the amount of $57,903,750.00. As described above, Tilton directly participated in various fraudulent schemes to deprive Grover of his

contractually owed issuance of 387,500,000 Series B preferred shares of NSAV stock and $50,000.00 in debentures. On August 2, 2021, NSAV's price peaked at a price of $0.1493 per share, meaning that Grover was deprived of shares worth a total value of $57,853,750.00. This, in addition to the $50,000 in debentures also contractually owed, Grover has suffered damages in an amount of at least $57,903,750.00.[4]

## CONCLUSION

For the stated reasons, the Court grants in large part Plaintiff's motion for summary judgment [152] [153] and enters judgment against Tilton on Counts V–XIII and XV. The Court dismisses Count XIV with prejudice. The Court denies Plaintiff's motion to strike the additional responses [158] in part and grants it in part.

E N T E R :

Dated: August 26, 2024

_____
MARY M. ROWLAND
United States District Judge

---

[4] Grover also seeks equitable relief in terms of specific performance. As the Court has granted certain injunctive relief against NSAV [167, 168], the Court declines to grant any further equitable relief.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

```
===============================
                               :
VIKRAM P. GROVER d/b/a         :
 "IX ADVISORS" a/k/a "IXA,"    :
                               :
        Plaintiff,             :
                               :
        v.                     :
                               :
NET SAVINGS LINK, INC., a      :
 Colorado corporation and formerly :
 organized as a Nevada corporation, :    Civil Action No. 1:21-CV-05054
WILTON GROUP, LIMITED, as      :
 registered in the Isle of Man, U.K., :    REQUEST FOR HEARING
WILTON UK (GROUP), LIMITED, as :         ON SEPTEMBER 4, 2024
 registered in England and Wales, U.K., :
CHINA FOOD AND BEVERAGE CO.,   :
 a Colorado corporation, and   :
JAMES A. TILTON,               :
                               :
        Defendants.            :
                               :
        v.                     :
                               :
PACIFIC STOCK TRANSFER,        :
NSAVX, INC., a Wyoming corporation, :
and JOHN DOE CORP., a/k/a      :
NSAVX.COM, a Puerto Rican      :
corporation,                   :
                               :
        Trustee-Defendants.    :
                               :
===============================
```

**[PROPOSED] ORDER ON PLAINTIFF VIKRAM P. GROVER'S**
**EMERGENCY MOTION FOR ATTACHMENT AND ATTACHMENT**
**BY TRUSTEE PROCESS AGAINST DEFENDANT JAMES TILTON**

**ROWLAND, J.**

WHEREFORE, upon motion of the Plaintiff, Vikram Grover, and upon review of the Memoranda, Affidavits, <u>Exhibits</u> and other filings, and upon a hearing as to the merits of such applications, and with consideration of the submissions, filings and arguments of the Parties:

HOLDING AND FINDING that on August 26, 2024, this Court rendered a Summary Judgment against the Defendant, James A. Tilton (hereinafter "Tilton") in the amount of **<u>$57,903,750.00</u>**; and

HOLDING AND FINDING that on August 26, 2024, the Plaintiff filed his Emergency Motion for Attachment and Attachment by Trustee Process against the Defendant, James Tilton, together with his employees, agents and persons, and any and all affiliates, and/or entities acting in concert with him with actual notice of this Court's Orders, including but not limited to Pacific Stock Transfer Co. (hereinafter the "Pacific Stock" or "Pacific"), and the Defendants, Net Savings Link, Inc. (hereinafter "NSAV"), China Food and Beverage Co. (hereinafter "CHIF"), Wilton Group, Limited (hereinafter "Wilton Isle of Man"), and Wilton UK Group, Limited (hereinafter "Wilton UK," and collectively, with Wilton Isle of Man, hereinafter as "Wilton Group" or Wilton") (collectively the "Corporate Defendants") and NSAVx, Inc., a corporation duly organized in the State of Wyoming (hereinafter "NSAVx-Wyoming"), and John Doe Corp a/k/a NSAVx, Inc., a corporation duly organized in Puerto Rico (hereinafter "NSAVx-PR" and collectively, with Pacific and NSAVx-Wyoming, hereinafter as the "Defendant-Agents"), seeking to attach certain assets and shares of Defendant Tilton; and

