UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

===============================

| | : | |
|---|---|---|
| **VIKRAM P. GROVER** d/b/a "IX ADVISORS" a/k/a "IXA," | : : : | |
| **Plaintiff,** | : : | |
| v. | : : : | |
| **NET SAVINGS LINK, INC.,** a Colorado corporation and formerly organized as a Nevada corporation, **WILTON GROUP, LIMITED,** as registered in the Isle of Man, U.K., **WILTON UK (GROUP), LIMITED,** as registered in England and Wales, U.K., **CHINA FOOD AND BEVERAGE CO.,** a Colorado corporation, and **JAMES A. TILTON,** | : : : : : : : : : : : : | **Civil Action No. 1:21-CV-05054** Honorable Mary M. Rowland <br><br> **REQUEST FOR A HEARING** |
| **Defendants,** | : : | |
| v. | : : : | |
| **PACIFIC STOCK TRANSFER CO.,** | : : | |
| **Nominee-Defendant.** | : : | |

===============================

**PLAINTIFF VIKRAM GROVER'S MEMORANDUM OF LAW IN OPPOSITION OF INTERIM RECEIVER'S REPORT AS TO BANKRUPTCY PROCEEDINGS FOR NSAV AND IN SUPPORT OF HIS MOTION TO COMPEL TRANSFER OF NSAV AND CHIF SHARES OF DEFENDANTS TO PLAINTIFF, AND COMPELLING FORMER NSAV CEO KNOLL TO DELIVER AND DISCLOSE NSAV DOCUMENTS**

**I. INTRODUCTION**

The Plaintiff, Vikram P. Grover (hereinafter "Mr. Grover"), pursuant to Federal Rule of Civil Procedure, respectfully submits his Memorandum to this Honorable Court opposing the recommendation of the Interim Receiver, David Castleman, Esq. (hereinafter the "Temporary

1

Receiver" or the "Receiver") to cause Defendant Net Savings Link, Inc. (hereinafter "NSAV") to file a Bankruptcy Petition with the U.S. Bankruptcy Court, as beyond the scope of this Court's mandate to the Receiver and contrary to the objective of securing assets and protecting creditors and/or shareholders who may be victims of the Defendants' fraud. Due to the fraud that has been perpetrated by the Defendants during and before these proceedings, a filing with the U.S. Bankruptcy Court is an inappropriate remedy.

The Plaintiff also respectfully submits this Memorandum for an Order transferring all shares, whether common stock or preferred shares, in Treasury of Defendant NSAV and/or all shares as may be held by Defendant James A. Tilton (hereinafter "Tilton"), whether registered with the NSAV stock transfer agent or not, Pacific Stock Transfer Co. (hereinafter the "Pacific Stock" or "Pacific") and/or any successor stock transfer agent (hereinafter the Transfer Agent"), as Nominee-Defendants. Additionally, the Plaintiff moves this Court for an Order transferring all shares, whether common stock or preferred shares, in Treasury and/or as authorized and issued by Defendant China Food and Beverage Co. (hereinafter "CHIF") and/or held by Defendant Tilton, whether registered with a CHIF Transfer Agent or not, including but not limited to Pacific Stock, as Nominee-Defendants.  If necessary, the Plaintiff asserts that the NSAV shares and CHIF shares in the name of Tilton or his nominee be cancelled and the identical shares be registered in the name of the Plaintiff or his nominee.

The Plaintiff states that since Final Judgment has entered in this action against Defendants Tilton, NSAV and CHIF, this Court should enter an Order compelling: a) the transfer of any and all shares of NSAV and CHIF, held in Treasury to the Plaintiff or his nominee; and b) the transfer of any and all shares of NSAV and CHIF, in the possession, custody and/or control of Defendant Tilton or his representatives, employees, agents and persons, and any and all affiliates and/or

2

entities acting in concert with them with actual notice of this Court's Orders, to the Plaintiff or his nominee, in the (very) limited partial satisfaction of the Judgment, and such other relief as is appropriate.

Finally, the Plaintiff requests that this Court enter an Order compelling the former Chief Executive Officer (hereinafter "CEO"), Alfonso Knoll (hereinafter "Knoll") to delivery and disclose to the Plaintiff any and all documents and tangible things which are the property of NSAV, whether electronic or hard copy, or upon any electronic device in his custody, possession, or control. According to the Receiver, Knoll, as former NSAV CEO, has absconded with electronic device(s), which contain critical assets and property of Defendant NSAV. These assets must be returned and be available for the satisfaction of the Plaintiff's Judgment.

