BC  GMM

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

===============================

| | |
|---|---|
| VIKRAM P. GROVER d/b/a "IX ADVISORS" a/k/a "IXA," | : : : : |
| Plaintiff, | : : |
| v. | : |
| : NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIMITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Wales, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and : JAMES A. TILTON, | : : : : : : : : : : : : |
| Defendants. | : |
| Pacific Stock Transfer, NSAVX.COM, Inc., a Wyoming corporation, and John Doe Corp., NSAVX.COM, a Puerto Rican Corporation, | : : : : : |
| Trustee-Defendants. | : : |

<u>Civil Action No. 1:21-cv-05054</u>
Honorable Mary M. Rowland

===============================

**<u>MOTION BY DEFENDANT JAMES A. TILTON FOR RECONSIDERATION ON THE ORDER TO COMPEL DEFENDANT JAMES A.TILTON TO TRANSFER, ASSIGN, AND DELIVER ALL NSAV SHARES TO PLAINTIFF.</u>**

1

NOW COMES the Defendant, James Arthur Tilton, ("Tilton"), who kindly requests this honorable Court to reconsider the order to compel [254] Tilton to transfer, assign and deliver all of Tilton's NSAV shares to plaintiff, entered on March 5, 2025, and as cause therefore states as follows:

1. Plaintiff filed his Motion for Summary Judgment on January 31, 2024.

2. At the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that the ruling on plaintiff's request for summary judgment would take place probably by the end of September 2024.

3. Also, at the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that Plaintiff's emergency motion for preliminary Injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton (myself) as an individual.

At 4:32 PM CDT, on June 26, 2024, I personally received via email, from this Honorable Court, relating to Document number 166, which stated the following;

¨MINUTE entry before the Honorable Mary M. Rowland: Telephonic motion hearing held. Plaintiff and Mr. Tilton appeared telephonically. Corporate entities are not represented by counsel. Mr. Tilton is reminded he cannot represent the corporate entities. Plaintiff's emergency motion for preliminary injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton as an individual. Because the corporate entities remain unrepresented, Plaintiff's motions are granted. Plaintiff is to send proposed orders to the court's proposed order mailbox for entry. Mailed notice. (dm, )"

2

4. At the oral hearing before the Honorable Court on August 8, 2024, the Honorable Judge Mary K. Rowland, denied Defendant Tilton's motion to vacate [172] and further advised that Defendant is covered by the Court's orders [167] [168] as an officer of the C Corporate Defendants, but not in his personal capacity. Defendant Tilton understood this advice to mean that there was no attachment on his personal property, including any Shares that Defendant Tilton may own in NSAV and CHIF.

5. On August 16, 2024, Defendant Tilton, by and through his attorneys of the law firm of Cole, Sadkin, L.L.C., filed a Response in Opposition to Motion by Plaintiff Grover for Summary Judgement.

6. On August 19, 2024, due to the previously stated dire financial circumstances of Defendant Tilton, Tilton sold his 40 million Series A Preferred Shares of NSAV in a private transactions to a Dutch citizen and resident of the Netherlands. *See Stock Purchase Agreement of 10,000,000 Series A Preferred shares, with an effective date of August 19, 2024, between James A. Tilton and Samera M.Q. Al-Mutawakel, attached hereto and made a part hereof as* Exhibit A *and Stock Purchase Agreement of 30,000,000 Common shares, with an effective date of August 19, 2024, between James A. Tilton and Samera M.Q. Al-Mutawakel, attached hereto and made a part hereof as* Exhibit B.

Given the previous directive from this Honorable Court, regarding there being no attachment on Defendant Tilton's personal property and given that Tilton's personal attorney had just filed a motion in opposition to summary judgement and given that, at the

3

time no judgement was ordered against Defendant Tilton personally; Tilton was of the belief that he was free to sell his aforementioned NSAV shares.

As stated in this Court's orders on June 26, 2024 and August 8, 2024, Defendant James Tilton was allowed to sell any of his personal holdings, including any shares he held in NSAV.

