## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

```
===============================
                                         :
VIKRAM P. GROVER d/b/a                   :
  "IX ADVISORS" a/k/a "IXA,"             :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :
                                         :
NET SAVINGS LINK, INC., a                :
  Colorado corporation and formerly      :
  organized as a Nevada corporation,     :     Civil Action No. 1:21-CV-05054
WILTON GROUP, LIMITED, as               :     Honorable Mary M. Rowland
  registered in the Isle of Man, U.K.,   :
WILTON UK (GROUP), LIMITED, as          :
  registered in England and Wales, U.K., :
CHINA FOOD AND BEVERAGE CO.,            :
  a Colorado corporation, and            :     REQUEST FOR HEARING
JAMES A. TILTON,                         :
                                         :
          Defendants.                    :
                                         :
     v.                                  :
                                         :
PACIFIC STOCK TRANSFER,                  :
NSAVX, INC., a Wyoming corporation,      :
and JOHN DOES 1-100,                     :
                                         :
          Trustee-Defendants.            :
                                         :
=====================================
```

### PLAINTIFF'S OPPOSITION TO DEFENDANT
### JAMES TILTON'S MOTION FOR RECONSIDERATION

The Plaintiff, Vikram P. Grover d/b/a "IX Advisors" (hereinafter the Plaintiff"), respectfully submits his Opposition to the *Motion for Reconsideration on the Order to Compel Defendant James A. Tilton to Transfer, Assign, and Deliver All NSAV Shares to Plaintiff*, filed by the Defendant, James A. Tilton (hereinafter the "Defendant" or "Tilton") on April 4, 2025 (hereinafter the "Defendant's Motion"). For the reasons set forth below, the Plaintiff respectfully

1

requests that this Honorable Court <u>deny</u> the Defendant's Motion. The Plaintiff requests a hearing on the Tilton Motion, at the Court's earliest convenience.

## **BRIEF PROCEDURAL HISTORY**

On June 21, 2024, after a default entry had been entered against Defendants Net Savings Link, Inc. ("NSAV"), China Food and Beverage Co. ("CHIF"), Wilton Group, Limited, and Wilton UK (Group) (hereinafter collectively the "Corporate Defendants"), the Plaintiff filed a Motion for Attachment seeking, *inter alia*, an attachment on all assets of the Corporate Defendants and James A. Tilton in his official capacity as an officer of NSAV and CHIF. *See* Dkt. No. 163. Plaintiff's Motion for Attachment additionally sought an attachment of all NSAV shares held by Pacific Stock Transfer Co. as NSAV's transfer agent. *See id.* at p. 2. On June 26, 2024, this Court ordered such attachment. *See* Dkt. No. 167. On August 12, 2024, after several hearings with regard to injunctions, receivership, and judgment, this Court allowed Tilton, who would engage counsel three (3) days later, to file a supplemental opposition to the Plaintiff's outstanding Motion for Summary Judgment, which sought to hold Tilton liable for the fraud and breaches detailed in the Plaintiff's Complaint. Dkt. No. 200. On August 16, 2024, Tilton filed this supplemental opposition. *See* Dkt. No. 207.

Apparently, on August 19, 2024, due to the "dire financial circumstances of Defendant Tilton," Tilton attempted to sell all his shares of NSAV stock to a citizen of the Netherlands for 3,000 Euros. *See* Defendant's Motion, p. 3. Nevertheless, in light of this Court's Attachment Order and the Final Judgment eventually rendered against Tilton, Pacific Stock Transfer refused to deliver Tilton's shares to the Buyer. *See id.* at p. 4. On March 5, 2025, after the appeal window passed and the Final Judgment remained final, this Court ordered that all of Tilton's NSAV shares be transferred and delivered to the Plaintiff in partial satisfaction of his claim. Dkt. No. 254. Tilton

2

now files this instant Motion to lift that Order and allow him to sell off his NSAV Shares to a foreign citizen despite the Final Judgment rendered against him. *See* Defendant's Motion.

## ARGUMENT

### A.    Tilton's Sale of Shares Violates the June 26, 2024 Attachment Order

First, this Court should deny Defendant's Motion because all shares within the possession of Pacific Stock Transfer were attached pursuant to this Court's June 26, 2024 Order. The June 26, 2024 Order states, in pertinent part: "FURTHER ORDERED that an Attachment shall enter against the Defendants and Defendant-Agents for any and all shares of NSAV and/or CHIF, *as held by Pacific* and/or any successor transfer agent." *See* Dkt. No. 167, p. 4. As such, Defendant Tilton could not, during the time period alleged in his Motion, sell his Series A Preferred Shares of NSAV stock to *anybody*, as those shares remained in the control of Pacific Stock Transfer. Pacific Stock Transfer was correct in its refusal to complete the unauthorized transaction, and allowing Tilton to complete such sale now would be in direct contrast to this Court's express orders.

