

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

FILED

4/29/2025

MAM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|                                                                 |     |                                                      |
| --------------------------------------------------------------- | --- | ---------------------------------------------------- |
| VIKRAM P. GROVER d/b/a                                          | :   |                                                      |
| "IX ADVISORS" a/k/a "IXA,"                                      | :   |                                                      |
|                                                                 | :   |                                                      |
| **Plaintiff,**                                                  | :   |                                                      |
|                                                                 | :   |                                                      |
|                                                                 | :   |                                                      |
| **v.**                                                          | :   |                                                      |
|                                                                 | :   |                                                      |
| NET SAVINGS LINK, INC.,                                         | :   |                                                      |
| a Colorado corporation and formerly                            | :   |                                                      |
| organized as a Nevada corporation,                             | :   | **Civil Action No. 1:21-cv-05054**                   |
| WILTON GROUP, LIMITED, as                                      | :   | **Honorable Mary M. Rowland**                        |
| registered in the Isle of Man, U.K.,                           | :   |                                                      |
| WILTON UK (GROUP), LIMITED, as                                 | :   |                                                      |
| registered in England and Wales, U.K.,                         | :   |                                                      |
| CHINA FOOD AND BEVERAGE CO.,                                   | :   |                                                      |
| a Colorado corporation, and                                    | :   |                                                      |
| JAMES A. TILTON,                                               | :   |                                                      |
|                                                                 | :   |                                                      |
| **Defendants.**                                                | :   |                                                      |
|                                                                 | :   |                                                      |
| Pacific Stock Transfer,                                        | :   |                                                      |
| NSAVX.COM, Inc., a Wyoming                                     | :   |                                                      |
| corporation, and John Doe Corp.,                               | :   |                                                      |
| NSAVX.COM, a Puerto Rican                                      | :   |                                                      |
| Corporation,                                                    | :   |                                                      |
|                                                                 | :   |                                                      |
| **Trustee-Defendants.**                                        | :   |                                                      |

**RESPONSE BY DEFENDANT JAMES A. TILTON TO PLAINTIFF VIKRAM P.
GROVER'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION
ON THE ORDER TO COMPEL DEFENDANT JAMES A. TILTON TO TRANSFER,
ASSIGN, AND DELIVER ALL NSAV SHARES TO PLAINTIFF.**

NOW COMES the Defendant, James Arthur Tilton, ("Tilton"), in response to Plaintiff
Vikram P. Grover's Opposition to Defendant's Motion for Reconsideration [258] on the order to
compel Tilton to transfer, assign and deliver all of Tilton's NSAV shares to plaintiff, entered on
April 8, 2025, and as cause therefore states as follows:

1

## INTRODUCTION

**1.** On December 2, 2021, Plaintiff filed a lawsuit against Defendant Tilton in this Honorable Court.

**2.** Plaintiff filed his Motion for Summary Judgment against Defendant Tilton of January 31, 2024 [152].

**3.** At the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that the ruling on plaintiff's request for summary judgment would take place probably by the end of September 2024.

**4.** Also, at the oral hearing before the Honorable Court on June 26, 2024, the Honorable Judge Mary K. Rowland, stated that Plaintiff's emergency motion for preliminary Injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton (myself) as an individual. At 4:32 PM CDT, on June 26, 2024, I personally received via email, from this Honorable Court relating to Document number [166], which stated the following:

> *"MINUTE entry before the Honorable Mary M. Rowland: Telephonic motion hearing held. Plaintiff and Mr. Tilton appeared telephonically. Corporate entities are not represented by counsel. Mr. Tilton is reminded he cannot represent the corporate entities. Plaintiff's emergency motion for preliminary injunction [162] and emergency motion for attachment and attachment by trustee process [163] were filed against the corporate defendants and not Mr. Tilton as an individual. Because the corporate entities remain unrepresented, Plaintiff's motions are granted. Plaintiff is to send proposed orders to the court's proposed order mailbox for entry. Mailed notice (dm)"*

**5.** On June 28, 2024, Defendant Tilton filed a Motion to Vacate [172] the Attachment and Injunction orders [167] [168] against himself personally.

**6.** At the oral hearing before the Honorable Court on August 8, 2024, the Honorable Judge Mary K. Rowland, denied Defendant Tilton's Motion to Vacate [172] and further advised that Defendant is covered by the Court's orders [167] [168] as an officer of the Corporate Defendants, but not in his personal capacity.

**7.** On August 16, 2024, Defendant Tilton, by and through his attorneys of the law firm of Cole, Sadkin, L.L.C., filed a Response in Opposition [207] to Motion by Plaintiff Grover for Summary Judgement [152].

