# EXHIBIT A

| For court use only |
|---|
| Claim No. |
| Issue date |

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**

**CIVIL DIVISION**

**CHANCERY PROCEDURE**

SEAL

**Nature of Proceedings:** Winding-up of Wilton Group Limited pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931, as applied by section 182 of the Companies Act 2006.

Parties

| | |
|---|---|
| **VIKRAM GROVER**<br><br>625 Stanwix Street<br>Apartment 2504<br>Pittsburgh<br>Pennsylvania 15222<br>United States of America | Claimant(s)<br><br>(Full name(s) & address(es)) |
| **WILTON GROUP LIMITED**<br><br>Eaglehurst Manor<br>Belmont Hill<br>Douglas<br>Isle of Man<br>IM1 4NY | Defendant(s)<br><br>(Full name(s) & address(es)) |

Details of claim

(use numbered paragraphs)

**Introduction and Nature of Application**

1. By way of summary, the Claimant has issued a claim seeking an order in the form submitted with the claim that that the Defendant be wound up by the Court on the basis of an inability to pay its debts pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931 (**the Act**).

2. The Claimant seeks the appointment of Gordon Wilson of FRP Advisory (Isle of Man) Ltd of 6th Floor, Victory House, Prospect Hill, Douglas, Isle of Man, IM1 1EQ and Paul Allen of FRP Advisory Trading Limited, of 110 Cannon Street, London, EC4N 8EU as provisional joint liquidators of the Claimant, and that they are also appointed, pursuant to section 174 of the Act, jointly as deemed Official Receivers of the Defendant.

3. In the interests of transparency, notice of this claim is intended to be given to the Isle of Man Financial Services Authority as soon as the Claim Form has been issued. The reason for this is that a subsidiary of the Defendant, Wilton (IOM) Limited has a court appointed receiver (Nicholas Halsall was appointed by the Court on 21 November 2023) and is in liquidation (Adrian Hyde and Craig Mitchell were appointed as joint liquidators on 12 February 2024 and 13 February 2024 (respectively) by way of a creditor's voluntary liquidation).

**Standing**

4. This claim is issued by the Claimant as a creditor of the Defendant. The Claimant is a creditor of the Defendant as he has obtained a final judgment against the Defendant in the sum of US$69,939,799.10 (Sixty Nine Million Nine Hundred Thirty Nine Thousand Seven Hundred and Ninety Nine US Dollars and Ten Cents) in the United States District Court Northern District of Illinois (the "**US Court**") (the "**Judgment**"). Further details about the Judgment and the background to it are set out below and in the First Affidavits of the Claimant and Philip Giordano, the Claimant's US Attorney. The Claimant's Advocates, FINLAW IOM Limited (**"FINLAW")**, issued a statutory demand on the Defendant at its registered office on 7 November 2024 and a further statutory demand at its new registered office on 8 September 2025 and by email of the same date to Anthony Flanagan and Nicole Hewson both Directors of the Defendant.

5. The Claimant asserts that, in accordance with section 164 of the Act that it is clear that it has standing as a creditor of the Defendant to bring this claim.

**Judgment**

6. The background and full details of the claim filed by the Claimant in the US Court (the "**US Claim**") is set out in the First Affidavits of the Claimant and his US Attorney, Philip M. Giordano both dated 7 January 2026 and filed in support of the Claim.

7. The US Claim was that the Defendant, together with Wilton UK (Group) Limited (together with the Defendant, the "**Wilton Parties**"), Net Savings Link, Inc. ("**NSAV**"), China Food and Beverage, Co. and James Tilton coordinated and conspired to deprive the Claimant of 387,500,000 shares of NSAV, Inc. common stock (the "**Shares**") and USD$50,000.00 in debentures which were rightfully owed to the Claimant. The Shares and the debenture were due to the Claimant pursuant to his employment and consulting agreement with NSAV following the "change of control" transaction whereby the Wilton Parties, by and through their Managing Partner,

Anthony Flanagan, agreed to purchase a controlling interest in NSAV by selling two of their subsidiaries, Hartley SAS Limited and The Lifetime SIPP Co., to NSAV.

8. Following the failure to be issued the Shares and the debenture, the Claimant filed a complaint in the US Court on or about 23 September 2021 (the "**Complaint**"). The Complaint alleged sixteen (16) causes of action against the Wilton Parties, including claims of breach of contract, unjust enrichment, fraud and violations of Illinois state statutes.

9. The Wilton Parties retained US Attorneys and contested the Complaint. They subsequently failed to pay their Attorneys' fees and so the Attorneys ceased to act for them. Subsequently, the US Court found in favour of the Claimant and entered the Judgment (as a default judgment) against the Wilton Parties.

10. The Defendant has not paid any sums to the Claimant to settle the Judgment.

**The Debt and the Statutory Demand**

11. As the Judgment sum was not paid by the Defendant (or any of the other defendants to the Complaint) to the Claimant, this amount became a debt due and owing by the Defendant to the Claimant.

12. The Claimant instructed his Isle of Man Advocates, FINLAW to serve a statutory demand on the Defendant pursuant to section 163 of the Act to demand the repayment of the monies owing to the Claimant by the Defendant in the sum of the Judgment, namely, US$64,685,627.57 (Sixty Four Million Six Hundred Eighty Five Thousand Six Hundred Twenty Seven US Dollars and Fifty Seven Cents). A statutory demand was served on the registered office of the Defendant on 7 November 2024 by Stephen Dougherty of FINLAW and was received by Nicholas Halsall of PWC, the Interim Receiver of Wilton (IOM) Limited (In Liquidation), a subsidiary of the Defendant. A further statutory demand was served at the new registered office of the Defendant on 8 September 2025 by Lawrie Kearns of FINLAW and by email of the same date to Anthony Flanagan and Nicole Hewson, as Directors of the Defendant, for the updated sum owed under the Judgment in the sum of US$69,939,799.10 (Sixty Nine Million Nine Hundred Thirty Nine Thousand Seven Hundred and Ninety Nine US Dollars and Ten Cents) (the "**Debt**") (the "**Demand**").

13. The Defendant was required within twenty-one (21) days of receipt of the Demand to pay the Debt but it has failed to do so. The Debt is still fully due and owing to the Claimant by the Defendant and the full amount remains outstanding as at the date of the Claim.

**Conclusion**

14. By failing to pay the Debt or to secure or compound for it to the reasonable satisfaction of the Claimant (as the creditor of the Defendant) as set out in the Demand, the Defendant is deemed to be unable to pay its debts in accordance with section 163 (1) (1) of the Act.

15. The Claimant seeks that the Defendant be wound up by the Court on the basis of an inability to pay its debts pursuant to sections 162(5) and 163(1)(1) of the Act and the appointment of Gordon Wilson of FRP Advisory (Isle of Man) Limited of 6th Floor, Victory House, Prospect Hill, Douglas, Isle of Man, IM1 1EQ) and Paul Allen of FRP Advisory Trading Limited, of 110 Cannon Street, London, EC4N 8EU as provisional joint liquidators of the Claimant, and that they are also appointed, pursuant to section 174 of the Act, jointly as deemed Official Receivers of the Defendant.

If you need to continue on a separate sheet please use the prescribed form – 'HCC CONTINUATION SHEET'

| Name and address (including postcode) of defendant on whom copy of the claim form is to be served | | £ |
|---|---|---|
| n/a | Court fee | £261.50 |
| | Coroner's fee | 0 |
| | Advocate's costs | 0 |
| | Total | £261.50 |

## Statement of truth

[I believe ☐] [The Claimant believes ☒] that the facts stated in this claim form are true.

[I am duly authorised by the claimant to sign this statement]

Full name of [claimant ☐]['s advocate ☒]* Stephen Paul Dougherty

*indicate as appropriate

Name of claimant's advocate's firm

FINLAW IOM LIMITED

Signed S. P. [signature]

| | |
|---|---|
| [Claimant ☐] ['s advocate ☒] [Litigation friend ☐] indicate as appropriate | |
| Date 7 January 2026 | |
| Claimant's or claimant's advocate's address in the Isle of Man (including postcode) to which documents or payments should be sent:<br><br>FINLAW IOM LIMITED<br>Cameo House<br>19 Duke Street<br>Douglas<br>Isle of Man<br>IM1 2BB | Telephone no.<br>01624 855320<br><br>Fax no. (if appropriate)<br>n/a<br><br>E-mail (if appropriate)<br>Stephen@finlaw.im<br><br>Reference (if any)<br>VG001.0001/SD |

Claim No: CHP25/
On behalf of: Claimant
Initials and surname of witness: V Grover
No. of affidavit: First
Exhibit: VG1
Date of Statement: 7 January 2026

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**
**CIVIL DIVISION**
**CHANCERY PROCEDURE**

Between:-
**VIKRAM GROVER** Claimant

and

**WILTON GROUP LIMITED** Defendant

**IN THE MATTER OF** the Claim Form dated 7 January 2026 (**the Claim**) seeking the winding-up of Wilton Group Limited pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931, as applied by section 182 of the Companies Act 2006

**FIRST AFFIDAVIT OF VIKRAM GROVER**

I, Vikram Grover of, 625 Stanwix Street, Apartment 2407, Pittsburgh, Pennsylvania 15222, United States of America will say as follows:

## Introduction

1. I am the Plaintiff in a legal action against Wilton Group Limited and Wilton UK (Group) Limited (hereinafter collectively referred to as the "**Wilton Parties**") in the United States District Court for the Northern District of Illinois (the "**Court**"), stylized as Vikram P. Grover v. Net Savings Link, Inc., et al., Dkt. No. 1:21-cv-05054 (U.S. Dist. Ct., N.D. Ill.). I do business under the name "IX Advisors" a/k/a "IXA."

2. Unless stated otherwise, the factual matters to which I refer in this Affidavit are within my own knowledge and are true to the best of my knowledge, information and belief. The facts of which I have been informed are true to the best of my knowledge and belief and where possible I have identified the source of this information.

3. I attach hereto an Exhibit Bundle marked "**VG1**", to which I shall refer during the course of this Affidavit. Unless otherwise stated any reference to page numbers herein is a reference to the documents exhibited at VG1, which will be referenced in the format "**VG1/[page number]**".