HOLDING AND FINDING that the Plaintiff has adequately shown at least one (1) of the (10) varieties of cause as listed in 735 ILCS 5/4-101; and

HOLDING AND FINDING that the Plaintiff has demonstrated a reasonable likelihood of success on the merits of his claims against Defendant James Tilton.

2

HOLDING AND FINDING that, due to likelihood of fraud, the absence of any evidence to the contrary, the Plaintiff has reasonably requested an Order of Attachment on all assets of Defendant Tilton, including but not limited to any and all cryptocurrency assets, such as tokens, coins, or otherwise, and any and all shares, held in the name of Tilton or for his beneficial interest, in NSAV, CHIF and/or any other entities;

HOLDING AND FINDING that, due to the absence of any evidence to the contrary, the Plaintiff has reasonably requested an Order of Attachment on all NSAV Shares in possession, custody and/or control of its Transfer Agent, Pacific Stock Transfer and/or any successor transfer agent, and any and all shares in possession, custody and/or control of James A. Tilton, until such assets can be readily identified.

HOLDING AND FINDING that an Order of Attachment on <u>all</u> of Tilton's NSAV's Total Assets in an amount equaling **$57,903,750.00** be entered against Defendant Tilton in order to ensure satisfaction of the Plaintiff's award.

HOLDING AND FINDING that an Order of Attachment on all NSAV shares in the name of Tilton or for his beneficial interest, as in possession, custody and/or control of Pacific Stock Transfer, and/or any successor transfer agent, be entered.

HOLDING AND FINDING that an Order of Attachment on all NSAV shares in possession, custody and/or control of Defendant James A. Tilton, Pacific, any other transfer agent, or any other entity or person, totaling **40,000,000 or more Series A Preferred Shares**, be entered.

3

THEREFORE, It is hereby ORDERED that the Plaintiff's Emergency Motion for Attachment and Attachment by Trustee Process against the Defendant Tilton is **<u>GRANTED</u>**; it is

**<u>SO ORDERED</u>**.

/s/_____
Honorable Mary M. Rowland
DATE: _____, 2024        United States District Judge

4

**<u>CERTIFICATE OF SERVICE</u>**

I, Philip M. Giordano, do hereby certify that on the 26th day of August, 2024, I caused to be served a true and correct copy of Plaintiff Vikram P. Grover's [Proposed] Order Memorandum for an Attachment and Attachment by Trustee Process Against Defendant James Tilton, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same to the following:

Jawad I. Fitter, Esq. (Local Counsel Defendant NSAV)
Bar ID Number: 6331338
Fitter Law, LLC
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: 312-741-1073
Email: Jawad@FitterLaw.com

Andrew Roman Perrong, Esq. (for prospective *Intervenor* WFD Capital, LLC)
Perrong Law LLC
2657 Mt. Carmel Ave
Glenside, PA 19038
Tel: (215) 225-5529
Email: a@perronglaw.com

Mason Cole, Esq. (Counsel to NSAV and Tilton)
Cole Sadkin, LLC
1652 W. Belmont Avenue, Suite 1, Chicago, IL 60657
Telephone: (312) 548-8610
Email: mcole@colesadkin.com

Jeffrey R. Tone, Esq. (Local Counsel for Plaintiff)
KATTEN & TEMPLE, LLP
The Rookery Building
209 South LaSalle Street, Suite 950
Chicago, Illinois 60604
Telephone: (312) 663-4400
Email: jtone@kattentemple.com

Dated: August 26, 2024               */s/ Philip M. Giordano*
                                      Philip M. Giordano