The Plaintiff requests a hearing on his Motions and his Response to the Receiver's Report.

## II. FACTUAL BACKGROUND

On or around September 23, 2021, Mr. Grover filed a Complaint (the "Complaint") against NSAV, CHIF, Wilton Group, Wilton UK (Group), and Tilton (collectively the "Defendants"). *See* Dkt. No. 1. Mr. Grover obtained a Judgment against Defendants NSAV and Tilton on September 5, 2024 (the "Grover Judgment"). *See* Dkt. No. 218. After notice and hearings, the Court issued an order appointing David A. Castleman as Temporary Receiver for NSAV. *See* Dkt. No. 226.

The Temporary Receiver filed his initial written report (the "Initial Report") to apprise the Court of the actions he has taken with respect to NSAV, what assets he discovered, any steps he may have taken to secure or protect such assets, and recommendations for next steps. *See* Dkt. No. 232. He evaluated NSAV operations, financial condition, and purported assets, with his focus on NSAV's Second Quarter 2024 "Amended Quarterly Report," filed October 2, 2024 (the "Q2 Report"). *Id*.

3

The Q2 Report reported $11 billion in net income, largely based on revenue purportedly earned by various cryptocurrency development and incubation activities. *Id*. The Receiver was informed that the only potential productive asset is the investment in a cryptocurrency exchange (the "AWH Exchange") operated by Active World Holdings, Inc. ("AWH"), a company that is currently seeking protection under subchapter V of Chapter 11 of the U.S. Bankruptcy Code in the Eastern District of Pennsylvania. *Id*. According to the Initial Report, neither the investment in the AWH Exchange nor the tokens themselves have any ascertainable value above zero or any ability to satisfy or fund the Grover Judgment. *Id*.

Defendant Tilton at all relevant times is the principal executive and financial office of NSAV. *Id*. Knoll is the principal of AWH who resigned as CEO of NSAV on September 26, 2024 (the day before the Receiver was appointed, but after a hearing for such was scheduled). *Id*. The Temporary Receiver received a number of requests from Tilton and Knoll to approve the issuance of new shares to fund existing operational expenses. *Id*. Both Tilton and Knoll have requested NSAV fund various activities including purported development costs of the AWH Exchange by selling substantial numbers of NSAV shares. *Id*. The most recent request was for over 66 million shares – three times the average daily trading volume – in order to pay ordinary course expenses of NSAV. *Id*. Given the underlying fraud in the NSAV financials, the Receiver denied the request.

Additionally, the remaining current assets totaling around $84 million, are also apparently illusory. The vast majority of these assets appear to be investments that NSAV made in partnership with Silverbear Capital Inc. ("Silverbear"). *Id*. The investments were generally made using vague two-page contracts which called for the issuance of a convertible note and a small amount of case and freely tradable NSAV shares to make such investment. *Id*. This investment would often be accompanied with a press release that would on occasion precede a spike in the NSAV stock price.

4

However, none of the investments appear to have provided NSAV and value, and NSAV does not appear to have any verifiable interest in any actual underlying company. *Id*. Indeed, the only verifiable asset the Receiver was able to find was $43 in an NSAV business checking account. *Id*.

Based on his review of NSAV's financial information and course of conduct, the Temporary Receiver did not identify any asset of NSAV that could be used to satisfy the Grover Judgment. *Id*. According to the Initial Report, "[t]he only access to capital appears to be the issuance and sale of shares on the public market, but the financial information in Q2 Report is so unreliable and potentially fictitious that any issuance of shares would create a substantial risk of violations of state and federal securities laws." *Id*. The Temporary Receiver is "concerned that the asset values reported in the Q2 Report do not have any substantive support and appear to be likely inaccurate" *Id*.

As a part of the Temporary Receiver's recommendations, "<u>subject to the views of the Parties in this Action</u> – NSAV file Chapter 7 Bankruptcy…" *Id*. (emphasis added). In a Minute Entry by Justice Rowland, the Parties had until November 25th, 2024 to file objections to the Temporary Receiver's Report. *See* Dtk. No. 235. For the forgoing reasons, the Plaintiff objects to the Receiver's Report to the extent that it recommends Chapter 7 Bankruptcy Proceedings, and instead respectfully requests that this Honorable Court enter an Order transferring all NSAV assets from the Defendants to the Temporary Receiver and Compels Alfonso Knoll to produce all electronic and non-electronic documents related to NSAV and this action.