7. On August 26, 2024, the Honorable Court granted the plaintiff's Motion for Summary Judgement against Defendant Personally [211}. However, this order was after the transaction mentioned above.

8. On September 11, 2024, Defendant Tilton received an email from Joslyn Claiborne of Pacific Stock Transfer ("Pacific"), the transfer agent for NSAV. The email was in response to Defendant Tilton's request to have his 40 million Series A Preferred shares of NSAV to the aforementioned buyer. Ms. Claiborne stated that she was in receipt of the final judgement against me personally from September 5, 2024 [218] and incorrecly stated that she would not be moving forward (with my transfer request) until the court cases are settled, since those shares were sold prior to this Court's order. *See Email from Joslyn Claiborne of Pacific Stock Transfer Company, dated September 11, 2024, attached hereto and made a part hereof as **Exhibit C**.*

4

Ms. Claiborne also informed me that their records indicated that only 10 Million Series A Preferred shares of NSAV were held by me with them (again, they belong to the buyer). Ms. Claiborne also sent me an official statement to evidence that. *See Shareholder Account Statement from Pacific Stock Transfer, dated September 11, 2024, attached hereto and made a part hereof as* **Exhibit D.** I have since informed the Dutch buyer of my NSAV shares, of Ms. Claiborne's email and documents and the buyer is discussing the matter with their legal counsel in the Netherlands.

9. On September 27, 2024, Defendant Tilton, by and through his attorneys of the law firm of Cole, Sadkin, L.L.C., filed a motion for reconsideration with the Honorable Court [224]

10. On January 6, 2025, the Honorable Court denied Defendant Tilton's Motion for Reconsideration.

11. On March 5, 2025, the Honorable Judge Mary K. Rowland granted the order to compel Tilton to transfer, assign and deliver all of Tilton's NSAV shares to plaintiff.

## **CONCLUSION**

12. At the time Defendant Tilton sold his 40 million Series A Preferred Shares of NSAV to an unrelated third-party purchaser located in the Netherlands, there existed neither a personal judgment nor any attachment order prohibiting him from selling or otherwise transferring his personal holdings. Accordingly, Defendant Tilton executed this transaction legally, in

good faith, and out of significant financial necessity, receiving fair and substantial consideration for these shares.

13. According to Pacific, Defendant Tilton only held 10 million Series A Preferred Shares of NSAV with them. Tilton has never held any other shares of NSAV with Pacific. Therefore, even if Defendant Tilton did not sell his said shares, the maximum amount of shares that Pacific could transfer to the plaintiff is 10 million Series A Preferred Shares.

Again, and for the reasons stated above, Defendant Tilton kindly requests that the Honorable Court grants his motion to reconsider the order to compel Tilton to transfer, assign and deliver all of Tilton's NSAV shares to plaintiff, entered on March 5, 2025.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of April 2025.

_James Tilton_
James A. Tilton

EXHIBIT A

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") made and entered into as of August 19, 2024, between Samera M.Q. Al-Mutawakel with (hereinafter referred to as the "Buyer"), and James A. Tilton (hereinafter referred to as the "Seller").

This Agreement sets forth the terms and conditions upon which Seller is selling to Buyer and the Buyer is purchasing from the Seller shares (hereinafter referred to as the "Shares") of Seller's Series A preferred stock of Net Savings Link, Inc. (the "Company") in a private stock sale transaction.

In Consideration of the mutual agreements contained herein, the parties hereby agree as follows:

### I. SALE OF THE SHARES.

1.01 Shares being Sold. Subject to the terms and conditions of this Agreement, the Seller is selling **10,000,000** shares of Seller's Series A preferred stock of the Company.

1.02 Consideration.

(a) Purchase Price. The Purchase Price of the shares shall be a price of Euro Three Thousand (3,000.).

1.03 Settlement Funds.

The Buyer will send **Euro 3,000.** to the Seller, Mr. James Tilton.