### B.    Tilton's Attempted Sale of Shares Is Likely A Fraudulent Conveyance

Furthermore, Tilton's attempted sale of shares likely amounts to a fraudulent conveyance within the Illinois Uniform Fraudulent Transfer Act (IUFTA). The IUFTA states, in pertinent part:

"(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: ...

        (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether: ...

> (3) the transfer or obligation was disclosed or concealed; ...
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; ...
>
> (5) the transfer was of substantially all the debtor's assets; ...
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred."

IL ST CH 740 § 160/5. Here, Tilton's August 19, 2024 attempted sale of shares likely meets all of the above-enumerated factors to determine that a transaction is fraudulent. Tilton's attempted sale was *three days* after filing a supplemental response to Plaintiff's Motion for Summary Judgment and *seventeen days* before Final Judgment was rendered against him. Tilton attempted to sell *all* of his NSAV shares, which apparently amounted to all or substantially all of his assets at the relevant time. Moreover, Tilton failed to disclose this attempted transaction with the Court or any other relevant party. Allowing this sale to go through, thus, would likely amount to a violation of Illinois law, and Tilton's Motion for Reconsideration should be denied.

Additionally worth noting is that Tilton utters commits actual fraud in the executed Stock Purchase Agreement with the purported Buyer of his NSAV Shares. The Stock Purchase Agreement, attached as Exhibits 1 and 2 of his Motion, contains a "Seller Representation" that provides as follows:

> "Litigation. To the knowledge of the Seller, *there are no actions, proceedings, or investigations pending or threatened against the Seller*, and the Seller know or have *any reason to know of any basis for any such action, proceedings, or investigation*."

*See* Defendant's Motion, Exhibit 1 (emphasis added).

Needless to say, this Court has no obligation to uphold a contract grounded in fraud, which was executed in an unlawful effort to circumvent this Court's Orders.

**C.      Tilton Unlawfully Seeks to Terminate a Valuable Contractual Relationship Between NSAV and Its Transfer Agent, Pacific Stock Transfer Co., Inc. (PST)**

Finally, Defendant Tilton has also unlawfully sought to terminate a highly valued asset of Defendant Net Savings Link, Inc. – the contract between NSAV and its stock transfer agent, Pacific Stock Transfer, Inc. (hereinafter "Pacific" or "PST").  On April 8th and as counsel for the Plaintiff was preparing his Opposition to the Tilton Motion for Reconsideration, he received correspondence from counsel for Pacific, the NSAV transfer agent.  See Correspondence of Mark A. Harmon, Esq. to Philip M. Giordano, Esq, dated April 8, 2025, attached as Exhibit A. In that letter, PST counsel advises:

> "Prior to the receipt of the Letter (from Plaintiff's counsel), James Tilton sent notice to PST that *it was terminated as the transfer agent for NSAV's Series A Preferred Shares. If this notice is effective, PST is no longer authorized to act as agent* for that class of shares and cannot process transfer requests received post-termination. It may be that Mr. Grover will contest Mr. Tilton's actions, but PST cannot issue a certificate until that issue is resolved."

**Exhibit A**, at p.2 (emphasis added).

Additionally, PST's attorney advises that Defendant Tilton has also informed the NSAV transfer agent that he had previously sold and transferred his NSAV Preferred A shares, apparently on the fraudulent Stock Purchase Agreement, and states:

> "Last, but without limitation on other issues that may be identified or arise, Mr. Tilton advises us that he *previously transferred ownership of the Shares*. Although registered ownership of the Shares has not been changed to reflect new ownership on the books and records maintained by PST, PST does have notice of this alleged transaction. Here again, PST would be acting at its peril if it *processed a transfer prior to the resolution of who, in fact, is the proper owner of the Shares*. I understand that Mr. Tilton has sought relief from the Court on this issue."

*Id.* (emphasis added).

The Plaintiff respectfully contends that after years of litigation and entry of final Judgment, this Honorable Court must reject Defendant Tilton's fraudulent efforts to snatch valuable assets

from NSAV and from the Plaintiff. Mr. Grover respectfully requests that this Court deny Tilton's Motion for Reconsideration and reaffirm the obligation of Pacific Stock Transfer, as the transfer agent for Defendant NSAV, to immediately issue all such Tilton Preferred A Shares in the name of the Plaintiff, Vikram Grover.