**8.** On August 19, 2024, in accordance with this Court's previous order Defendant Tilton sold his underlined personally owned 40 million Shares of NSAV in a private transaction to a Dutch citizen and resident of the Netherlands. *See Stock Purchase Agreement of 10,000,000 Series A Preferred shares, with an effective date of August 19, 2024, between James A. Tilton and Samera M.Q. Al-Mutawakel, attached hereto and made a part hereof as Exhibit A and Stock Purchase Agreement of 30,000,000 Common shares, with an effective date of August 19, 2024, between James A. Tilton and Samera M.Q. Al-Mutawakel, attached hereto and made a part hereof as Exhibit B.*

**9.** These 10,000,000 Series A Preferred shares are personal property of James Tilton, the individual, and not corporate officer, because he personally purchased these newly issued shares on August 15, 2023, from NSAV for the purchase price of $100.00. See NSAV Corporate Issuance Resolution attached hereto and made a part hereof as **Exhibit C**.

**10.** On August 26, 2024, the Honorable Court granted the plaintiff's Motion for Summary Judgement against Defendant Personally [211].

**11.** On September 11, 2024, Defendant Tilton received an email from Joslyn Claiborne of Pacific Stock Transfer ("Pacific"), the transfer agent for NSAV. The email was in response to Defendant Tilton's request to have his 40 million Series A Preferred shares of NSAV transferred Seto the aforementioned buyer. Ms. Claiborne stated that she was in receipt of the final judgement against Tilton personally from September 5, 2024 [218] and stated that she would not be moving forward (with Tilton's transfer request) until the court cases are settled, since those shares were sold prior to this Court's order. *See Email from Joslyn Claiborne of Pacific Stock Transfer Company, dated September 11, 2024,* attached hereto and made a part hereof as **Exhibit D.**

**12.** Ms. Claiborne also informed Defendant Tilton that their records indicated that only 10 Million Series A Preferred shares of NSAV were held by Tilton with them. Ms. Claiborne also sent  Tilton an official statement to evidence that. See Shareholder Account Statement from Pacific Stock Transfer, dated September 11, 2024, attached hereto and made a part hereof as **Exhibit E**.

**13.** On September 27, 2024, Defendant Tilton, by and through his attorneys of the law firm of Cole, Sadkin, L.L.C., filed a Motion for Reconsideration with the Honorable Court [224].

**14.** On November 25, 2024, Plaintiff filed a Motion to Compel Defendants NSAV, CHIF and Tilton to transfer, assign and deliver all NSAV and CHIF shares held by the Defendants to Plaintiff [241].

**15.** On January 6, 2025, the Honorable Court denied Defendant Tilton's Motion for Reconsideration [247].

**16.** On March 5, 2025, the Honorable Judge Mary K. Rowland granted Plaintiff's Motion to Compel Defendants NSAV, CHIF and Tilton to transfer, assign and deliver all NSAV and CHIF shares held by the Defendants to Plaintiff [254].

**17.** On April 4, 2025, Defendant Tilton filed a Motion for Reconsideration on the order to Compel Defendants NSAV, CHIF and Tilton to transfer, assign and deliver all NSAV and CHIF shares held by the Defendants to Plaintiff [257].

**18.** On April 8, 2025, Plaintiff filed an Opposition [258] to Defendant Tilton's Reconsideration on the order to Compel Defendants NSAV, CHIF and Tilton to transfer, assign and deliver all NSAV and CHIF shares held by the Defendants to Plaintiff [257].

**19.** On April 14, 2025, the Honorable Court denied Defendant Tilton's Motion for Reconsideration [259] on the order to Compel Defendants NSAV, CHIF and Tilton to transfer, assign and deliver all NSAV and CHIF shares held by the Defendants to Plaintiff [257].


## <u>ARGUMENT</u>

**20.** Defendant Tilton does not dispute that Plaintiff's Motion for Injunction [162] and Attachment [163] and related and subsequent June 26, 2024 orders [167] [168] from the Honorable Court, appear to attach Tilton's personal property, including Tilton's NSAV and CHIF shares. That is why even after Defendant Tilton received the aforementioned email from the Honorable Court [166], on the same date, Tilton still filed the aforementioned Motion to Vacate [172] said injunction and attachment orders on June 28, 2024.

**21.** At the oral hearing on August 8, 2024, before the Honorable Mary M. Rowland, when Defendant Tilton's Motion to Vacate was denied [193] and based on the Court's directive, that it became clear Defendant Tilton was permitted to sell his personal property, excluding his NSAV

4

and CHIF shares. Defendant Tilton had no prior indication from the Court that he could sell any of his personal holdings except for the NSAV and CHIF shares.

**22.** When Defendant Tilton filed the aforementioned Motion to Vacate [172], he did so because, at the time, no judgment had been ordered against him personally, and not because of any belief that the orders [167][168] did not pertain to him.

**23.** Defendant Tilton's NSAV and CHIF shares are not assets of NSAV or CHIF. Said shares are Tilton's personal property, as an investor. The shares are Tilton's assets.