4. I am a certified Chartered Financial Analyst (CFA) in the United States of America, with over thirty (30) years' experience in the financial services and investment industry. For twenty (20) years I

worked as a sell-side research analyst, Director of Research, and investment banker at boutique and middle market firms, transitioning soon thereafter to cleaning up and operating Over-the-counter ("**OTC**") companies seeking reverse merger candidates. I am a highly qualified Technology, Media, and Telecommunications ("**TMT**") banker/analyst with deep knowledge of the industry, and have routinely been hired by companies to assess business requirements and develop individualized plans to meet financial and productivity goals.

5. On September 23, 2021, I filed my Summons and Complaint with the Court, naming Net Savings Link, Inc. ("**NSAV**"), China Food and Beverage Co. ("**CHIF**"), the Wilton Parties, and James A. Tilton, an agent of the Wilton Parties, as Defendants. I filed this action after these Defendants failed to compensate me for a Merger, Acquisitions & Joint Venture transaction I conducted on behalf of the Defendants in my role at the time as Director of Corporate Finance at NSAV.

6. As a result of the Wilton Parties' violations of law, I suffered $64,685,627.57 USD (which as at the date of the second statutory demand dated 8 September 2025 is $69,939,799.10) in total damages.

7. Specifically, in or about 2015, I was introduced to NSAV, a self-described cryptocurrency trading company, by mutual business acquaintances in the financial industry. I was subsequently introduced to then CEO of NSAV, Steven Baritz, in the summer of 2015.

8. On August 21, 2015, Steven Baritz and I executed a Consulting Agreement, whereby NSAV and I memorialized an employment agreement between us. The Consulting Agreement provided that, in exchange for my best efforts to raise capital for NSAV, NSAV would compensate me via a "Strategic Expanse Bonus," which consisted of 5% of NSAV's fully-diluted shares outstanding, payable on closing of a Merger, Acquisition, and Joint Venture ("**MA/JV**") transaction with a private entity introduced by me that results in a "change of control" of NSAV.

9. The employment agreement between NSAV and I was further memorialized when Steven Baritz delivered an Employment Offer to me. As a result of the above provided agreements, I was officially an employee of NSAV in and around 2015-2016, serving as its Director of Corporate Finance.

10. Soon thereafter, I, pursuant to my Consulting Agreement with NSAV, engaged in multiple communications and introductions as to new business pursuits on behalf of NSAV, including strategic relationships and potential Merger and Acquisition ("**M&A**") transactions with other companies.

11. James Tilton, named as a Defendant in the lawsuit, is/was the President of CHIF, and at all times relevant hereto, was an authorized agent of the Wilton Parties.

12. In the Fall of 2015, I was introduced to James Tilton to explore a possible M&A transaction, and I subsequently introduced James Tilton to Steven Baritz.

13. In and around the Fall of 2015, I worked with James Tilton, James Tilton's company CHIF, the Wilton Parties, and the Wilton Parties' two subsidiaries, Hartley SAS Ltd. and The Lifetime SIPP Co. (the "**Wilton subsidiaries**"), to facilitate an MA&JV transaction by and between NSAV, CHIF, and the Wilton Group. A copy of the structure chart of the Wilton Group is exhibited hereto at "**VG1/[1-2]**".

14. Once initial introductions were made, the Wilton Parties and I engaged in lengthy discussions, including but not limited to: 1) the financial structure of the Wilton subsidiaries and NSAV; 2) the requirement of "cleaning up" NSAV's past due SEC filings, in order to return to compliance under the reporting requirements of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a, et seq.; 3) the Wilton Parties contributing assets to NSAV, changing control, and addressing the outstanding debts and liabilities of the business, including but not limited to the NSAV accounting and audit requirements, and legal fees required to become SEC reporting compliant; and 4) the preparation of a Securities and Exchange Commission ("**SEC**") Schedule 14C, which sets forth the requirements for SEC reporting companies whose shareholders approve an action by written consent, such as name changes, stock splits, domicile changes, reverse mergers, corporate reorganizations, and other events that require a shareholder consent.

15. In anticipation for the transaction, I, Defendant Tilton, and Anthony Flanagan, Managing Partner of the Wilton Group, circulated numerous non-binding Letters of Intent ("**LOI**"), which detailed the specific MA&JV transaction which was to take place between NSAV and the Wilton Parties.

16. As stated in these LOIs, the Wilton Parties agreed to purchase a controlling interest in NSAV by selling the Wilton subsidiaries to NSAV in a "change of control" transaction. This transaction would trigger my "Strategic Expanse Bonus" pursuant to my Consulting Agreement with NSAV, and, as such, upon execution of the transaction, I would be entitled to the issuance of 5% of NSAV's fully-diluted shares outstanding, which equated to 387,500,000 Series B preferred NSAV shares, and $50,000.00 USD in debentures paying 0% interest.

17. During these negotiations, James Tilton, Anthony Flanagan, and the Wilton Parties continuously represented to me that I would receive my "Strategic Expanse Bonus" upon execution of the MA&JV transaction documents that I was working diligently to close, including explicitly informing me that I would get paid.

18. On December 11, 2015, the Wilton Parties and Steven Baritz signed one final LOI which enshrined the "change of control" transaction. However, shortly thereafter, James Tilton, Steven Baritz, and the Wilton Parties ceased contact with me for the rest of the month and continuing into January 2016.

19. Understanding that I would have to be issued 5% of NSAV shares upon execution of the MA&JV transaction, James Tilton, Steven Baritz, Anthony Flanagan, and the Wilton Parties fraudulently concealed the remainder of their communications regarding the transaction from me.

20. On December 31, 2015, without my knowledge, Steven Baritz, Anthony Flanagan, the Wilton Parties, and James Tilton agreed to the structure of the transaction, whereby NSAV would transfer 5,000,000 Series A preferred shares to CHIF, and CHIF would subsequently facilitate the purchase of the Wilton subsidiaries to grant the Wilton Parties a controlling interest in NSAV, resulting in a "change of control."

21. On January 23, 2016, James Tilton was appointed to NSAV's Board of Directors. On the same day, NSAV's Board of Directors appointed James Tilton president, principal executive officer, secretary, treasurer, principal financial officer and principal accounting officer.

22. On January 26, 2016, NSAV entered into the "change of control" agreement with CHIF and the Wilton Parties wherein it was agreed that Steven Baritz would transfer 5,000,000 restricted shares of Series A Preferred stock to CHIF, which would then be transferred to the Wilton Parties to effectuate the "change of control."

23. The 5,000,000 Series A Preferred Shares transferred from Steven Baritz constituted 62.69% of voting control of NSAV, and as such, upon execution of the transaction, the Wilton Parties would assume voting control of NSAV.

24. On January 27, 2016, NSAV, CHIF, and the Wilton Parties officially executed the Binding Change of Control Agreement. The execution of the Binding Change of Control Agreement and the January 26, 2016 transfer of controlling NSAV shares to CHIF and the Wilton Parties effectuated a "change of control," triggering my "Strategic Expanse Bonus" as provided in my Consulting Agreement.

25. At all times, CHIF represented and identified itself in the Binding Change of Control Agreement as a "Wilton Group affiliate" and entered into such contract as an affiliate and "alter ego" of Wilton-Isle of Man, Wilton-UK, and/or other Wilton entities.

26. I was an intended beneficiary of the Binding Change of Control Agreement and was owed an issuance of three hundred eighty-seven million, five hundred thousand (387,500,000) Series B preferred shares of NSAV stock and $50,000.00. USD in debentures paying 0% interest upon execution of the agreement and the January 26, 2016 transfer of controlling NSAV shares to CHIF and the Wilton Parties.

27. The Wilton Parties were aware of their obligation to issue my contractually owed shares upon execution of the Binding Change of Control Agreement. However, the Wilton Parties refused to compensate me through the issuance of three hundred eighty-seven million, five hundred thousand (387,500,000) Series B preferred shares of NSAV stock and $50,000.00 USD in debentures paying 0% interest upon execution of the agreement and the January 26, 2016 transfer of controlling NSAV shares to them, as I was entitled to under the Consulting Agreement.

28. Upon execution of the Binding Change of Control Agreement and the January 26, 2016 transfer of controlling NSAV shares to the Wilton Parties, the Wilton Parties concealed the transaction from me, knowing that I was owed my bonus.

29. The Wilton Parties did not perform its obligations under the Binding Change of Control Agreement and the Consulting Agreement and failed to issue me my shares.

30. Throughout the period of time where I worked to facilitate the MA&JV transaction and continuing there afterward, James Tilton, Anthony Flanagan, and the Wilton Parties have also interfered with, and convinced and encouraged NSAV and its then-CEO Steven Baritz to discontinue their business dealings with the me and discontinue any business relationships between NSAV and I in the future.

31. Even after the date Defendant Tilton ceased communications with me regarding the MA&JV transaction, James Tilton, Anthony Flanagan, and the Wilton Parties also continued to interfere with my prospective business and economic advantage with third-parties, convincing and encouraging third parties to discontinue their business dealings and business relationships with me in the future.

32. On August 2, 2021, shortly before I filed my Complaint against NSAV and the Wilton Parties, the value of NSAV shares peaked at $0.1493 a share, resulting in the value of my 387,500,000 Series B preferred contractually owed NSAV shares to be $57,903,750.00 USD.

33. After repeated attempts to obtain my shares from James Tilton and the Wilton Parties failed, I realized that I had no other option than to bring a legal action in the U.S. District Court for the Northern District of Illinois, the jurisdiction in which I resided and where NSAV and I agreed to bring any related legal action pursuant to my Consulting Agreement. In total, my Complaint alleged sixteen (16) causes of action against the Wilton Parties, including claims of breach of contract, unjust enrichment, fraud, and violations of Illinois state statutes.

34. In the beginning of the litigation, the Wilton Parties were represented by counsel and submitted to the jurisdiction of the Court. The Wilton Parties, by and through their retained counsel, thereafter participated in settlement negotiations with me and my attorney, Philip M. Giordano, Esq. For reasons unknown to me, however, the Wilton Parties soon thereafter failed to communicate with or pay their

counsel, resulting in their counsel withdrawing from the case in the Summer of 2023. Since their counsel's withdrawal, the Wilton Parties have failed to acquire or retain new representation to litigate my claims against them.