5

## III. ARGUMENT

### A. The Receiver's Initial Report Supports a Finding NSAV Obtained a Benefit Due to Fraud, Making the Grover Judgment Non-Dischargeable

Based on the findings in the Temporary Receiver's Initial Report, it is likely that NSAV, its representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with them have been engaged in and/or are continuing to engage in securities fraud by inflating the value of NSAV assets. This is not a bankruptcy case, but the Bankruptcy Code is instructive as to whether bankruptcy proceedings should be pursued as a fruitful process.

The Supreme Court stated: "One of the main purposes of the federal bankruptcy system is to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758, 201 L. Ed. 2d 102 (2018) (internal quotation marks and alterations omitted). However, the Seventh Circuit explained § 523(a) of the Bankruptcy Code lists eighteen categories of debts that are excepted from discharge. *Matter of Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998). To prove non-dischargability under 11 U.S.C.S. § 523(a)(2)(A), a creditor must establish that 1) the debtor obtained the money or property through a representation that was false or was made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the debtor had an actual intent to defraud; and (3) the creditor justifiably relied on the false representation. *See In re Maurice*, 21 F.3d 767, 774 (7th Cir. 1994); *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). Therefore, "if a debtor obtains a benefit of some sort due to fraud, the debt created by the fraud is non-dischargeable." *Gieseking v. Thomas,* 358 B.R. 754, 768 (S.D. Ill. 2007).

Here, it is clear from the Receiver's Initial Report that fraud is a likely element in NSAV's financial information and course of conduct. Although NSAV's Q2 Report purported to inflate NSAV's assets to upwards of $11 billion dollars, the Temporary Receiver reported that there are

no assets of NSAV that could be used to satisfy the Grover Judgment. Indeed, at most, NSAV has available to it about $43 in its business checking account. Indeed, even though outside the scope of his report, the Temporary Receiver could not help but note, "…the financial information in Q2 Report is so unreliable and potentially fictitious that any issuance of shares would create a substantial risk of violations of state and federal securities laws." *See* Dkt. No. 232. In further support of its fraudulent activities, the Defendant's website, nsavx.com, has been removed or otherwise made unavailable to the general public.

Furthermore, this Court has entered a Judgment against Defendant NSAV on Grover's behalf which is based, in whole or in part, in allegations of fraud. As a result, a filing with the U.S. Bankruptcy Court will merely stall and delay the process, and will not result in a discharge of the Plaintiff's Judgment. In short, nothing would be accomplished by a bankruptcy proceeding but more filings and delay.

The Plaintiff therefore respectfully requests that, due to the fraudulent nature of NSAV's financial situation and the priority of the outstanding Grover Judgment, that to best accomplish the satisfaction of applicable debts, this Court forgo bankruptcy proceedings in favor of transferring all Treasury shares of NSAV, and any and all NSAV shares in the possession, custody or control of Defendant Tilton, to the Plaintiff and provide him with an opportunity to potentially turn NSAV around, and/or obtain partial satisfaction as to his Final Judgment.

**B. As a Judgment Creditor, Bankruptcy Proceedings Are Not in the Plaintiff's Best Interest**

While the Receiver's task includes identifying next steps in this proceeding, a recommendation of bankruptcy proceedings is outside the scope of his duties. The appointment of a receiver is an extraordinary remedy and the interests of all parties concerned should be safeguarded. *Chicago Title & Trust Co. v. Lauletta*, 265 Ill. App. 564, 569 (1932). A receiver is

appointed to preserve the property in controversy and prevent its loss or destruction. I*ndianapolis Dairymen's Co-op v. Bottema*, 226 Ind. 237, 79 N.E.2d 399 (1948). The one seeking to subject the property to an indebtedness is entitled to consideration. *Chicago Title*, 265 Ill. App. at 569.

The Plaintiff respectfully contends that Bankruptcy proceedings are not in their best interest. Indeed, as a part of the Temporary Receiver's recommendations, "subject to the views of the Parties in this Action – NSAV file Chapter 7 Bankruptcy…" *See* Dkt. No. 232 (emphasis added). The view of the Plaintiff is that, should the Court order NSAV to begin Bankruptcy proceedings, any possible satisfaction of the Grover Judgment would be lost. Therefore, in order to preserve the property in controversy and prevent its loss or destruction, this Court should forgo Bankruptcy proceedings and instead transfer any existing and outstanding NSAV assets owned by the Defendants to the Temporary Receiver for their safeguard and subsequent distribution.