1.04 Effective Date.

The Closing of the transaction shall take place on or about August 19, 2024 or at such other date and time as the parties may mutually agree in writing.

1.05 Delivery by the Seller.

At the Closing, the Seller will instruct the transfer agent to deliver to Buyer a certificate representing the Shares purchased.

### II. RELATED TRANSACTIONS.

2.01 Finder. The Seller and the Buyer acknowledge that there were no finders with respect to the transaction contemplated herein.

2.02 Other Shareholders. The Seller and the Buyer acknowledge that other Company shareholders may be selling their shares in private transactions and at varying amounts and that this Agreement confirms the Seller's and Buyer's private transaction in writing. By signing this Agreement, the Seller acknowledges that shares may be sold at varying prices and that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of said Seller's shares.

### III. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby represents and warrants as follows:

3.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Seller, and the consummation by Seller of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller are a party or by which the Seller are bound.

3.02 <u>Litigation</u>. To the knowledge of the Seller, there are no actions, proceedings, or investigations pending or threatened against the Seller, and the Seller know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the shares of the Seller that may materially and adversely affect this private stock sale.

**IV. REPRESENTATIONS AND WARRANTIES BY BUYER.**

The Buyer hereby represent and warrant as follows:

4.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Buyer, and the consummation by the Buyer of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Buyer are a party or by which the Buyer are bound.

4.02 <u>Litigation</u>. To the knowledge of the Buyer, there are no actions, proceedings, or investigations pending or threatened against the Buyer, and the Buyer know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the acquisition of the shares from the Seller that may materially and adversely affect this private stock sale.

4.03 <u>Representations Regarding the Acquisition of the Shares</u>.

(a) The Buyer understands the speculative nature and the risks of investments associated with the Company and confirms that he, she, or it is able to bear the risk of the investment, and that there may not be any public market for the Shares purchased herein;

(b) Neither the Buyer nor the Seller are under an obligation to register or seek an exemption under any federal and/or state securities acts for any sale or transfer of the Shares to the Buyer, and Buyer is solely responsible for determining the status, in its hands, of the shares acquired in the transaction and the availability, if required, of exemptions from registration for purposes of sale or transfer of the Shares;

c) The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that Buyer is capable of evaluating the merits and risks associated with purchase of the Shares; and

(d) In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Shares and has not relied upon any representations provided by the Seller.

## V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01 <u>Survival of Representations</u>. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

5.02 <u>Indemnification.</u> The Buyer and its directors, officers, employees, agents and representatives (each of which is an "**Indemnified Party**"), shall be indemnified and held harmless by the Sellers, under the terms and conditions of this Agreement, from and against any and all Losses arising out of or relating to, asserted against, imposed upon or incurred by the Indemnified Parties in connection with or as a result of any breach of a representation or warranty contained in of this Agreement. Further, no Indemnified Party (other than the Buyer) may make a claim hereunder without the prior written consent of the Buyer.

## VI. MISCELLANEOUS

6.01 <u>Expenses</u>. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

6.02 <u>Parties in Interest</u>. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

6.03 <u>Prior Agreements; Amendments</u>. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

6.04 <u>Headings</u>. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

6.05 <u>Confidentiality</u>. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

6.06 <u>Counterparts</u>. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.07 <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

6.08 <u>No Exertion Upon the Parties.</u> By executing this Agreement, I am acknowledging and approving that shares may be sold at varying prices and that there has been no influence exerted over me by any officer or director of Net Savings Link, Inc. regarding the sale of my shares.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

*Samera Al Mutawakel*
__Samera M.Q. Al-Mutawakel__

SELLER:

*James A. Tilton*
Name: Mr. James A. Tilton

EXHIBIT B

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") made and entered into as of August 19, 2024, between Samera M.Q. Al-Mutawakel with (hereinafter referred to as the "Buyer"), and James A. Tilton (hereinafter referred to as the "Seller").