## **CONCLUSION**

WHEREFORE for the reasons set forth, the Plaintiff respectfully requests that this Honorable Court deny Motion for Reconsideration of the Defendant, James A. Tilton. The Plaintiff also requests that this Court reaffirm the contractual obligation of Pacific Stock Transfer, as the transfer agent for Defendant NSAV, to immediately issue all such Tilton Preferred A Shares in the name of the Plaintiff, Vikram Grover. The Plaintiff requests a hearing on the Tilton Motion, at the Court's earliest convenience.

Respectfully submitted,

PLAINTIFF, Vikram P. Grover,
By his Attorneys,


*/s/ Philip M. Giordano*
Philip M. Giordano, Esq. (admitted pro hac vice)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109-2724
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Dated: April 8, 2025        Email: pgiordano@reedgiordano.com

## **CERTIFICATE OF SERVICE**

I, Philip M. Giordano, do hereby certify that on this 8th day of April, 2025, I caused to be served a true and correct copy of Plaintiff Vikram Grover's Opposition to defendant Tilton's Motion for Reconsideration, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all parties or counsel of record.


Dated: April 8, 2025                    */s/ Philip M. Giordano*____
                                        Philip M. Giordano

EXHIBIT "A"



CHIESA SHAHINIAN & GIANTOMASI PC

11 Times Square, 34th Floor, New York, NY 10036
csglaw.com

MARK A. HARMON
Of Counsel

mharmon@csglaw.com

O 212.324.7259                    F 212.575.5171

April 8, 2025

<u>**VIA EMAIL**</u>

Philip M. Giordano, Esq.
Giordano & Company, P.C.
One McKinley Square, 6th Floor
Boston, MA 021209

Re: <u>Grover and NSAV</u>

Dear Mr. Giordano:

  Pacific Stock Transfer Company ("PST") is unable to process a transfer of shares at this time. There are a number of open issues that need to be addressed and resolved, several of which may require a court's intervention. As detailed below, PST finds itself in receipt of inconsistent and conflicting communications that prevent it from acting without exposing itself to possible liability to one party or another. Accordingly, PST has determined to take no action at this time and to preserve the status quo to the extent it is able to do so.

  Before discussing the open and conflicting issues, I am compelled to raise again a question I have posed to you and your firm on numerous occasions, most recently on March 13, 2025, without receiving any response. How did PST become a Nominee-Defendant? What process was filed and served on PST? What notice was given to it that proceedings were taking place that might include directives for it to take action? I point out again that much of the confusion with which we are now compelled to deal easily could have been avoided had PST been notified of these proceedings and the requests for relief. A response to these questions is imperative for PST to evaluate its future actions and conduct.

  Initially, on behalf of PST, I requested an instruction from your client for PST to be able to process a reregistration of ownership. Your letter dated April 4, 2025 (the "Letter") is not an instruction from your client. Although it contains a signature line for "Vikram P. Grover d/b/a "IX Advisors" a/k/a "IXA"", it is not signed by your client. Further, the signature block is not consistent with the instructions in the body of the letter. Having the correct registration information is important and can affect the ability of the shareholder to process future transfers.[1] The letter demands the transfer of not just the 10,000,000 Series A Preferred Shares of NSAV which have been reported as the only shares registered in the name of James Tilton (the "Shares") on PST's books and records, but once again includes a far broader request which cannot be accommodated

---

[1] Please do not include social security numbers in any future communications you transmit to me by email.

Philip M. Giordano, Esq.
Page 2

by PST.  PST does not make factual determinations as to who might be a representative or affiliate of a shareholder.  Finally, and without limitation as to other issues that may be pertinent, Securitize LLC has no connection to this matter.  PST is not n/k/a Securitize LLP; they are separate corporate entities.

        Prior to the receipt of the Letter, James Tilton sent notice to PST that it was terminated as the transfer agent for NSAV's Series A Preferred Shares.  If this notice is effective, PST is no longer authorized to act as agent for that class of shares and cannot process transfer requests received post-termination.  It may be that Mr. Grover will contest Mr. Tilton's actions, but PST cannot issue a certificate until that issue is resolved.

        Last, but without limitation on other issues that may be identified or arise, Mr. Tilton advises us that he previously transferred ownership of the Shares.  Although registered ownership of the Shares has not been changed to reflect new ownership on the books and records maintained by PST, PST does have notice of this alleged transaction.  Here again, PST would be acting at its peril if it processed a transfer prior to the resolution of who, in fact, is the proper owner of the Shares.  I understand that Mr. Tilton has sought relief from the Court on this issue.

        I take this opportunity to remind you that any shares transferred to Mr. Grover will be bear legends noting restrictions on resale or transfer in the absence of an effective registration statement or demonstration that an exemption from registration is available.

        I look forward to a resolution of these issues and remain available to discuss these issues at your convenience.

        Very truly yours,

        Mark A. Harmon

MAH:dmp