**24.** At the time Defendant Tilton sold his personally owned, not as an executive of NSAV, NSAV shares on August 19, 2024, to an unrelated third party in the Netherlands, there was no judgement ordered against Tilton personally and given that Defendant Tilton's personal attorney had just filed a motion in opposition to summary judgment, Defendant Tilton reasonably concluded, based on the Court's prior statements, that he was permitted to sell his NSAV shares. Defendant Tilton did not knowingly and willingly violate the June 26, 2024 injunction and attachment orders.

**25.** Since these stock certificates, which were the personal property of James A. Tilton, the individual, were physically held in the Netherlands, and the transaction took place in the Netherlands, this court does not have jurisdiction to reverse such transaction.

**26.** Pacific Stock Transfer clarified that Defendant Tilton owns only 10 million shares of NSAV Series A preferred stock and not the previously stated 40 million shares. Defendant Tilton's sale of the additional 30 million shares was based on incorrect records; consequently, Defendant Tilton is currently negotiating a payment arrangement with the Netherlands buyer of said 30 million shares, for which the buyer paid Euro 9,000.

**27.** In regards, to the remaining 10 million Series A preferred shares that Defendant Tilton previously owned, the sales price was Euro 3,000. or approximately $3,500. based on today's exchange rate. *See currency conversion record from Yahoo! Finance, dated April 22, 2025, reflecting an exchange rate of €1.00 to $1.1480 and a total conversion of €3,000 to approximately $3,444, attached hereto and made a part hereof as **Exhibit F**. The par value for NSAV's Series A stock is $0.00001 per share. *See excerpt from NSAV's issuer disclosure posted on OTCMarkets.com, identifying the par value of Series A Preferred stock as $0.00001 per share, attached hereto and made a part hereof as **Exhibit G.** The Netherland's buyer paid $0.00035 per

share. Given the current state of NSAV's business affairs, one could say that the buyer grossly overpaid for the shares and certainly not underpaid.

**28.** To put it in perspective, NSAV's Series A shares are voting shares only and have no market value. At the close of trading Thursday, April 17, 2025, NSAV's common shares traded were $0.0003 per share, nearly the same price that the Netherland's buyer paid for the Series A shares. Had said buyer today purchased 10 million shares of common stock off the market, they would have paid $3,000. for shares that they could trade and possibly earn a profit. *See historical trading summary from Yahoo! Finance showing that NSAV common shares closed at $0.0003 per share on April 17, 2025, attached hereto and made a part hereof as* **_Exhibit H_**.

**29.** Therefore, Defendant Tilton certainly received a fair amount for his 10 million Series A shares.

**30.** Defendant Tilton disagrees with Plaintiff's counsel, in that section 3.02 should not have been removed from the aforementioned Stock Purchase Agreement because at the time of the sale, the personally owned shares were freely saleable by Tilton without restriction, pursuant to this Court's own record. The Netherland's buyer was fully aware of this litigation prior to the August 19, 2024, share purchase and has notified Pacific Stock Transfer, in writing, accordingly. *A true and correct copy of the letter dated April 16, 2025, from buyer Samera Al-Mutawakel to Pacific Stock Transfer acknowledging awareness of the ongoing litigation at the time of purchase is attached hereto and incorporated herein as* **_Exhibit I_**.

**31.** The last sentence of the aforementioned section 3.02, which reads as follows;

¨There is no event or condition of any kind or character pertaining to the shares of the Seller [James A. Tilton] that may materially and adversely affect this private stock sale.¨

**32.** Both the Netherlands buyer and Defendant Tilton understood from previous Court directives that Defendant Tilton was permitted to sell his NSAV shares, that he purchased and personally owned.

**33.** The jurisdiction for said Stock Purchase Agreement is the Netherlands.

**34.** On April 3, 2025, NSAV sent a formal letter of termination to Pacific Stock Transfer terminating Pacific as the transfer agent for NSAV's Series A Preferred shares and did so for valid reasons, both economic and service related.

**35.** NSAV owes Pacific an estimated $100,000. Given that there are only two Series A Preferred shareholders, it doesn't make economic sense to pay Pacific a monthly fee to manage said shares. NSAV is more than capable of handling this task, as it has done in the past. In addition, said Series A Preferred shares convert only to votes in NSAV and not to common stock, or any other form of equity or debt.

**36.** NSAV could not terminate Pacific as the transfer agent for its public common shares, as it has thousands of shareholders and it could not handle this task and any mistakes could cause a dramatically adverse effect on NSAV shareholders and the public market.

**37.** NSAV also has a class Series B Preferred shares, which convert one for one into NSAV's common shares. Although there are only nineteen Series B preferred shareholders, their shares would convert to over 1.2 billion shares of NSAV public common shares, which would represent over ten percent of the outstanding public common shares of NSAV. As with the common stock, NSAV could not handle this task and again, any mistakes could have a dramatically adverse effect on NSAV shareholders and the public market.