35. Due to the Wilton Parties' eventual failure to participate in the litigation, my counsel and I filed a Motion for Default Judgment on or around October 30, 2023, which sought $57,903,750.00 USD in damages as a result of the Wilton Parties' violative actions and omissions. Because the Wilton Parties continued to refuse to acquire counsel, the Court granted my Motion and awarded me my requested amount of damages.

36. Ten (10) months later, on September 5, 2024, the Court entered a Final Judgment, officially awarding me a judgment in the amount of $64,685,627.57 USD (together with pre-judgment interest) from the Wilton Parties ("**VG1/[3-4]**").

37. As a valid judgment creditor against the Wilton Parties, and with the Wilton Parties' refusal to respond to any rulings, orders, or judgments by any court in the United States of America, I bring this instant proceeding in the Isle of Man in order to adequately enforce my rights.

38. I instructed FINLAW IOM, as my Isle of Man Advocates, to serve a statutory demand on Wilton Group Limited seeking the payment of the judgment debt amount to me. Stephen Dougherty of FILAW IOM served the Statutory Demand on Wilton Group Limited at its registered office on 7 November 2024. As the first statutory demand had lapsed due to time, I instructed FINLAW IOM to serve a further statutory demand at the new registered office Wilton Group Limited on 8 September 2025 ("**VG1/[5-6]**"). As at the date of this Affidavit, Wilton Group Limited has failed to make any payment to me and the full amount of the judgment debt remains due owing and outstanding.

**Statement of Truth**

39. The facts stated in this witness statement and the Claim Form dated 7 January 2026 are true to the best of my knowledge, information belief.

**TAKEN** and **SWORN** at :
Pittsburgh, Pennsylvania.
This 7th day of January 2026 :

Commonwealth Of Pennsylvania - Notary Seal
WILLIAM G SCHOSSOW, Notary Public
Allegheny County
My Commission Expires Aug 27, 2027
Commission # 1146971

Before me William G Schossow
Notary Public
William G Schossow
Commissioner for Oaths

..........................................

Mr Vikram Grover

Dated: 7 January 2026

Claim No: CHP25/
On behalf of: Claimant
Initials and surname of witness: V Grover
No. of affidavit: First
Exhibit: VG1
Date of Statement: 7 January 2026

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**
**CIVIL DIVISION**
**CHANCERY PROCEDURE**

Between:-

**VIKRAM GROVER** Claimant

and

**WILTON GROUP LIMITED** Defendant

**IN THE MATTER OF** the Claim Form dated 7 January 2026 (**the Claim**) seeking the winding-up of Wilton Group Limited pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931, as applied by section 182 of the Companies Act 2006

**EXHIBIT VG1**

**TAKEN** and **SWORN** at
Pittsburgh, Pennsylvania.
This 7th day of January 2026

Commonwealth Of Pennsylvania - Notary Seal
WILLIAM G SCHOSSOW, Notary Public
Allegheny County
My Commission Expires Aug 27, 2027
Commission # 1146971

Before me: William G. Schossow
Notary Public
[signature]

Commissioner for Oaths

[signature]

Mr Vikram Grover

Dated: 7 January 2026

Claim No: CHP25/
On behalf of: Claimant
Initials and surname of witness: P M Giordano
No. of affidavit: First
Exhibit: PMG1
Date of Statement: 7 January 2026

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**
**CIVIL DIVISION**
**CHANCERY PROCEDURE**

Between: -

**VIKRAM GROVER** Claimant

And

**WILTON GROUP LIMITED** Defendant

**IN THE MATTER OF** the Claim Form dated 7 January 2026 (**the Claim**) seeking the winding-up of Wilton Group Limited pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931, as applied by section 182 of the Companies Act 2006

**FIRST AFFIDAVIT OF PHILIP M. GIORDANO**

I, Philip M Giordano of, One McKinley Square, 6th Floor, Boston, Massachusetts 02109-2724, United States of America, state on oath:

1. I am an attorney, admitted, *inter alia*, to the bars of the Commonwealth of Massachusetts and the State of New York in the United States of America, and, *inter alia*, the United States Supreme Court, the U.S. Court of Appeals for the First and Seventh Circuits, and the U.S. District Court for the District of Massachusetts. I am admitted *pro hac vice* to the United States District Court for the Northern District of Illinois – the jurisdiction in which the cause of action involving Wilton Group Limited, and Wilton UK (Group) Limited (hereinafter collectively referred to as the "**Wilton Parties**") arose. My Firm, Reed & Giordano, P.A., is presently located at One McKinley Square, Boston, Massachusetts 02109.

2. My Firm and I are counsel to Vikram Grover, who, as provided in the contemporaneously filed pleadings and as more specified below, has obtained a Final Judgment from the U.S. District Court for the Northern District of Illinois in the amount of $64,685,627.57 USD against the Wilton Parties.

3. Unless stated otherwise, the factual matters to which I refer in this Affidavit are within my own knowledge and are true to the best of my knowledge. The facts of which I have been informed, are true to the best of my knowledge, information and belief and where possible I have identified the source of this information including information provided to me by my client and the staff at my Firm.

4. I attach hereto an Exhibit Bundle marked "**PMG1**", to which I shall refer during the course of this Affidavit. Unless otherwise stated any reference to page numbers herein is a reference to the documents exhibited at PMG1, which will be referenced in the format "**PMG1/[page number]**".

5. I have been involved with and have represented Mr. Grover in the proceedings against the Wilton Parties in the U.S. District Court for the Northern District of Illinois since the action commenced in the Fall of 2021. Specifically, on or about September 23, 2021, my Firm and I, on behalf of Mr. Grover, submitted a Complaint and Demand for Jury Trial, alleging that the Wilton Parties, in conjunction with three other Defendants – Net Savings Link, Inc. ("**NSAV**"), China Food and Beverage, Co. ("**CHIF**"), and James Tilton – coordinated and conspired to deprive Mr. Grover of 387,500,000 shares of NSAV common stock and $50,000.00 USD in debentures rightfully owed (the "**Complaint**"). At the relevant times, NSAV was a U.S. incorporated company that primarily specialized in cryptocurrency trading.

6. Mr. Grover's Complaint detailed numerous violative acts and omissions performed by the Wilton Parties in and around 2016 which caused Mr. Grover to suffer millions of dollars in damages. In total, Mr. Grover alleged sixteen (16) causes of action against the Wilton Parties, including claims of breach of contract, unjust enrichment, fraud, and violations of Illinois state statutes.

7. In his Complaint, Mr. Grover alleged that, with the Parties in the United States, NSAV, CHIF, and James Tilton (the "**U.S. Defendants**"),[1] the Wilton Parties operated as a "common enterprise" while engaging in the illegal acts and practices alleged in the Complaint. Mr. Grover alleged that the U.S. Defendants and the Wilton Parties and others conducted the alleged deceptive practices described in the Complaint by and through the interrelated network of the Wilton Parties and the U.S. Defendants, which shared a business purpose, business functions, locations, senior executives and management, and employees; and at the relevant times were commonly controlled by the Wilton Parties.

8. Mr. Grover further alleged that because the Wilton Parties and the U.S. Defendants had operated as a common enterprise, each of them were jointly and severally liable for the acts and practices described in the Complaint and that there was a unity of interest between the Wilton Parties and the U.S. Defendants as "alter egos." Mr Grover further alleged that the Wilton Parties and the U.S. Defendants were used to further the deceptive scheme against him as described in the Complaint. Mr. Grover alleged Defendant Tilton personally made representations and omissions of material fact to Mr Grover, purportedly with actual or apparent authority of the Wilton Parties, upon which Mr. Grover relied, to his detriment.

[1] While James Tilton retained a U.S. address in the State of New York at the time of filing, upon information and belief Mr. Tilton has claimed that he presently resides in the Netherlands. For purposes of this Affidavit, however, Mr. Tilton is included in the Defined Term of the "**U.S. Defendants**."

9. As fully described in the Complaint, Mr. Grover alleged that the Wilton Parties, by and through their Managing Partner, Anthony Flanagan, agreed to purchase a controlling interest in NSAV by selling two of their subsidiaries, Hartley SAS Limited and The Lifetime SIPP Co., to NSAV in a "change of control" transaction. Pursuant to Mr. Grover's employment and consulting agreement with NSAV, after completion of this "change of control" transaction, Mr. Grover would immediately be entitled to $50,000.00 USD in debentures and 387,500,000 shares of NSAV common stock, which, around the time of the filing of the Complaint, had climbed to a value $0.1493 USD per share. Aware of this, the Wilton Parties, Anthony Flanagan, and the U.S. Defendants obscured the completed transaction from Mr. Grover, and subsequently refused to deliver Mr. Grover his entitled shares even after NSAV's eventual report to the Securities and Exchange Commission ("SEC") that the "change of control" agreement between NSAV and the Wilton Parties had been executed.

10. Such actions and omissions necessitated the filing of the case in the Northern District of Illinois, where Mr. Grover resided at the relevant time and where NSAV and Mr. Grover, pursuant to Mr. Grover's consulting and employment agreements, agreed to bring any action related to the performance of Mr. Grover's employment duties.

11. On December 1, 2021, proper service of Mr. Grover's Summons and Complaint was made on the Wilton Parties at their London, United Kingdom office located at 26 Grosvenor Street, Mayfair, London, W1K 4QW, UK. On December 3, 2021, further service of Mr. Grover's Summons and Complaint was made on the Wilton Parties at their Isle of Man office located at Grosvenor House, 66/67, Athol Street, Douglas, Isle of Man, IM1 1JE, United Kingdom ("**PMG1/[001-004]**"). For approximately nine (9) months thereafter, the Wilton Parties dragged their feet in responding to Mr. Grover's Complaint. Eventually, on or about August 24, 2022, the Wilton Parties retained counsel in the action, hiring Attorney Catherine Simmons-Gill, Esq. and Attorney Edward Stone, Esq., who soon thereafter filed their Appearances on behalf of the Wilton Parties.