**C.        This Court Should Transfer all NSAV and CHIF shares to the Plaintiff**

In a limited satisfaction of the executed Final Judgment against Defendants NSAV, CHIF and Tilton, the Plaintiff respectfully states that this Court should order that all available Treasury shares of NSAV and of CHIF, and all shares of NSAV and CHIF common and preferred stock in the possession, custody or control Defendant Tilton or his agents and affiliates must be immediately transferred and delivered to the Plaintiff. The Plaintiff will thereafter be free to take control the NSAV and CHIF entities, terminate Tilton of any and all positions he may hold, and seek to determine if there is any value in the corporations which can be monetized to satisfy Mr. Grover's Judgment.

Under Federal Rule of Civil Procedure 69(a)(1): "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state

8

where the court is located, but a federal statute governs to the extent it applies." Thus, in Illinois, whose rules regarding judgment relief this Court must follow, the court may, by appropriate order or judgment, "[c]ompel the judgment debtor to deliver up, to be applied in satisfaction of the judgment, in whole or in part, money, choses in action, property or effects in his or her possession or control, so discovered, capable of delivery and to which his or her title or right of possession is not substantially disputed." 735 ILCS 5/2–1402(c)(1).

Additionally, Illinois statute 735 ILCS 5/2-1402(c)(1) provides that when assets of the judgment debtor not exempt from satisfaction are discovered, a court may compel the judgment debtor to satisfy the judgment by turning over assets in satisfaction of the judgment, i.e., property in the judgment debtor's possession or control capable of delivery. Here, as evidenced by the Temporary Receiver's Report, the only identifiable property belonging to NSAV are its remaining shares and a bank account worth $42.79. As is provided in NSAV's Quarterly Report for the period ending June 30, 2024, NSAV currently possesses 12,412,132 Series B shares out of the 1,300,000,000 Series B shares authorized. Further, James A. Tilton currently possesses 40,000,000 Series A Preferred shares of NSAV stock. As such, NSAV's 12,412,132 Series B shares and Defendant James A. Tilton's 40,000,000 Series A Preferred shares, as property within their possession and control, should be immediately delivered to the Plaintiff in partial execution of the $64,685,627.57 judgment against them.

Mr. Grover respectfully asserts an Order should be entered compelling the transfer of all shares, whether common stock or preferred shares, in Treasury and/or as authorized and issued by Defendants NSAV and CHIF, and/or held by Tilton, or in his possession, custody or control. Such shares must be delivered to Mr. Grover, whether registered with the NSAV or CHIF stock transfer agent, Pacific Stock Transfer Co. (hereinafter the "Pacific Stock" or "Pacific") and/or any

9

successor stock transfer agent (hereinafter the Transfer Agent"), as Nominee-Defendants. Additionally, the Order must also include any and all representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with NSAV, CHIF or Tilton, with actual notice of this Court's Orders. If permitted, the Plaintiff will submit a [Proposed] Order for consideration by this Court.

The Plaintiff respectfully contends that Final Judgment has entered in this action against Defendants Tilton, NSAV and CHIF, and this Court's Order compelling: a) the transfer of any and all shares of NSAV and CHIF, together with affiliates, held in Treasury; and b) the transfer of any and all shares of NSAV and CHIF, in the possession, custody and/or control of Defendant Tilton, or his representatives, employees, agents and persons, and any and all affiliates and/or entities will assist the Plaintiff in the satisfaction of the Judgment, as he seeks to collect upon his Judgment, and such other relief as is appropriate.

D. **This Court Should Compel Alfonso Knoll to Disclose All Electronic And Non-Electronic Documents In His Possession to the Plaintiff**

Finally, Alfonso Knoll, as former CEO of NSAV and a participant in the Receiver's investigation, should be ordered and compelled to produce the custodian, location amount, and all complete details, data and information, as to any and all assets, monies, credits, rights, contracts and/or things, tangible and/or intangible related to the operation of NSAV and any and all documents, communications, and related information requested originally by the Temporary Receiver. This Court has broad latitude in compelling third-parties to comply with reasonable requests for a production of documents by plaintiffs. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2013 WL 791432, at *2 (N.D. Ill. Mar. 4, 2013).