This Agreement sets forth the terms and conditions upon which Seller is selling to Buyer and the Buyer is purchasing from the Seller shares (hereinafter referred to as the "Shares") of Seller's Series A preferred stock of Net Savings Link, Inc. (the "Company") in a private stock sale transaction.

In Consideration of the mutual agreements contained herein, the parties hereby agree as follows:

## I. SALE OF THE SHARES.

1.01 <u>Shares being Sold</u>. Subject to the terms and conditions of this Agreement, the Seller is selling **30,000,000** shares of Seller's Series A preferred stock of the Company.

1.02 <u>Consideration.</u>

(a) <u>Purchase Price</u>. The Purchase Price of the shares shall be a price of Euro Nine Thousand (9,000.).

1.03 <u>Settlement Funds.</u>

The Buyer will send **Euro 9,000.** to the Seller, Mr. James Tilton.

1.04 <u>Effective Date</u>.

The Closing of the transaction shall take place on or about August 19, 2024 or at such other date and time as the parties may mutually agree in writing.

1.05 <u>Delivery by the Seller</u>.

At the Closing, the Seller will instruct the transfer agent to deliver to Buyer a certificate representing the Shares purchased.

## II. RELATED TRANSACTIONS.

2.01    <u>Finder</u>. The Seller and the Buyer acknowledge that there were no finders with respect to the transaction contemplated herein.

2.02    <u>Other Shareholders.</u> The Seller and the Buyer acknowledge that other Company shareholders may be selling their shares in private transactions and at varying amounts and that this Agreement confirms the Seller's and Buyer's private transaction in writing. By signing this Agreement, the Seller acknowledges that shares may be sold at varying prices and that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of said Seller's shares.

## III. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby represents and warrants as follows:

    3.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Seller, and the consummation by Seller of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller are a party or by which the Seller are bound.

    3.02 <u>Litigation</u>. To the knowledge of the Seller, there are no actions, proceedings, or investigations pending or threatened against the Seller, and the Seller know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the shares of the Seller that may materially and adversely affect this private stock sale.

## IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

The Buyer hereby represent and warrant as follows:

    4.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Buyer, and the consummation by the Buyer of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Buyer are a party or by which the Buyer are bound.

    4.02 <u>Litigation</u>. To the knowledge of the Buyer, there are no actions, proceedings, or investigations pending or threatened against the Buyer, and the Buyer know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the acquisition of the shares from the Seller that may materially and adversely affect this private stock sale.

    4.03 <u>Representations Regarding the Acquisition of the Shares</u>.

    (a)     The Buyer understands the speculative nature and the risks of investments associated with the Company and confirms that he, she, or it is able to bear the risk of the investment, and that there may not be any public market for the Shares purchased herein;

    (b)     Neither the Buyer nor the Seller are under an obligation to register or seek an exemption under any federal and/or state securities acts for any sale or transfer of the Shares to the Buyer, and Buyer is solely responsible for determining the status, in its hands, of the shares acquired in the transaction and the availability, if required, of exemptions from registration for purposes of sale or transfer of the Shares;

    c)  The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that Buyer is capable of evaluating the merits and risks associated with purchase of the Shares; and

    (d) In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Shares and has not relied upon any representations provided by the Seller.

**V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.**

5.01 <u>Survival of Representations</u>. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

5.02 <u>Indemnification.</u> The Buyer and its directors, officers, employees, agents and representatives (each of which is an "**Indemnified Party**"), shall be indemnified and held harmless by the Sellers, under the terms and conditions of this Agreement, from and against any and all Losses arising out of or relating to, asserted against, imposed upon or incurred by the Indemnified Parties in connection with or as a result of any breach of a representation or warranty contained in of this Agreement. Further, no Indemnified Party (other than the Buyer) may make a claim hereunder without the prior written consent of the Buyer.