**38.** In addition to the economic reasons for terminating Pacific as the agent for the Series A shares, there are valid business reasons as well. Since the June 26, 2024 injunction and attachment orders, Pacific has almost completely refused to take instructions from NSAV. This is both before and after the court appointed receiver's involvement. Since October 2024, Defendant Tilton has received four emails from Pacific: One was in regards to the aforementioned March 5, 2025 order; The second email was a thank you for responding to the first email; The third email was acknowledging said termination letter; and The fourth email was a copy of a letter that Pacific's counsel sent to Plaintiff's counsel, which Plaintiff's counsel referred to in his opposition filed with the Honorable Court on April 8, 2025

**39.** On March 27, 2025, the Honorable Court denied [256] Plaintiff's Motion to Modify and Correct [255]. As the Honorable Court correctly stated, Plaintiff's motive apparently was to have the Honorable Court put Plaintiff in charge of NSAV and its shareholder's investments, as well as an attempt to unduly influence the management of NSAV by means of backdoor methods.

Plaintiff, on numerous occasions, has shown his contempt, not only for NSAV and its management, but also for thousands of innocent NSAV shareholders. One example is on December 10, 2024, Plaintiff, via his personal X (formerly Twitter) account, stated the following: "Will take control and crush the shareholders to nil." *A true and correct copy of Plaintiff Vikram*

*Grover's December 10, 2024 tweets stating intentions to 'crush the shareholders to nil' is attached hereto and incorporated herein as __Exhibit J__*.

**40.** In the three and one-half years of litigation, NSAV has only commented on said litigation a handful of times or so on social media and has never once attacked Plaintiff, or spread false information about Plaintiff.

**41.** It is because of the aforementioned reasons, that Defendant Tilton asserts that if Plaintiff was to gain control of NSAV, Plaintiff would follow through on his public threats to crush the thousands of NSAV shareholders and drive their investments to nil.

**42.** In his opposition to Defendant Tilton's Motion for Reconsideration, Plaintiff's counsel states that neither NSAV, nor Tilton disclosed the private sale of Tilton's Series A Preferred shares publicly. There are two reasons for that. First, Defendant Tilton, based on previous directives from the Honorable Court, believed that he was permitted to sell said shares. Second, NSAV files its quarterly disclosure reports with OTC Markets Group, Inc. and not with the Securities Exchange Commission ("SEC"). As the sale of Tilton's Series A shares occurred during the third quarter of 2024, the sale would have been disclosed and by law, required to be disclosed in NSAV's Q3 2024 quarterly report, which was to be filed with OTC Markets by November 14, 2024.

**43.** Although NSAV was not privy to the communications between NSAV receiver, David Castleman, and OTC Markets, it appears that Mr. Castleman, during the first week of October 2024, instructed OTC Markets to not allow NSAV to file any future quarterly reports, or press releases (which are free to OTC Markets clients, such as NSAV). Therefore, NSAV could not disclose the sale of Defendant Tilton's shares to the public. I believe that Mr. Castleman's instructions forbidding the filing of quarterly reports by NSAV with OTC Markets is stated in the Receiver's Report, dated, October 31, 2024 and filed with the Honorable Court [232].

## __CONCLUSION__

WHEREFORE for the reasons set forth, Defendant Tilton respectfully believes that he sold his 10 million Series A Preferred shares legally, in good faith and not in violation of the June 26, 2024 attachment order and that the sale of said shares to a citizen of the Netherlands respectfully should not be voided by this Honorable Court.

Defendant Tilton respectfully believes that the termination of Pacific, as the transfer agent for the NSAV Series A Preferred shares, was lawful and not in violation of any order from this Honorable Court. In addition, said termination made both economic sense and business sense, as Pacific has ceased almost all communications with NSAV since October 2024 and has refused to take instructions from NSAV, its client, since the June 26, 2024 court orders, even when said instructions pertained to non-affiliates and were not barred by said court orders. Pacific is merely a transfer agent, a service provider as such, to NSAV and its contract (in reality, a service agreement) with NSAV is not an asset of NSAV, as Plaintiff's counsel states in said opposition. As stated above, Pacific is still the transfer agent for NSAV's common stock and its Series B Preferred shares. Defendant Tilton respectfully requests that this Honorable Court deny Plaintiff's request to have Pacific reinstated as the transfer agent of NSAV's Series A Preferred shares.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Respectfully Submitted this 25th day of April 2025.

*James Tilton*
James A. Tilton

# EXHIBIT A

**STOCK PURCHASE AGREEMENT**

This Stock Purchase Agreement (this "Agreement") made and entered into as of August 19, 2024, between Samera M.Q. Al-Mutawakel with (hereinafter referred to as the "Buyer"), and James A. Tilton (hereinafter referred to as the "Seller").

This Agreement sets forth the terms and conditions upon which Seller is selling to Buyer and the Buyer is purchasing from the Seller shares (hereinafter referred to as the "Shares") of Seller's Series A preferred stock of Net Savings Link, Inc. (the "Company") in a private stock sale transaction.