12. On August 25, 2022, the presiding Judge in the action, the Honourable Mary M. Rowland, referred Mr. Grover's case to a magistrate judge to conduct a conference between counsel ("**PMG1/[005]**").

13. On March 22, 2023, the Wilton Parties filed a Motion to Dismiss for Lack of Jurisdiction, which attempted to challenge the Court's authority to hail the Wilton Parties into the United States and the State of Illinois ("**PMG1/[006-022]**"). However, on April 12, 2024, while my Firm and I were preparing responsive papers to the Wilton Parties' motion, Attorneys Catherine Simmons-Gill and Edward Stone both filed independent Motions to Withdraw as Counsel for the Wilton Parties. Their Motions to Withdraw provided that: "Since March 23, 2023, [counsel] has repeatedly reached out to the Wilton Defendants to obtain instructions on how to further proceed in the matter; these communications have not been answered in any substantive manner." Further, the Motions stated: "the Wilton Defendants have failed to pay [counsel] for services rendered in this litigation." ("**PMG1/[023-035]**")

14. On May 2, 2023, due to the Wilton Parties' wilful non-responsiveness to their counsel's inquiries and nonpayment of their services, the Court granted Attorneys Catherine Simmons-Gill and Edward Stone's Motions to Withdraw as Counsel. Due to their attorneys' withdrawal, the Court further denied the Wilton Parties' pending Motion to Dismiss, subsequently finding that the Wilton Parties had submitted to the Court's jurisdiction.

15. After May 2, 2023, the Wilton Parties remained in the case unrepresented. Acknowledging that corporate defendants cannot proceed in litigation *pro se* without formal representation, Judge Rowland allowed the Wilton Parties until July 7, 2023 to engage new counsel. Judge Rowland warned, however, that, if the Wilton Parties did not find counsel in that time, they risked being found in default. On June 16, 2023, Judge Rowland further extended this deadline to August 17, 2023.

16. Despite the Court's warning, the Wilton Parties failed to acquire new counsel. Thus, on September 19, 2023, Judge Rowland fairly ruled that, while the Wilton Parties were free to acquire counsel at any time, no stages of litigation would be further postponed due to their lack of representation.

17. Subsequently, on September 21, 2023, my Firm and I, on behalf of Mr. Grover, filed a Motion for an Entry of Default against the Wilton Parties. The Wilton Parties failed to respond to the motion. As such, on September 24, 2023, Judge Rowland granted our Motion, and entered default against the Wilton Parties. Even with the default, however, Judge Rowland gave the Wilton Parties fourteen (14) more days to cure the default against them by obtaining counsel. The Wilton Parties again failed to acquire counsel in that time.

18. On October 30, 2023, my Firm and I, on behalf of Mr. Grover, filed a Motion for Default Judgment against the Wilton Parties, NSAV, and China Food and Beverage, Co. in the amount of $57,903,750.00 USD – the monetary total that most closely captured Mr. Grover's actual losses due to the Wilton Parties' and the U.S. Defendants' violative acts and omissions. The Wilton Parties failed to respond to this Motion.

19. On December 5, 2023, Judge Rowland held a hearing on Mr. Grover's Motion for Default Judgment. No representative for the Wilton Parties appeared. As a result, the Court found in favour of Mr. Grover on his claims against the Wilton Parties and entered Default Judgment against them in the amount of $57,903,750.00 USD, plus pre-judgment interest ("**PMG1/[036]**").

20. After Default Judgment was entered against the Wilton Parties, litigation against the individual Defendant, James Tilton, who introduced the Wilton Parties to Mr. Grover and NSAV in the first place, continued. On August 26, 2024, after over eight (8) months since Default Judgment was entered against the Wilton Parties, Judge Rowland granted Mr. Grover's Motion for Summary Judgment against James Tilton, holding him similarly liable for Mr. Grover's damages and the economic injuries

sustained. Despite active litigation during these eight (8) months after Default Judgment, the Wilton Parties remained in default and failed to acquire counsel at any point.

21. With all of Mr. Grover's claims against all Defendants now adjudicated, the Court entered Final Judgment against the Wilton Parties in the total amount of $64,685,627.57 USD on September 5, 2024.

22. Despite being involved with the litigation at the outset of the case and engaging in settlement negotiations with Mr. Grover, the Wilton Parties, for reasons unknown to me or Mr. Grover, and despite being afforded numerous opportunities by the Court, wilfully and knowingly failed to acquire new counsel that would have otherwise allowed them to continue participating in the case to defend against Mr. Grover's claims. As demonstrated by the Court's judgment against Defendant Tilton, however, even if the Wilton Parties had engaged counsel, Mr. Grover would have likely succeeded on his claims against them and obtained the instant judgment regardless.

23. With the Wilton Parties' refusal to respond to any rulings, orders, or judgments by Judge Rowland or any court in the United States of America, Mr. Grover now seeks to enforce his rights as a valid judgment creditor against the Wilton Parties in the instant proceedings in the Isle of Man.

**Statement of Truth**

24. The facts stated in this witness statement and the Claim Form dated 7 January 2026 are true to the best of my knowledge, information belief.

**TAKEN** and **SWORN** at Boston, Massachusetts USA :

This 7 day of January 2026 :

Mr Philip M. Giordano

Dated: 7 January 2026

Before me:

Molly Sullivan

Commissioner for Oaths

Molly Quinn Sullivan
NOTARY PUBLIC
Commonwealth of
Massachusetts
My Commission Expires
August 2, 2030

Claim No: CHP25/
On behalf of: Claimant
Initials and surname of witness: P M Giordano
No. of affidavit: First
Exhibit: PMG1
Date of Statement: 7 January 2026

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**
**CIVIL DIVISION**
**CHANCERY PROCEDURE**

Between:-
**VIKRAM GROVER** Claimant
and
**WILTON GROUP LIMITED**

**IN THE MATTER OF** the Claim Form dated 7 January 2026 (**the Claim**) seeking the winding-up of Wilton Group Limited pursuant to sections 162(5) and 163(1)(1) of the Companies Act 1931, as applied by section 182 of the Companies Act 2006

**EXHIBIT PMG1**

**TAKEN** and **SWORN** at Boston, Massachusetts USA

This 7 day of January 2026 : ............................................

: Mr Philip M. Giordano

: Dated: 7 January 2026

:

:

: Before me:

:

:

: Commissioner for Oaths

Molly Quinn Sullivan
NOTARY PUBLIC
Commonwealth of
Massachusetts
My Commission Expires
August 2, 2030

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## SUMMONS IN A CIVIL CASE

Vikram P. Grover

CASE NUMBER: 21-CV-5054

V.

ASSIGNED JUDGE: Hon. Mary M. Rowland

Net Savings Link, Inc., Wilton Group Limited, Wilton UK (Group), Limited, China Food and Beverage Co., and James A. Tilton

DESIGNATED MAGISTRATE JUDGE: Hon. Maria Valdez

TO: (Name and address of Defendant)

Wilton Group, Limited
Grosvenor House, 66-67 Athol Street,
Douglas, Isle of Man, IM1 1JE, United Kingdom

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Jeffrey R. Tone
Katten & Temple LLP
209 S. LaSalle Street, Suite 950
Chicago,IL 60604
jtone@kattentemple.com

an answer to the complaint which is herewith served upon you, 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

THOMAS G. BRUTON, CLERK

Amanda Keil

(By) DEPUTY CLERK

September 24, 2021

DATE

PMG 001

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE<br>01 December 2021 |
| NAME OF SERVER *(PRINT)*<br>Jonathan Wood | TITLE<br>Process Server |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served: Left in the presence of Tanya Moore a receptionist for Wilton UK (Group) Ltd and Wilton Group Ltd, 26 Grosvenor Street, Mayfair, London, W1K 4QW, UK at 10:05 hours on Wednesday 01 December 2021

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: __________

☐ Returned unexecuted: __________

☐ Other (specify): Tanya Moore confirmed that she is authorised to accept: a summons for Wilton UK (Group) Ltd, a Summons for Wilton Group Ltd, a Civil Cover Sheet, the Complaint and Exhibits A through S and that she will pass to James Robson (Head of Financial Services) as soon as he becomes available.

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 01 December 2021
Date

[signature]
*Signature of Server*

Williams & Wood Investigation Services Ltd
*Address of Server*

Third Floor
207 Regent Street
London
W1B 3HH
UK

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PMG 002

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

Vikram P. Grover

CASE NUMBER: 21-CV-5054

V.

ASSIGNED JUDGE: Hon. Mary M. Rowland

Net Savings Link, Inc., Wilton Group Limited, Wilton UK (Group), Limited, China Food and Beverage Co., and James A. Tilton

DESIGNATED MAGISTRATE JUDGE: Hon. Maria Valdez

TO: (Name and address of Defendant)

Wilton Group, Limited
Grosvenor House, 66-67 Athol Street,
Douglas, Isle of Man, IM1 1JE, United Kingdom

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Jeffrey R. Tone
Katten & Temple LLP
209 S. LaSalle Street, Suite 950
Chicago,IL 60604
jtone@kattentemple.com

an answer to the complaint which is herewith served upon you, 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

THOMAS G. BRUTON, CLERK

Amanda Keil

(By) DEPUTY CLERK



September 24, 2021

DATE

**PMG 003**

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me(1) | DATE<br>3rd December 2021 |
| NAME OF SERVER *(PRINT)*<br>Colin Tansley | TITLE<br>Managing Director |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

Wilton Group, Grosvenor House, 66/67, Athol Street, Douglas, Isle of Man, IM1 1JE. Documents handed to Lynsey Hignett, PA to Nicole Hewson Executive Director at 1145hrs.

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☑ Other (specify):

Lynsey Hignett is the PA of Nicole Hewson, Director, she undertook to take the package to her. Desc, WF, 5' 8', slim build, short brown hair, mid thirties.

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 3rd December 2021
Date

*Signature of Server*

Cronk View, Ballanard Road, Douglas, IOM
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

PMG 004

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.6.3**
**Eastern Division**

Vikram P Grover

Plaintiff,

v.

Case No.: 1:21−cv−05054
Honorable Mary M. Rowland

Net Savings Link, Inc., et al.