As provided in the Temporary Receiver's Report, Alfonso Knoll was a named participant in the Temporary Receiver's investigation, yet failed to cooperate in such. Specifically with regard

10

to Knoll's participation, the Temporary Receiver wrote: "After the Receivership Order was entered, Knoll maintained communication with the Temporary Receiver providing some, *but not all*, requested documents." *See* Temporary Receiver Report, p. 11 (emphasis added). As such, in order to ensure that the full scope of NSAV and Alfonso Knoll's activities, documents, communications, and other information are accounted for, this Court should compel Knoll to furnish all of the Temporary Receiver's requested information.

Alfonso Knoll should additionally comply with further document and information requests regarding NSAV due to this Court's June 26, 2024 Order on the Plaintiff's Emergency Motion for Temporary, Preliminary, and Permanent Injunctive Relief and Specific Performance. *See* Dkt. No. 168. According to the Order, it was:

> "FURTHER ORDERED that the Enjoined Defendants identify and describe, in complete detail, with all relevant information, writing and under oath, *by an authorized officer of each such Defendant* and Enjoined Defendant, the custodian, location amount, and all complete details, data and information, as to any and all assets, monies, credits, rights, contracts and/or things, tangible and/or intangible, that have been removed, sold, encumbered, hypothecated, conveyed, transferred, assigned and/or moved, directly or indirectly, from the Defendants and the Defendant-Agents since the commencement of this litigation."

Dkt. No. 168, p. 4.

It is undisputed that Alfonso Knoll, as CEO of NSAV within the relevant time period, is and was under this Court's mandate to produce all relevant information regarding NSAV's operation. This he has simply failed to do. As such, this Court should compel Alfonso Knoll to adequately comply with all document and information requests made by both the Plaintiff and the Temporary Receiver in this action.

## IV. CONCLUSION

In sum, the Plaintiff, Vikram Grover, respectfully moves this Honorable Court for an Order 1) rejecting the recommendation of Interim Receiver, as set forth in his Report, and the filing of bankruptcy proceedings as to Defendant NSAV; 2) compelling NSAV to deliver and assign all shares held in Treasury, by Defendant NSAV, to the Plaintiff, and register the same with Pacific or the Transfer Agent; 3) compelling CHIF to deliver and assign all shares held in Treasury, by Defendant CHIF, to the Plaintiff, and register the same with Pacific or the Transfer Agent; 4) compelling NSAV to deliver and assign all NSAV shares, as held by the Defendant and/or in its possession, custody or control, and/or in its possession, custody or control of its representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with NSAV, with actual notice of this Court's Orders; 5) compelling CHIF to deliver and assign all CHIF shares, as held by the Defendant and/or in its possession, custody or control, and/or in its possession, custody or control of its representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with NSAV, with actual notice of this Court's Orders; 6) compelling Defendant Tilton to deliver and assign all NSAV shares, as held by him and/or in his possession, custody or control, and/or in his possession, custody or control of his representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with Tilton, with actual notice of this Court's Orders; 7) compelling Defendant Tilton to deliver and assign all CHIF shares, as held by him and/or in his possession, custody or control, and/or in his possession, custody or control of his representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with Tilton, with actual notice of this Court's Orders; and 8) compelling Alfonso Knoll to disclose to the Temporary Receiver all documents and things, including all electronic documents in his control or possession. as held by

him and/or in his possession, custody or control, and/or in his possession, custody or control of his representatives, employees, agents and persons, and any and all affiliates and/or entities acting in concert with Tilton, with actual notice of this Court's Orders.

The Plaintiff respectfully requests oral argument at hearing at such opportunity as may be reasonably convenient for the Court.

Dated: November 25, 2024

Respectfully submitted,
PLAINTIFF, Vikram P. Grover,

By his Attorneys,

*/s/ Philip M. Giordano*
Philip M. Giordano, Esq. (admitted *pro hac vice*)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

## **CERTIFICATE OF SERVICE**

      I, Philip M. Giordano, do hereby certify that on this 25th day of November, 2024, I caused to be served a true and correct copy of Plaintiff Vikram Grover's Memorandum in Opposition to Receiver's Report and in Support of his Motions, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record, and by emailing a true copy of the same.

Dated: November 25, 2024                                          */s/ Philip M. Giordano*
                                                                                                       Philip M. Giordano