**VI. MISCELLANEOUS**

6.01 <u>Expenses</u>. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

6.02 <u>Parties in Interest</u>. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

6.03 <u>Prior Agreements; Amendments</u>. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

6.04 <u>Headings</u>. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

6.05 <u>Confidentiality</u>. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

6.06 <u>Counterparts</u>. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.07 <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

6.08 <u>No Exertion Upon the Parties.</u> By executing this Agreement, I am acknowledging and approving that shares may be sold at varying prices and that there has been no influence exerted over me by any officer or director of Net Savings Link, Inc. regarding the sale of my shares.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

*Samera Al Mutawakel*

Samera M.Q. Al-Mutawakel

SELLER:

*James A. Tilton*

Name: Mr. James A. Tilton

# EXHIBIT C

## RE: Preferred Shares

| | |
|---|---|
| Van: | J Claiborne (jclaiborne@pacificstocktransfer.com) |
| Aan: | jamtilton@yahoo.com; awalker@pacificstocktransfer.com; bmiller@pacificstocktransfer.com; cjohnson@PacificStockTransfer.com |
| Datum: | woensdag 11 september 2024 om 20:22 CEST |

James,

We are in receipt of the final judgement that names you –James A. Tilton as a defendant.

We will not be moving forward until the court cases are settled.

Unfortunately, what happened 7 years ago happened 7 years ago. You are the holder of 10,000,000 preferred A shares.

Best,

**Joslyn Claiborne**
Managing Director
Compliance & Legal Review
Pacific Stock Transfer Company
Direct: 702.323.0033
Mobile: 702.401.5083

---

**From:** James Tilton <jamtilton@yahoo.com>
**Sent:** Wednesday, September 11, 2024 10:32 AM
**To:** Ashley Walker <awalker@pacificstocktransfer.com>; J Claiborne <jclaiborne@pacificstocktransfer.com>; Billy Miller <bmiller@pacificstocktransfer.com>; Cory Johnson <cjohnson@PacificStockTransfer.com>
**Subject:** Re: Preferred Shares

Dear Joslyn,

EXHIBIT D

# ACCOUNT STATEMENT



| JAMES TILTON |
|---|
| **NET SAVINGS LINK INC PREFERRED A** |

C/O NET SAVINGS LINK INC

6725 Via Austi Pkwy, Suite 300
Las Vegas, NV 89119

**Statement Date:** 09/11/2024
**Shareholder ID:** 1005607
**CUSIP:**
**Symbol:** NSAV-PA

**JAMES TILTON**

PO BOX 609
2374 ROUTE 390
MOUNTAINHOME PA 18342-0609

**Pacific Stock Transfer Contact Information**
**Telephone:** 702-361-3033 or 800-785-7782
**Email:** info@pacificstocktransfer.com

---

**NET SAVINGS LINK INC PREFERRED A ()**     Acct#: 2

**ACCOUNT STATEMENT As of: 09/11/2024**

| **RESTRICTED BOOK SHARES SUMMARY** | |
|---|---:|
| RESTRICTED CONTROL | 10,000,000 |

| **BOOK-ENTRY SHARES SUMMARY** | |
|---|---:|
| Free Trading Book-Entry Shares: | 0 |
| Restricted Book-Entry Shares: | 10,000,000 |
| **Total Book-Entry Shares:** | **10,000,000** |

| **OUTSTANDING SHARES SUMMARY** | |
|---|---:|
| Book Shares: | 10,000,000.0000 |
| **Total Shares:** | **10,000,000.0000** |
| *Price Per Share As of 09/11/2024: | $0.00 |
| Market Value of Holdings: | $0.00 |
| Cost Basis ($): | 100.00 |

### TAX LOT DETAIL

| Certificate # | Acquired | Disposed | Lot Shares | Basis/Share | Total Cost ($) | Gift/Inher | Gift Date | Gift FMV ($) |
|---|---|---|---|---|---|---|---|---|
| | 08/15/2023 | | 10,000,000.0000 | $0.00001 | 100.00 | | | |
| | | | **10,000,000** | | **100.00** | | | |

---

1