In Consideration of the mutual agreements contained herein, the parties hereby agree as follows:

**I. SALE OF THE SHARES.**

1.01 <u>Shares being Sold</u>. Subject to the terms and conditions of this Agreement, the Seller is selling **10,000,000** shares of Seller's Series A preferred stock of the Company.

1.02 <u>Consideration.</u>

(a) <u>Purchase Price</u>. The Purchase Price of the shares shall be a price of Euro Three Thousand (3,000.).

1.03 <u>Settlement Funds.</u>

The Buyer will send **Euro 3,000.** to the Seller, Mr. James Tilton.

1.04 <u>Effective Date</u>.

The Closing of the transaction shall take place on or about August 19, 2024 or at such other date and time as the parties may mutually agree in writing.

1.05 <u>Delivery by the Seller</u>.

At the Closing, the Seller will instruct the transfer agent to deliver to Buyer a certificate representing the Shares purchased.

**II. RELATED TRANSACTIONS.**

2.01 <u>Finder</u>. The Seller and the Buyer acknowledge that there were no finders with respect to the transaction contemplated herein.

2.02 <u>Other Shareholders.</u> The Seller and the Buyer acknowledge that other Company shareholders may be selling their shares in private transactions and at varying amounts and that this Agreement confirms the Seller's and Buyer's private transaction in writing. By signing this Agreement, the Seller acknowledges that shares may be sold at varying prices and that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of said Seller's shares.

**III. REPRESENTATIONS AND WARRANTIES OF SELLER.**

The Seller hereby represents and warrants as follows:

3.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Seller, and the consummation by Seller of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller are a party or by which the Seller are bound.

3.02 <u>Litigation</u>. To the knowledge of the Seller, there are no actions, proceedings, or investigations pending or threatened against the Seller, and the Seller know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the shares of the Seller that may materially and adversely affect this private stock sale.

## IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

The Buyer hereby represent and warrant as follows:

4.01 <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Buyer, and the consummation by the Buyer of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Buyer are a party or by which the Buyer are bound.

4.02 <u>Litigation</u>. To the knowledge of the Buyer, there are no actions, proceedings, or investigations pending or threatened against the Buyer, and the Buyer know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the acquisition of the shares from the Seller that may materially and adversely affect this private stock sale.

4.03 <u>Representations Regarding the Acquisition of the Shares</u>.

(a)    The Buyer understands the speculative nature and the risks of investments associated with the Company and confirms that he, she, or it is able to bear the risk of the investment, and that there may not be any public market for the Shares purchased herein;

(b)    Neither the Buyer nor the Seller are under an obligation to register or seek an exemption under any federal and/or state securities acts for any sale or transfer of the Shares to the Buyer, and Buyer is solely responsible for determining the status, in its hands, of the shares acquired in the transaction and the availability, if required, of exemptions from registration for purposes of sale or transfer of the Shares;

c) The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that Buyer is capable of evaluating the merits and risks associated with purchase of the Shares; and

(d) In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Shares and has not relied upon any representations provided by the Seller.

## V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01 <u>Survival of Representations</u>. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

5.02 <u>Indemnification.</u> The Buyer and its directors, officers, employees, agents and representatives (each of which is an "**Indemnified Party**"), shall be indemnified and held harmless by the Sellers, under the terms and conditions of this Agreement, from and against any and all Losses arising out of or relating to, asserted against, imposed upon or incurred by the Indemnified Parties in connection with or as a result of any breach of a representation or warranty contained in of this Agreement. Further, no Indemnified Party (other than the Buyer) may make a claim hereunder without the prior written consent of the Buyer.

## VI. MISCELLANEOUS

6.01 <u>Expenses</u>. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

6.02 <u>Parties in Interest</u>. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

6.03 <u>Prior Agreements; Amendments</u>. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

6.04 <u>Headings</u>. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

6.05 <u>Confidentiality</u>. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

6.06 <u>Counterparts</u>. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.07 <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

6.08 <u>No Exertion Upon the Parties.</u> By executing this Agreement, I am acknowledging and approving that shares may be sold at varying prices and that there has been no influence exerted over me by any officer or director of Net Savings Link, Inc. regarding the sale of my shares.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

*Samera Al Mutawakol*

Samera M.Q. Al-Mutawakel

SELLER:

*James A. Tilton*

Name: Mr. James A. Tilton

EXHIBIT B

**STOCK PURCHASE AGREEMENT**

This Stock Purchase Agreement (this "Agreement") made and entered into as of August 19, 2024, between Samera M.Q. Al-Mutawakel with (hereinafter referred to as the "Buyer"), and James A. Tilton (hereinafter referred to as the "Seller").

This Agreement sets forth the terms and conditions upon which Seller is selling to Buyer and the Buyer is purchasing from the Seller shares (hereinafter referred to as the "Shares") of Seller's Series A preferred stock of Net Savings Link, Inc. (the "Company") in a private stock sale transaction.

In Consideration of the mutual agreements contained herein, the parties hereby agree as follows:

**I. SALE OF THE SHARES.**

1.01 <u>Shares being Sold</u>. Subject to the terms and conditions of this Agreement, the Seller is selling **30,000,000** shares of Seller's Series A preferred stock of the Company.