Defendant.

## ORDER REFERRING A CIVIL CASE TO THE DESIGNATED MAGISTRATE JUDGE

Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Maria Valdez for the purpose of holding proceedings related to: settlement conference. (dm, )Mailed notice.

Dated: August 25, 2022

/s/ Mary M. Rowland

United States District Judge

**PMG 005**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **VIKRAM P. GROVER d/b/a "IX ADVISORS" a/k/a "IXA,"**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIMITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Wales, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and JAMES A. TILTON,**<br><br>**Defendants.** | **<u>Civil Action No. 1:21-cv-05054</u>**<br>**Honorable Mary M. Rowland**<br>**Magistrate Judge Maria Valdez** |

**<u>MOTION TO DISMISS THE COMPLAINT AS TO WILTON GROUP, LIMITED AND WILTON UK (GROUP), LIMITED PURSUANT TO RULE 12 (b)</u>**

Defendants Wilton Group, Limited and Wilton UK (Group), Limited (collectively, the "**Wilton Parties**"), by and through their undersigned attorneys, hereby move to dismiss Plaintiff's Complaint, Dkt. No. 1, *et seq*. (the "**Complaint**") pursuant to Federal Rules of Civil Procedure ("**Fed. R. Civ. P.**") 12(b)(2) and 12(b)(6), and in support thereof, submit the following memorandum of law.

Case 1:21-cv-05054 Document #: 48-1 Filed: 08/23/23 Page 2 of 16 PageID #:523

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

The Complaint filed in this litigation by Plaintiff Vikram Grover ("**Plaintiff**" or "**Grover**") alleges that China Food and Beverage Co. ("**CHIF**"), Net Savings Link, Inc. ("**NSAV**"), and James Tilton ("**Tilton**") are the "alter-ego" of the Wilton Parties (or *vice versa*, it is not precisely clear from the pleadings). Based on this "alter-ego" theory alone, the Complaint further alleges that CHIF, NSAV, Tilton, and the Wilton Parties "operated a common enterprise" that caused "breaches of the Consulting Agreement" to the Plaintiff's detriment. Compl. ¶¶ 7-9, 12. All of Plaintiff's allegations, to the extent any allegations are actually made about the Wilton Parties, are made "upon information and belief." There is, however, no relationship, "alter ego" or otherwise between the Wilton Parties on one hand and any of the remaining Defendants on the other hand that connects the Wilton Parties to *any* of the claims alleged in the Complaint. Thus, the Complaint fails to state a claim against the Wilton Parties because Plaintiff's "alter-ego" theory is fatally flawed.

Further and in addition, as a threshold matter, this Court lacks personal jurisdiction over the Wilton Parties, because no delivery of the summons and complaint was made on either of the Wilton Parties in the United States and the Plaintiff made no attempt to comply with the requirements of the Hague Convention as required by Fed. R. Civ. P. 4(f). Delivery of the summons and complaint by local agencies resident in the United Kingdom and the Isle of Man without compliance with the Hague Convention is not valid service on the Wilton Parties and this alone warrants dismissal of the Complaint against them.

Case 1:21-cv-05054 Document #: 43 Filed: 08/18/23 Page 3 of 30 PageID #:330

## PROCEDURAL HISTORY

On September 23, 2021, Plaintiff filed a sixteen (16) count Complaint[1] against the Wilton Parties, NSAV, CHIF, Tilton, and one hundred "John Does". Each of the sixteen claims was made against the Wilton Parties, in addition to NSAV, CHIF, and Tilton. [Dkt. No. 1].

On December 23, 2021, Plaintiff requested entry of default pursuant to Fed. R. Civ. P. 55(a) against the Wilton Parties for failure to timely plead or otherwise defend in this action. [Dkt. Nos. 18, 19]. On January 19, 2022, this Court granted Plaintiff's motions and default was entered against the Wilton Parties. [Dkt. Nos. 26, 27].

On December 24, 2021, Plaintiff requested entry of default pursuant to Fed. R. Civ. P. 55(a) against defendants NSAV and CHIF. [Dkt. No.'s 20, 21]. On December 30, 2021, Plaintiff requested entry of default pursuant to Fed. R. Civ. P. 55(a) against defendant Tilton. [Dkt. No. 22]. On January 19, 2022, the Court granted Plaintiff's motions for default judgments against defendants NSAV, CHIF, and Tilton, but agreed to vacate such defaults if NSAV, CHIF, and Tilton filed a response by February 11, 2022. [Dkt. No.'s 28-30].

NSAV, CHIF, and Tilton filed an Answer on February 11, 2022. [Dkt. No. 36].

[1] Count I – Specific Performance / Intended Third-Party Beneficiary of *Binding Change of Control Agreement*; Count II – Breach of Contract-Consulting Agreement and Non-Circumvention Agreement; Count III-Breach of Contract-*Binding Change of Control Agreement*; Count IV-Breaches of Implied Covenant of Good Faith and Fair Dealing; Count V-Unjust Enrichment; Count VI-Tortious Interference with Advantageous Business and Contractual Relations-Consulting Agreement / Non-Circumvention Agreement and Employment with Defendant Net Savings Link, Inc.; Count VII – Tortious Interference with Prospective Economic Advantage with PowerUp and Third-Parties; Count VIII – Oral Contract – Promissory Estoppel / Detrimental Reliance; Count IX – Fraud and Deceit; Count X – Negligent Misrepresentation; Count XI – Violations of Illinois Wage Act / 820 ILCS §§ 115/1; Count XII – Violations of Illinois Securities Law of 1953; Count XIII – "Controlling Persons" Liability under the Illinois Securities Law of 1953; Count XIV – Violations of Illinois Consumer Fraud and Deceptive Business Practices Act / ILS §§ 505; Count XV – Civil Conspiracy; and Count XVI – Accounting/Constructive Trust-Declaratory / Equitable Relief.

On February 28, 2022, this Court vacated the defaults entered against defendants NSAV, CHIF, Tilton (the "**Tilton Parties**"), and the Wilton Parties on January 19, 2022, and directed the parties to file a joint status report by March 22, 2022. [Dkt. No. 40]. The Court reviewed the joint status report [Dkt. No. 41], adopted the parties' proposed discovery schedule, and set a status conference for June 23, 2022. [Dkt. No. 42]. At the request of the Plaintiff and the Tilton Parties, an extension was granted, while those parties continued their settlement efforts. [Dkt. No. 44].

In its minute entry on May 25, 2022, the Court noted that "Wilton Group/Wilton UK has not been served or entered an appearance as yet. Parties should be prepared to address this issue at the status in July, if the matter is not resolved prior to that." [Dkt. No. 44]. The Court made that same notation in its minute entry on June 23, 2022. [Dkt. No. 46].

The Tilton Parties again requested an extension of time to continue settlement discussions [Dkt. No. 45], which was granted on June 23, 2022. [Dkt. No. 46].

Plaintiff and the Tilton Parties were unable to settle this matter prior to the status conference scheduled for August 25, 2022. On August 24, 2022, the Wilton Parties entered an appearance in this litigation. [Dkt. Nos. 47, 48].[2] At the status conference on August 25, 2022, the Court referred this litigation to Magistrate Judge Maria Valdez for settlement purposes. [Dkt. Nos. 49, 50]. Plaintiff submitted his settlement demand on September 8, 2022, pursuant to Magistrate Valdez's Order, and the Tilton Defendants and the Wilton Parties submitted their response on September 22, 2022. [Dkt. No. 51].

---

[2] As directed by the Court, the Tilton Parties served their Initial Disclosures pursuant to FRCP 26 on September 16, 2022. As the Wilton Parties have filed the instant motion to dismiss based on FRCP Rule 12 (b)(2), the Wilton Parties did not serve Initial Disclosures at that time but remain prepared to do so should the Court so direct.

Case 1:21-cv-05054 Document #: 84-1 Filed: 03/24/23 Page 5 of 31 PageID #:532

Protracted settlement negotiations followed, and culminated with Magistrate Valdez's Report and Recommendation on February 23, 2023, adopted by this Court on March 21, 2023 at the status call of the same date, finding that:

> Plaintiff's request to enforce the Settlement Term Sheet therefore should be denied both because the agreement itself if not enforceable on its terms, and the specific condition he seeks to enforce was not part of the agreement. The Court cannot order Defendants to deliver the shares electronically when electronic delivery was not discussed in the settlement conference, was not contemplated by the written Settlement Term Sheet, and furthermore, is impossible to effectuate.

[Dkt. No. 80].

On March 21, 2023, in its order of the same date, the Court established various discovery deadlines and ordered the filing of this motion by March 24, 2023. [Dkt. No. 82.]

**STATEMENT OF FACTS**

On July 28, 2015, Plaintiff allegedly entered into a "Non-Circumvent & Non-Disclosure Agreement & Investment, Merger, Project or Sales Opportunity – Letter of Intent (LOI) with the then Chief Executive Officer of NSAV, Steven Baritz ("**Baritz**"). This agreement referenced a term of one (1) year, and an undefined "Business Financial Transaction". Compl., Ex. A.

One month later, on August 21, 2015, Plaintiff and Steven Baritz allegedly entered into *another* agreement. Under the terms of this letter agreement (referred to herein, and in the Complaint as the "**Consulting Agreement**"), Grover, through his d/b/a "IX Advisors" was to use his "best efforts to find up to but not limited to $5 million financing" for NSAV. Compl., Ex. B at ¶ A. In exchange for this Grover was to receive "5% of the Company's fully-diluted shares outstanding, payable on closing of a MA&JV [Mergers, Acquisitions & Joint Venture] transaction with a private entity introduced by IXA that results in a change of control. This

compensation will be in the form of Series B preferred shares and calculated using the post-merger capitalization table." Compl., Ex. B at ¶ B (2).

On that same date, Grover and Baritz also allegedly entered into *another* letter agreement. This letter agreement was purportedly a "formal offer to you [Grover] to join Net Savings Link as Director of Corporate Finance" reporting to "Steven Baritz, CEO." Compl., Ex. C. The letter stated that "we [NSAV] will bring you aboard as a 10-99." Compl., Ex. C.