1.02 <u>Consideration.</u>

(a) <u>Purchase Price</u>. The Purchase Price of the shares shall be a price of Euro Nine Thousand (9,000.).

1.03 <u>Settlement Funds.</u>

The Buyer will send **Euro 9,000.** to the Seller, Mr. James Tilton.

1.04 <u>Effective Date</u>.

The Closing of the transaction shall take place on or about August 19, 2024 or at such other date and time as the parties may mutually agree in writing.

1.05 <u>Delivery by the Seller</u>.

At the Closing, the Seller will instruct the transfer agent to deliver to Buyer a certificate representing the Shares purchased.

**II. RELATED TRANSACTIONS.**

2.01 <u>Finder</u>. The Seller and the Buyer acknowledge that there were no finders with respect to the transaction contemplated herein.

2.02 <u>Other Shareholders.</u> The Seller and the Buyer acknowledge that other Company shareholders may be selling their shares in private transactions and at varying amounts and that this Agreement confirms the Seller's and Buyer's private transaction in writing. By signing this Agreement, the Seller acknowledges that shares may be sold at varying prices and that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of said Seller's shares.

**III. REPRESENTATIONS AND WARRANTIES OF SELLER.**

The Seller hereby represents and warrants as follows:

3.01  <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Seller, and the consummation by Seller of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller are a party or by which the Seller are bound.

3.02  <u>Litigation</u>. To the knowledge of the Seller, there are no actions, proceedings, or investigations pending or threatened against the Seller, and the Seller know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the shares of the Seller that may materially and adversely affect this private stock sale.

## IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

The Buyer hereby represent and warrant as follows:

4.01  <u>Authority; No Violation</u>. The execution and delivery of this Agreement by the Buyer, and the consummation by the Buyer of the transaction contemplated hereby has been duly approved. Neither the execution and delivery of this Agreement nor the consummation of the transaction will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Company, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Buyer are a party or by which the Buyer are bound.

4.02  <u>Litigation</u>. To the knowledge of the Buyer, there are no actions, proceedings, or investigations pending or threatened against the Buyer, and the Buyer know or have any reason to know of any basis for any such action, proceedings, or investigation. There is no event or condition of any kind or character pertaining to the acquisition of the shares from the Seller that may materially and adversely affect this private stock sale.

4.03  <u>Representations Regarding the Acquisition of the Shares</u>.

(a)  The Buyer understands the speculative nature and the risks of investments associated with the Company and confirms that he, she, or it is able to bear the risk of the investment, and that there may not be any public market for the Shares purchased herein;

(b)  Neither the Buyer nor the Seller are under an obligation to register or seek an exemption under any federal and/or state securities acts for any sale or transfer of the Shares to the Buyer, and Buyer is solely responsible for determining the status, in its hands, of the shares acquired in the transaction and the availability, if required, of exemptions from registration for purposes of sale or transfer of the Shares;

c) The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that Buyer is capable of evaluating the merits and risks associated with purchase of the Shares; and

(d) In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Shares and has not relied upon any representations provided by the Seller.

## V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01 <u>Survival of Representations</u>. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

5.02 <u>Indemnification.</u> The Buyer and its directors, officers, employees, agents and representatives (each of which is an "**Indemnified Party**"), shall be indemnified and held harmless by the Sellers, under the terms and conditions of this Agreement, from and against any and all Losses arising out of or relating to, asserted against, imposed upon or incurred by the Indemnified Parties in connection with or as a result of any breach of a representation or warranty contained in of this Agreement.  Further, no Indemnified Party (other than the Buyer) may make a claim hereunder without the prior written consent of the Buyer.

## VI. MISCELLANEOUS

6.01 <u>Expenses</u>. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

6.02 <u>Parties in Interest</u>. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

6.03 <u>Prior Agreements; Amendments</u>. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

6.04 <u>Headings</u>. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

6.05 <u>Confidentiality</u>. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

6.06 <u>Counterparts</u>. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6.07 <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

6.08 <u>No Exertion Upon the Parties.</u> By executing this Agreement, I am acknowledging and approving that shares may be sold at varying prices and that there has been no influence exerted over me by any officer or director of Net Savings Link, Inc. regarding the sale of my shares.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

*Samera Al Mutawakel*

Samera M.Q. Al-Mutawakel

SELLER:

*James A. Tilton*

Name: Mr. James A. Tilton

**Issuance Resolution**

## AUTHORIZING THE ISSUANCE OF NEW SHARES OF STOCK FOR

Net Savings Link, Inc.
"Company"

### Class A Preferred
Class of Stock

Resolved, that Pacific Stock Transfer Company, transfer agent for the Company's class of stock, as described above, is authorized to issue the shares described below and increase the outstanding shares on the books of the Company.

Increasing the Number of Shares Outstanding by  **10,000,000 _____  Shares**.