Plaintiff alleges that the Tilton Parties breached these agreements and are liable to Plaintiff for damages and wages. *See generally*, Compl. ¶¶ 1 - 245; *supra* fn. 1. In addition, Plaintiff makes a series of general, unsupported allegations "upon information and belief" that the Wilton Parties are the alter-ego of CHIF, NSAV, and Tilton. Compl. ¶¶ 7, 8, 12, 80, 81, 82. On this basis alone, Plaintiff seeks to hold the Wilton Parties liable to him.

## LEGAL STANDARD

A defendant may move to dismiss a claim for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Once jurisdiction has been challenged, the plaintiff bears the burden of demonstrating the existence of jurisdiction over the defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 2003); *Calloway v. AT&T Corp.*, No. 18 C 06975, 2019 U.S. Dist. LEXIS 166374, at *5 (N.D. Ill. Sep. 26, 2019).

In Illinois, a federal district court exercising diversity jurisdiction has personal jurisdiction over a non-resident party only if an Illinois state court would have jurisdiction over that party. *Turner Diesel* at 1275-1276 (citations omitted). Affidavits, declarations, and outside evidence can be considered in connection with a motion to dismiss pursuant to Rule 12 (b)(2) based on lack of personal jurisdiction over a defendant. *See Siegel v. HSBC Holdings, plc,* 283 F. Supp. 3d 722, 728 (N.D. Ill. 2017) (observing that a court may "receive and weigh" affidavits



**PMG 011**

from both parties); *Nelson v. Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (same). As such, the Wilton Parties submit herewith the sworn Declaration of Theunis Bassage, head of corporate and legal for the Wilton Parties, dated September 20, 2022 (the "**Bassage Decl.**").

In addition to establishing personal jurisdiction over a defendant, the plaintiff must also state a viable claim against each defendant named in the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Determining the plausibility of a claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. 662, 679). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal* at 678 (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal* at 679.

As described herein, Plaintiff's claims against the Wilton Parties as set forth in his Complaint (despite its sixteen counts and 105 numbered paragraphs of alleged "facts") do not satisfy these minimal pleading requirements.

## ARGUMENT

### I. Plaintiff Has Not Established that This Court Has Personal Jurisdiction Over the Wilton Parties

#### A. The Wilton Parties Are Not Subject to General Jurisdiction.

In order for an out-of-state or foreign defendant to be sued in Illinois, two criteria must be met. First, jurisdiction must be authorized by the Illinois long-arm statute, and second, the defendant must have certain "minimum contacts" with Illinois that are significant enough that

personal jurisdiction does not violate due process. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990). The Illinois long-arm statute allows for jurisdiction over out-of-state defendants who transact any business in Illinois, or who form a contract or promise that is substantially connected with Illinois. 735 ILCS 5/2-209(a). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). "[G]eneral jurisdiction 'should not lightly be found,' because that would mean that the defendant can be sued for *any* case in the particular forum, no matter the specific case's lack of connection to the state." *Calloway v. AT& T Corp.*, No. 18 C 06975, 2019 U.S. Dist. LEXIS 166374, at * (N.D. Ill. Sep. 26, 2019) (internal citations omitted) (emphasis in original).

Plaintiff alleges that this Court has jurisdiction based on diversity under 28 U.S.C. § 1332. Compl. ¶ 13. Plaintiff alleges that this court "has personal jurisdiction, "generally and specifically over the Defendant[3] by express terms of the Agreement, and as arising from their extensive business contacts, generally over time and specifically in their business dealings with the Plaintiff, within the State of Illinois." Compl. at ¶ 15. Quite simply, Plaintiff has *no facts to support general jurisdiction over the Wilton Parties*.

As Plaintiff explicitly acknowledges, both of the Wilton Parties are foreign defendants. Compl. ¶¶ 7-8. Wilton UK (Group) Limited is an entity registered in the United Kingdom. Bassage Decl. ¶ 3. Wilton Group Limited is an entity registered in the Isle of Man, United Kingdom. *Id*.

[3] It is not clear what "Defendant" Plaintiff is referring to here, but for purposes of this instant motion to dismiss, the Wilton Parties have assumed that Plaintiff intended to refer to all of the defendants.

Neither of the Wilton Parties maintains an office in Illinois; in fact, they do not maintain *any* offices in the United States. Bassage Decl. ¶ 6. Nor has either entity *ever* transacted business in the State of Illinois. *Id*. The Wilton Parties had no contact with the Plaintiff within the State of Illinois; indeed, the Wilton Parties had no contact with the Plaintiff whatsoever. Bassage Decl. ¶¶ 16-19. Accordingly, general personal jurisdiction is lacking.

**B. The Wilton Parties Are Not Subject to Specific Jurisdiction**

The Court also lacks specific personal jurisdiction over the Wilton Parties. In order to establish specific jurisdiction, a plaintiff must show that a defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and the injury alleged by plaintiff arises out of the defendant's activities in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Courts must determine whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim." *uBid, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 317 (1945)).

Defendants' contacts must connect them to Illinois in a "meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "[S]uch contacts must satisfy at least three requirements: (1) the contacts are created by the defendant himself; (2) the contacts are targeted at the forum state (as opposed to merely persons who reside there); and (3) the contacts bear on the substantive legal dispute. *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1044 (N.D. Ill. 2015). "[S]pecific jurisdiction requires a defendant's contacts with the forum state to 'directly relate to the challenged conduct or transaction.'" *Kisu Seo v. H Mart Inc.*, No. 19-cv-03248, 2020 U.S. Dist. LEXIS 169554, *6 (N.D. Ill. Sep. 16, 2020) (Rowland, J.) (internal citations omitted).

Here, Plaintiff simply makes general allegations about the Wilton Parties, trying to impose upon them an alter-ego status, claiming that they are liable to him to the same extent as any other defendant in this action because they are the "alter-ego" of NSAV, CHIF, and Tilton. However, Plaintiff has failed to plead any specific facts supporting his claim that this Court has specific personal jurisdiction over the Wilton Parties because Plaintiff has failed to show that his alleged injuries arise out of the Wilton Parties contact with, or connection to this forum at all.

The Wilton Parties did not enter into any agreements with Plaintiff. Bassage Decl. ¶ 23. Nor did they review any agreements with Plaintiff. Bassage Decl. ¶ 19. The Wilton Parties have absolutely no business records whatsoever that address any of the allegations in Plaintiff's Complaint, and after diligent search, found no correspondence between any of the Wilton Parties' employees or directors and Plaintiff in their records. Bassage Decl. ¶¶ 16-19; 23. No board member, employee, or officer of the Wilton Parties ever corresponded with Plaintiff. Bassage Decl. ¶ 22. The Wilton Parties were entirely unaware of the instant dispute until they learned of it in December 2021 from co-defendant Tilton. Bassage Decl. ¶ 16.

Wilton UK (Group) Limited provides professional accounting services at arms-length to CHIF and NSAV. Bassage Decl. ¶¶ 10-11. Wilton Group Limited does not provide any services to NSAV or CHIF. Bassage Decl. ¶ 12. Tilton does not now, nor did he ever have authority to act on behalf of the Wilton Parties. Bassage Decl. ¶ 9. Contrary to the allegations in the Complaint, Tilton is not now, nor was he ever an officer, director, shareholder, employee and/or authorized agent of either of the Wilton Parties. Bassage Decl. ¶ 8.

As expanded upon in Section II hereof, not only does Plaintiff's alter-ego theory fail as a basis for personal jurisdiction, it also fails as a theory of liability as to the Wilton Parties.

## II. Plaintiff Has Failed to State a Claim Against the Wilton Parties in Any of His Sixteen Counts Based on His "Alter-Ego" Theory

Plaintiff has named the Wilton Parties in each of his sixteen counts. *See supra*, fn. 1Plaintiff's theory of this case, as best as it may be discerned, is that the Wilton Parties are the alter-ego of defendants Tilton, CHIF, and NSAV, and as such are liable for the alleged acts of Tilton, CHIF, and NSAV due to a proposed transaction between CHIF and NSAV that never materialized. However, Plaintiff fails to allege any facts that support this alter-ego theory.

Courts consider the following three factors in determining alter-ego status: "1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited on the litigants by respecting the corporate entity." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp.*, 85 F.3d 1282, 1287 (7th Cir. 1996); *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 461 (7th Cir.), cert. denied, 502 U.S. 939, 116 L. Ed. 2d 324, 112 S. Ct. 373 (1991) (internal citations omitted). "Critical to the alter-ego analysis is the presence of an unlawful motive or intent." *Boim v. Am. Muslims for Palestine*, No. 17-cv-3591, 2017 U.S. Dist. LEXIS 132197. *9 (N.D. Ill. Aug. 18, 2017). Courts also look at the purported control or dominance of the alter-ego entity over the original entity. *Id*. Of these three factors, the Seventh Circuit "affords the greatest weight to the second factor," the "motive and intent" of the entities. *Chi. Dist. Council of Carpenters Pension Fund v. Sunshine Carpet Servs.*, 866 F. Supp. 1113, 1116 (N.D. Ill. 1994)

None of these three requirements has been met.

As to the first requirement, Wilton Group, Limited and Wilton UK (Group), Limited are distinct and separate entities from NSAV and CHIF. The members of the board of Wilton UK (Group) Limited are Michael Anthony Flanagan, Nicole Hewson, Natalie Mitchell, and James Robson. Bassage Decl. ¶ 4. The members of the board of Wilton Group, Limited are Anthony

Elliot Barber, Michael Anthony Flanagan, and Nicole Hewson. Bassage Decl. ¶ 5. Tilton has never been an "officer, director, shareholder, employee and/or authorized agent of either of the Wilton Parties" and has never been authorized to act on their behalf. Bassage Decl. ¶¶ 8, 9. The Wilton Parties are not NSAV or CHIF shareholders. Bassage Decl. ¶ 13, 14.[4]

Plaintiff Vikram Grover's hope to find the Wilton Parties liable for any claims is based solely upon his fictional allegations made "upon information and belief" that James Tilton is or was an "officer, director, employee and/or authorized agent of Defendants . . . Wilton-Isle of man, Wilton-UK and/or various entities of the Wilton Group." Such is simply not the case. Bassage Decl. ¶¶ 8-9.