Issuance Purpose (*check one*):   **Conversion/Exercise _____      New Issuance   X_____**

Issuance Instructions (*please type or print*)

| Registered Name and Address Affiliate YES | SSN #, Tax ID #, or other Authorized ID | Number of Shares | Cost Basis | Restricted or Free Trading |
|---|---|---|---|---|
| James A. Tilton 2374 Route 390 P.O. Box 609 Mountainhome, Pennsylvania 18342 | **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** | **10,000,000** | $100.00 | Restricted |

When issuing shares to 6 (six) or more shareholders, we will require an **opinion letter** or **email** (**with an appropriate signature block**) from counsel that discusses/states:

*The issuance is exempt from registration because_____*

I, the undersigned, qualified officer of the Company, do hereby indemnify Pacific Stock Transfer Company and their employees against any and all actions taken by the Company, and certify that this is a true copy of resolution, set forth and adopted on the below date, and that the said resolution has not been in any way rescinded, annulled, or revoked but the same is still in full force, and effect.   **All RESTRICTED SHARES ISSUED** are **FULLY PAID & NON-ASSESSABLE.**

*James Tilton*_____          **August 15, 2023**
**Officer's Signature**                                    **Date**

James A. Tilton, President_____
**Printed Name & Title**

## Certificate Mailing Instructions:_____

**Method of Mailing (*check one*):  FEDEX __, DHL ____, UPS _____      Account number:**

**Contact Name: James A. Tilton**

**TELEPHONE: (718) 569-8815                          Please hold the shares in book entry.**

# EXHIBIT D

### RE: Preferred Shares

| | |
|---|---|
| Van: | J Claiborne (jclaiborne@pacificstocktransfer.com) |
| Aan: | jamtilton@yahoo.com; awalker@pacificstocktransfer.com; bmiller@pacificstocktransfer.com; cjohnson@PacificStockTransfer.com |
| Datum: | woensdag 11 september 2024 om 20:22 CEST |

James,

We are in receipt of the final judgement that names you –James A. Tilton as a defendant.

We will not be moving forward until the court cases are settled.

Unfortunately, what happened 7 years ago happened 7 years ago. You are the holder of 10,000,000 preferred A shares.

Best,

**Joslyn Claiborne**
Managing Director
Compliance & Legal Review
Pacific Stock Transfer Company
Direct: 702.323.0033
Mobile: 702.401.5083

---

**From:** James Tilton <jamtilton@yahoo.com>
**Sent:** Wednesday, September 11, 2024 10:32 AM
**To:** Ashley Walker <awalker@pacificstocktransfer.com>; J Claiborne <jclaiborne@pacificstocktransfer.com>; Billy Miller <bmiller@pacificstocktransfer.com>; Cory Johnson <cjohnson@PacificStockTransfer.com>
**Subject:** Re: Preferred Shares

Dear Joslyn,

EXHIBIT E

**Pacific**Stock**Transfer**

C/O NET SAVINGS LINK INC

6725 Via Austi Pkwy, Suite 300
Las Vegas, NV 89119

**JAMES TILTON**

**PO BOX 609**
**2374 ROUTE 390**
**MOUNTAINHOME PA 18342-0609**

**Symbol:**        NSAV-PA

**Pacific Stock Transfer Contact Information**
**Telephone: 702-361-3033 or 800-785-7782**
**Email:**        info@pacificstocktransfer.com

# ACCOUNT STATEMENT

| JAMES TILTON |
| --- |
| **NET SAVINGS LINK INC PREFERRED A** |

**Statement Date:**        09/11/2024

**Shareholder ID:** 1005607  **CUSIP:**

| **RESTRICTED BOOK SHARES SUMMARY** |
| --- |

| RESTRICTED CONTROL | 10,000,000 |
| --- | --- |

| **BOOK-ENTRY SHARES SUMMARY** |
| --- |

| Free Trading Book-Entry Shares: | 0 |
| --- | --- |
| Restricted Book-Entry Shares: | 10,000,000 |

| **NET SAVINGS LINK INC PREFERRED A  ()** | **Acct#: 2** |
| --- | --- |
| **ACCOUNT STATEMENT As of: 09/11/2024** | |

| | |
| --- | --- |
| **Total Book-Entry Shares:** | **10,000,000** |

**OUTSTANDING SHARES SUMMARY**

| | |
| --- | --- |
| **Book Shares:** | 10,000,000.0000 |

**Total**

| | |
| --- | --- |
| **Shares:** | **10,000,000.0000** |

| | |
| --- | --- |
| *Price Per Share As of 09/11/2024: | $0.00 |
| Market Value of Holdings: | $0.00 |
| Cost Basis ($): | 100.00 |

**TAX LOT DETAIL**

| Certificate # | Acquired | Disposed | Lot Shares | Basis/Share | Total Cost ($) | Gift/Inher | Gift Date | Gift FMV ($) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 08/15/2023 | | 10,000,000.0000 | $0.00001 | 100.00 | | | |
| | | | **10,000,000** | | **100.00** | | | |

EXHIBIT F



# EXHIBIT G

| | | |
|---|---|---|
| Par or stated value: | $0.001 | |
| Total shares authorized: | 7,155,000,000 | as of date: June 30, 2024 |
| Total shares outstanding: | 7,119,162,276 | as of date: June 30, 2024 |
| Total number of shareholders of record: | 335 | as of date: June 30, 2024 |

*Please provide the above-referenced information for all other publicly quoted or traded securities of the issuer.*

N.A.