As for the second requirement – fraudulent intent – this has not been pled. The Wilton Parties had no contact with Plaintiff whatsoever; they did not enter into any agreements with Plaintiff, and they never corresponded with Plaintiff. Bassage Decl. ¶¶ 16-19. Plaintiff simply has not alleged, nor could he, that the Wilton Parties acted or operated with any kind of fraudulent intent toward Plaintiff.

As to the third and final requirement, the "degree of injustice visited on the litigants by respecting the corporate entity" the focus of inquiry is on the extent to which the plaintiff would be irreparably harmed if the corporate forms are not disregarded. *Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 461 (7th Cir. 1991). Again, Plaintiff has not, and cannot allege any set of facts under which the Wilton UK (Group) Limited, an entity providing arms-length accounting services to CHIF and NSAV, and Wilton Group, Limited, an entity providing no services whatsoever to CHIF or NSAV, has any relationship to this litigation at all. No services are

[4] A subsidiary of Wilton Group Limited, Wilton Trustee (IOM) Limited, holds non-controlling interests in CHIF as a nominee for two entities: Calder Investments Limited and Korkor Holdings Limited. In neither instance does Wilton Trustee (IOM) Limited control those shares; it follows the instructions of the beneficial owners of those shares. Bassage Decl. ¶¶ 14-15.

provided by either of the Wilton Parties to Tilton individually. The ability of CHIF, NSAV, or Tilton to satisfy any prospective judgment to Plaintiff (or anyone else for that matter) is of no moment to the Wilton Parties. Plaintiff simply has his facts wrong.

**CONCLUSION**

For the reasons and pursuant to the authority cited herein, the Wilton Parties respectfully request that this Court dismiss Plaintiff's claims against them in their entirety.

Dated: March 22, 2023

Respectfully submitted,

WILTON GROUP, LIMITED AND WILTON UK (GROUP), LIMITED
By their Attorneys,

*/s/ Edward S. Stone*
______________________________

Edward S. Stone, Esq. (admitted *pro hac vice*)
NY Bar No. 2259489
EDWARD STONE LAW P.C.
175 W. Putnam Avenue, Suite 2
Greenwich, Connecticut 06830
Telephone: 203-504-8425 / Facsimile: 203-348-8477
Email: eddie@edwardstonelaw.com

Catherine Simmons-Gill
(IL ARDC # 2159058)
Local Counsel
OFFICE OF CATHERINE SIMMONS-GILL LLC
111 W. Washington Street, Suite 1110
Chicago, Illinois 60602
Telephone: 312-609-6611 / Facsimile: 312-609-0626
Email: simmonsgill@gmail.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VIKRAM P. GROVER d/b/a "IX ADVISORS" a/k/a "IXA,"**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIMITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Wales, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and JAMES A. TILTON,**<br><br>**Defendants.** | **Civil Action No. 1:21-cv-05054**<br>**Honorable Mary M. Rowland** |

**DECLARATION OF THEUNIS BASSAGE**

Pursuant to 28 U.S.C. § 1746, Theunis Bassage, hereby declares as follows:

1. My full name is Theunis Bassage, and the following facts are all within my personal knowledge. I submit this declaration in support of the instant motion to dismiss the Amended Complaint in the above captioned proceeding.

2. I am a citizen of South Africa with a right of permanent residence in the Isle of Man.

3. I am the head of corporate and legal for Wilton UK (Group) Limited and Wilton Group Limited (collectively, the "**Wilton Parties**"). Wilton UK (Group) Limited is an entity

registered in the United Kingdom with an address located at 26 Grosvenor Street, Mayfair, London W1K 4QW and Wilton Group Limited is an entity registered in the Isle of Man, the United Kingdom with an address located at Grosvenor House, 66-67 Athol Street, Douglas, Isle of Man, IM1 1JE, United Kingdom.

4. The Board of Wilton UK (Group) Limited consists of: Michael Antony Flanagan, Nicole Hewson, Natalie Mitchell and James Robson.

5. The Board of Wilton Group Limited consists of: Anthony Elliot Barber, Michael Antony Flanagan, Nicole Hewson and ~~Alan Molloy~~.

6. Neither of the Wilton Parties maintains any offices in the United States of America and neither Wilton Party has ever transacted business in the State of Illinois.

7. Contrary to the allegations made against the Wilton Parties in the Complaint, the Wilton Parties are not alter-egos of Defendants Net Savings Link, Inc. ("**NSAV**") or China Food and Beverage Co. ("**CHIF**"). The Wilton Parties do not control NSAV or CHIF, nor do the Wilton Parties participate in day-to-day decisions made by NSAV or CHIF. No officer or director of the Wilton Parties is an officer or director of NSAV or CHIF

8. Contrary to the allegations set forth in the Complaint, James Tilton is not now, nor has he ever been an officer, director, shareholder, employee and/or authorized agent of either of the Wilton Parties.

9. James Tilton does not now, nor did he ever have any authority to act on behalf of the Wilton Parties in any capacity whatsoever.

10. Wilton UK (Group) Limited provides professional services at arms-length to NSAV and CHIF.

11. These professional services are provided in the form of accounting services.

12. Wilton Group Limited does not provide any services to either NSAV or CHIF.

13. The Wilton Parties do not hold any shares in NSAV.

14. The Wilton Parties do not hold any shares in CHIF. Wilton Trustees (IOM) Limited, a subsidiary of Wilton Group Limited holds non-controlling interests in CHIF for Calder Investments Limited and Korkor Holdings Limited.

15. In both instances Wilton Trustees (IOM) Limited has no beneficial interest in the shares, but rather holds the shares as nominee subject to the direction and the instruction of Calder Investment Limited and Korkor Holdings Limited. For the avoidance of doubt, Wilton Trustees (IOM) Limited does not control the shares but follows the instructions of the beneficial owners – Calder Investments Limited and Korkor Holdings Limited.

16. The Wilton Parties have no business records whatsoever that address any of the allegations in the Complaint and the Wilton Parties were entirely unaware of the instant dispute until we learned about this lawsuit from James Tilton on or about December 22, 2021 when Mr. Tilton advised Wilton Parties CEO Mr. Tony Flanagan of a post by the Plaintiff that he has or intends to file a law suit against the Defendants in this matter.

17. After learning about this lawsuit, I asked the IT department for the Wilton Parties to search our systems for correspondence with Plaintiff in the instant litigation and no correspondence with plaintiff by any of the Wilton Parties' directors or employees was located.

18. I am not aware of any documents in the possession, custody or control of the Wilton Parties that references Plaintiff in any capacity.

19. The Wilton Parties did not review, approve, or sign ***any*** agreements with Plaintiff.

20. Hartley Pensions Limited is a regulated business in the United Kingdom and in order for there to be a change of ownership, regulatory approval must be obtained. This

application is a lengthy process which takes 6 to 8 months. I can find no records of such an application, or any filings of the transaction referred to in the Plaintiff's papers. As a regulated business Hartley would be obliged to notify the Regulator when any negotiations were entered into. No notification was made in this instance because no negotiations were entered into.

21. No member of the Board of the Wilton Parties ever met with the Plaintiff.

22. No Board Member, employee or officer of the Wilton Parties ever corresponded with Plaintiff.

23. The Wilton Parties did not enter into any agreements with Plaintiff.

24. No member of the Board of the Wilton Parties has ever set foot in the State of Illinois.

25. The allegations made by Plaintiff with respect to the Wilton Parties in his Complaint are patently false.

26. The Wilton Parties have no connection whatsoever to the dispute outlined in the Complaint and the Wilton Parties have no nexus whatsoever to the State of Illinois.

I declare under penalty of perjury and under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 day of September, 2022 in Douglas, Isle of Man

Theunis Bassage

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **VIKRAM P. GROVER d/b/a "IX ADVISORS" a/k/a "IXA,"** | |
| **Plaintiff,** | |
| **v.** | |
| **NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIMITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Wales, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and JAMES A. TILTON,** | **Civil Action No. 1:21-cv-05054** **Honorable Mary M. Rowland** **Magistrate Judge Maria Valdez** |
| **Defendants.** | |

**ATTORNEY CATHERINE SIMMONS-GILL, ESQ.**
**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR WILTON GROUP, LIMITED AND WILTON UK (GROUP) LIMITED**

NOW COMES local counsel, Catherine Simmons-Gill ("**Movant**"), and respectfully moves for leave to withdraw her appearance as local counsel on behalf of Wilton Group Limited and Wilton UK (Group), Limited, ("the "**Wilton Defendants**") in the above-captioned matter, stating the following in support:

1. Movant is an attorney of record for the Wilton Defendants in the above-captioned lawsuit in the limited capacity of local counsel.

Case 1:21-cv-05054 Document #: 26 Filed: 04/12/23 Page 2 of 3 PageID #:364

2. Movant has relied on Counsel, Edward Stone, primary and lead counsel for the Wilton Defendants for instructions.

3. Movant has consulted and continues to consult regularly with Mr. Stone since the beginning of her representation of the Wilton Defendants as local counsel.

4. Since March 23, 2023, Mr. Stone has been unable to provide Movant with instructions from the Wilton Defendants.

5. Based on Mr. Stone's representations in his Motion to Withdraw (ECF No. 87 ), I understand the following. Since March 23, 2023, Mr. Stone has repeatedly reached out to Defendants to obtain instructions on how to further proceed in the matter; these communications have not been answered. On April 11, 2023, Mr. Stone also learned that one of the Wilton Defendants, Wilton UK (Group) Limited, is involved in insolvency proceedings in the Business and Property Courts of England and Wales, and an administrator has been appointed over that entity.

6. Under these circumstances, Movant is in the position of being unable to properly represent the Wilton Defendants.

7. Accordingly, Movant respectfully requests leave to withdraw her appearance as local counsel for the Wilton Defendants in this matter.

8. It is Movant's understanding that this motion will be served on the Wilton Defendants via email and USPS registered mail by Mr. Stone at the addresses provided in Exhibit 1 hereto. As Movant is the last to request withdrawal, she also provides the form required by L.R. 83.17.