**Other classes of authorized or outstanding equity securities that do not have a trading symbol:**

*The goal of this section is to provide a clear understanding of the share information for its other classes of authorized or outstanding equity securities (e.g., preferred shares that do not have a trading symbol). Use the fields below to provide the information, as applicable, for all other authorized or outstanding equity securities.*

| | | |
|---|---|---|
| Exact title and class of the security: | Class A Preferred | |
| Par or stated value: | $0.00001 | |
| Total shares authorized: | 70,000,000 | as of date: June 30, 2024 |
| Total shares outstanding: | 70,000,000 | as of date: June 30, 2024 |
| Total number of shareholders of record: | 2 | as of date: June 30, 2024 |

| | | |
|---|---|---|
| Exact title and class of the security: | Class B Preferred | |
| Par or stated value: | $0.00001 | |
| Total shares authorized: | 1,300,000,000 | as of date: June 30, 2024 |
| Total shares outstanding (if applicable): | 1,287,587,868 | as of date: June 30, 2024 |
| Total number of shareholders of record (if applicable): 19 | | as of date: June 30, 2024 |

*Please provide the above-referenced information for all other classes of authorized or outstanding equity securities.*
N.A.

**Security Description:**

*The goal of this section is to provide a clear understanding of the material rights and privileges of the securities issued by the company. Please provide the below information for each class of the company's equity securities, as applicable:*

1. **For common equity, describe any dividend, voting and preemption rights.**

(1) Dividend Rate. The holders of Common Stock shall be entitled to receive dividends when, as, and if declared by the board of directors out of assets legally available therefor.

(2) Voting Rights. Except as otherwise provided by the CRS, the holders of the issued and outstanding shares of the Common Stock shall be entitled to one vote for each share. No holder of shares of Common Stock shall have the right to cumulate votes.

EXHIBIT H



OTC Markets OTCPK - Delayed Quote • USD

# Net Savings Link, Inc. (NSAV)

☆ Follow      + Add holdings

## 0.0004 0.0000 (0.00%)

As of April 21 at 10:34:18 AM EDT. Market Open.

Apr 17, 2025 - Apr 18, 2025  ⌄

Historical Prices  ⌄      **Daily** ⌄

Currency in USD

| Date | Low | Close ⓘ | Adj Close ⓘ |
|---|---|---|---|
| Apr 17, 2025 | 0.0003 | 0.0003 | 0.0003 |

# EXHIBIT I

16 April 2025

**Re: My NSAV Series A Preferred Shares**

**Attention: Joslyn Claiborne**
**Pacific Stock Transfer Company**
**6725 Via Austi Pkwy**
**Suite 300**
**Las Vegas, Nevada**
**U.S.A. 89119**

**Dear Ms. Claiborne,**

**As you are aware, on 19 August 2024, I purchased 10 million Series A preferred shares of Net Savings Link, Inc. ("NSAV") from Mr. James A. Tilton, the president and sole director of NSAV. I understand that your firm is the transfer agent for NSAV.**

**Although I realize that you may not be able to transfer said shares to me, due to a court case in Illinois, I would like to kindly request the necessary paperwork from you to facilitate the transfer, so you have it on file, if and when the case is resolved. You may send said paperwork to the email address from which this letter is sent, along with the necessary instructions and related fees.**

**For your information, at the time I purchased the shares, I was fully aware of the lawsuit between Mr. Tilton and Mr. Grover and that no judgement, or attachment order had been issued against Mr. Tilton, at the time I purchased said shares. On several occasions, including on 8 August 2024 [Document 172], the judge ruled that the injunction and attachment orders of 26 June 2024 [Documents 167 and 168] related to Mr. Tilton, as an officer of NSAV, but not in his personal capacity. Therefore, I believe that my purchase of said shares was and still is, legally valid and binding. That is also the opinion of my attorney in the Netherlands.**

**As you will notice, the jurisdiction of the share purchase agreement is the Netherlands and as such, entitles me to make use of the Dutch courts to enforce said agreement. Respectfully, I will take all legal action here in the Netherlands, in order to retain my shares.**

**Please feel free to contact me if you have any questions. I look forward to your reply.**

**Sincerely,**

*Samera Al Mutawakel*

**Samera M.Q. Al-Mutawwkel**
**Sint Janskruidlaan 198**
**Amstelveen, the Netherlands 1187 ED**

EXHIBIT J