WHEREFORE, Movant Catherine Simmons-Gill respectfully requests leave to withdraw as local counsel for the Wilton Defendants in the instant matter, and requests other such further relief as this Court deems just.

Dated: April 12, 2023

Respectfully Submitted,

/s/ Catherine Simmons-Gill
OFFICE OF CATHERINE SIMMONS-GILL LLC
111 W. Washington Street, Suite 1110
Chicago, Illinois 60602
Telephone: 312-609-6611
Facsimile: 312-609-0626
Email: simmonsgill@gmail.com
(IL ARDC # 2159058)

**EXHIBIT 1**

06/12/15

**United States District Court**
**Northern District of Illinois**

**Notification of Party Contact Information**

**Directions**: This form must be attached to a motion to withdraw from a case when no other attorney of record has been noted on the docket. A completed form must be electronically filed as an attachment to the motion to withdraw. The address and telephone number of your client must be completed on this form to enable the Court to contact your client in the future if the motion to withdraw is granted.

**Case Number**: 1:21 - cv - 05054

**Case Title**: Vikram P. Grover, et al. v. Net Savings Link, et al.

**Judge**: Mary Rowland

**Name of Attorney submitting the motion to withdraw**:
Catherine Simmons-Gill

**Name of Client**:
Wilton Group Limited, attention: Theunis Bassage

**Mailing address of Client:** Grosvenor House, 66-67 Athol St., Isle of Man

**City:** **State:**

**Zip:** 1M1 1JE **Telephone Number:** 44 (0) 1624 675 610

**I attest that the above information is true and correct to the best of my knowledge.**

**Signed:** ______________________________

**Date:** April 12, 2023

06/12/15

**United States District Court**
**Northern District of Illinois**

**Notification of Party Contact Information**

**Directions**: This form must be attached to a motion to withdraw from a case when no other attorney of record has been noted on the docket. A completed form must be electronically filed as an attachment to the motion to withdraw. The address and telephone number of your client must be completed on this form to enable the Court to contact your client in the future if the motion to withdraw is granted.

**Case Number**: 1:21 - cv - 05054

**Case Title**: Vikram P. Grover, et al. v. Net Savings Link, et al.

**Judge**: Mary Rowland

**Name of Attorney submitting the motion to withdraw**:

Catherine Simmons-Gill

**Name of Client**:

Wilton UK (Group) Limited, attention: Theunis Bassage

**Mailing address of Client**: Grosvenor House, 66-67 Athol St., Isle of Man

**City:** **State:**

**Zip:** 1M1 1JE **Telephone Number:** 44 (0) 1624 675 610

**I attest that the above information is true and correct to the best of my knowledge.**

**Signed:** ____________________

**Date:** April 12, 2023

**PMG 028**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**VIKRAM P. GROVER d/b/a**
**"IX ADVISORS" a/k/a "IXA,"**

**Plaintiff,**

**v.**

**NET SAVINGS LINK, INC., a Colorado corporation and formerly organized as a Nevada corporation, WILTON GROUP, LIMITED, as registered in the Isle of Man, U.K., WILTON UK (GROUP), LIMITED, as registered in England and Wales, U.K., CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and JAMES A. TILTON,**

**Defendants.**

**<u>Civil Action No. 1:21-cv-05054</u>**
**Honorable Mary M. Rowland**
**Magistrate Judge Maria Valdez**

**ATTORNEY EDWARD S. STONE, ESQ.**
**MOTION FOR LEAVE TO WITHDRAW AS COUNSEL FOR WILTON GROUP, LIMITED AND WILTON UK (GROUP) LIMITED**

NOW COMES attorney Edward S. Stone, Esq. of Edward Stone Law P.C. ("**Movant**"), and respectfully moves for leave to withdraw his appearance on behalf of Wilton Group, Limited, and Wilton UK (Group) Limited (together, the "**Wilton Defendants**") in the above-captioned matter, stating the following in support:

1. Movant is an attorney of record for the Wilton Defendants in the above-captioned lawsuit.

2. Since March 23, 2023, Movant has repeatedly reached out to the Wilton

Defendants to obtain instructions on how to further proceed in the matter; these communications have not been answered in any substantive manner.

3. Further, the Wilton Defendants have failed to pay Movant for services rendered in this litigation.

4. On April 11, 2023, Movant learned that an administrator was appointed over Wilton UK (Group) Limited in an insolvency proceeding in the Business and Property Courts of England and Wales, Court Number CR-2023.[1]

5. Under these circumstances, Movant is in the position of being unable to continue to properly represent the Wilton Defendants in this matter.

6. Movant respectfully requests leave to withdraw his appearance on behalf of the Wilton Defendants in this matter.

7. This motion has been served on the Wilton Defendants via email and via U.S.P.S. registered mail.

8. Attached hereto are the "Notification of Party Contact Information" for each of the Wilton Defendant as required by L.R. 83.17. See **Exhibit A** attached hereto.

9. The motion to withdraw of Catherine Simmons-Gill, Esq., local counsel to the Wilton Defendants will be filed separately on this Court's docket.

WHEREFORE, movant Edward S. Stone, Esq. respectfully requests leave to withdraw as counsel for the Wilton Defendants in the instant matter, and requests other such further relief that this Court deems just.

---

[1] See https://www.thegazette.co.uk/notice/4328438, retrieved on April 12, 2023.

Dated: April 12, 2023

Respectfully Submitted,

*/s/ Edward S. Stone*

______________________________

Edward S. Stone, Esq.
(admitted *pro hac vice*)
NY Bar No. 2259489
EDWARD STONE LAW
P.C.
175 W. Putnam Avenue,
Suite 2
Greenwich, Connecticut
06830
Telephone: 203-504-8425 /
Facsimile: 203-348-8477
Email:
eddie@edwardstonelaw.com

Case 1:21-cv-05054 Document #: 26-17 Filed: 01/12/23 Page 52 of 56 PageID #:422

**CERTIFICATE OF SERVICE**

James Tilton
New Savings Link, Inc.
China Food and Beverage Company
1942 Broadway Street, Suite 314c
Boulder, CO 80302
Via certified mail

via e-mail: jamtilton@yahoo.com

Wilton UK (Group) Limited
Wilton Group Limited
Grosvenor House
66-67 Athol Street
Isle of Man IM1 1JE
Att: Theunis Bassage
Via registered mail

Via email: theunisb@wiltongroup.com



PMG 032

# EXHIBIT A

06/12/15

**United States District Court**
**Northern District of Illinois**

**Notification of Party Contact Information**

**Directions**: This form must be attached to a motion to withdraw from a case when no other attorney of record has been noted on the docket. A completed form must be electronically filed as an attachment to the motion to withdraw. The address and telephone number of your client must be completed on this form to enable the Court to contact your client in the future if the motion to withdraw is granted.

**Case Number**: 1:21-cv-05054

**Case Title**: Vikram P. Grover, et al. v. Net Savings Link, Inc., et al.

**Judge**: Mary Rowland

**Name of Attorney submitting the motion to withdraw**:

Edward S. Stone, Esq.

**Name of Client**:

Wilton UK (Group) Limited, Attn: Theunis Bassage

**Mailing address of Client**: Grosvenor House, 66-67 Athol St., Isle of Man

**City:** **State:**

**Zip:** IM1 1JE **Telephone Number:** 44 (0) 1624 675 610

**I attest that the above information is true and correct to the best of my knowledge.**

**Signed:** ______________________

**Date:** 4/12/2023

06/12/15

**United States District Court**
**Northern District of Illinois**

**Notification of Party Contact Information**

**Directions**: This form must be attached to a motion to withdraw from a case when no other attorney of record has been noted on the docket. A completed form must be electronically filed as an attachment to the motion to withdraw. The address and telephone number of your client must be completed on this form to enable the Court to contact your client in the future if the motion to withdraw is granted.

**Case Number**: 1:21-cv-05054

**Case Title**: Vikram P. Grover, et al. v. Net Savings Link, Inc., et al.

**Judge**: Mary Rowland

**Name of Attorney submitting the motion to withdraw**:
Edward S. Stone, Esq.

**Name of Client**:
Wilton Group Limited, Attn: Theunis Bassage

**Mailing address of Client**: Grosvenor House, 66-67 Athol St., Isle of Man

**City:** **State:**

**Zip:** IM1 1JE **Telephone Number:** 44 (0) 1624 675 610

**I attest that the above information is true and correct to the best of my knowledge.**

**Signed:** ______________________

**Date:** 4/12/2023

**PMG 035**

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.7.1.1**
**Eastern Division**

Vikram P Grover

Plaintiff,

v.

Case No.: 1:21−cv−05054
Honorable Mary M. Rowland

Net Savings Link, Inc., et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 5, 2023:

MINUTE entry before the Honorable Mary M. Rowland: Telephonic motion hearing held. Counsel for Plaintiff and defendant Tilton appeared telephonically. No counsel appeared on behalf of the corporate defendants. For the reasons stated on the record, Plaintiff's motions for default judgment against corporate defendants Net Savings Link, Inc., Wilton Group, Limited, Wilton UK (Group), LTD, Wilton Group, Limited, and China Food and Beverage Co. [136] and motion for default pursuant to FRCP 55(a) [120] are granted. The corporate entities have been unrepresented since 6/16/23 and have largely failed to participate in discovery during the entire time the case has been pending. Plaintiff's motion is granted. Default Judgment against corporate defendants Net Savings Link, Inc., Wilton Group, Limited, Wilton UK (Group), LTD, Wilton Group, Limited, and China Food and Beverage Co. is entered in the amount of $57,903,750.00 including post judgment interest. The court will allow Plaintiff to seek reasonable attorneys' fees. Plaintiff's motion for attorneys' fees is due 1/9/24. Plaintiff's motion to file a supplement in support of his damage's calculation [143] is granted. The court has reviewed the amended joint status report. [145] The parties reported on the status of discovery. The court adopts the proposed briefing schedule of Plaintiffs' motion for summary judgment as follows: Plaintiff's motion for summary judgment due 1/31/24; Defendant Tilton's response due 2/21/24. Plaintiff's reply due 2/28/24. These dates will NOT be extended. The court will either set the matter for hearing or rule by mail. Mailed notice. (dm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.