**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VIKRAM P. GROVER d/b/a<br>"IX ADVISORS" a/k/a "IXA,"<br><br>Plaintiff,<br><br>v. | Case No. 1:21-cv-05054 |
| NET SAVINGS LINK, INC., a Colorado Corporation and formerly organized as a Nevada corporation,<br>WILTON GROUP LIMITED, as Registered in the Isle of Man, U.K.,<br>WILTON UK (GROUP), LIMITED, as Registered in England and Wales, U.K.,<br>CHINA FOOD AND BEVERAGE CO., a Colorado corporation, and<br>JAMES A. TILTON,<br><br>Defendants. | Honorable Mary M. Rowland |

**DEFENDANT WILTON GROUP LIMITED'S REPLY IN SUPPORT OF ITS MOTION UNDER RULE 60(b)(4) TO VACATE JUDGMENT AS VOID**

## INTRODUCTION

Plaintiff's opposition conflates three distinct issues: discretionary relief from an ordinary default, waiver through an affirmative abandonment of a jurisdictional defense, and a pleading-stage assertion that jurisdiction might exist. None establishes that this Court acquired personal jurisdiction over Wilton Group Limited ("Wilton") before entering judgment against it.

Wilton does not seek equitable forgiveness for a concededly valid default. It seeks relief under Rule 60(b)(4) because Plaintiff did not establish valid service abroad or a constitutionally sufficient basis for personal jurisdiction, and because Wilton's timely Rule 12(b)(2) objections were never adjudicated. The renewed jurisdictional motion was denied without prejudice after

Wilton's attorneys withdrew; the Court did not find that service was proper, that Wilton had sufficient Illinois contacts, or that Wilton waived its objections. [Dkt. 98; Dkt. 83.]

Plaintiff's principal waiver authority, *e360 Insight, LLC v. The Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007), does not resolve this case. There, the defendant filed an answer, then affirmatively withdrew it and instructed counsel not to defend despite understanding that a default would follow. *Id*. at 596–600. Wilton never answered; it repeatedly contested personal jurisdiction and service; and its jurisdictional motion remained unresolved when counsel withdrew. The record does not establish the purposeful relinquishment of a live jurisdictional objection that supported waiver in *Spamhaus*.

Nor can Plaintiff sustain the judgment by restating allegations that might have supported jurisdictional discovery. Plaintiff never obtained an evidentiary finding that Wilton was an alter ego of a domestic defendant, that Tilton possessed actual or apparent authority from Wilton, or that Wilton purposefully availed itself of Illinois. And Plaintiff's belated theory that local "agency" service in the Isle of Man was valid under Hague Convention Articles 10(c) and 19 does not establish that the actual recipient or service method used here was authorized by Isle of Man law. The Court should vacate the judgment as void as to Wilton.

## ARGUMENT

### I. Plaintiff applies the wrong Rule 60(b) standard.

Plaintiff relies on the familiar requirements for discretionary relief from an ordinary default, good cause, prompt corrective action, and a meritorious defense. See *Sun v. Board of Trustees of University of Illinois*, 473 F.3d 799, 810 (7th Cir. 2007). That framework does not displace the distinct Rule 60(b)(4) inquiry: whether the judgment is void because the Court lacked personal jurisdiction over the defendant.

A court may grant relief under Rule 60(b)(4) where the judgment rests on a jurisdictional defect or a due-process violation depriving a party of notice or an opportunity to be heard, a burden that Wilton bears. *Philos Technologies, Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912–17 (7th Cir. 2015). The Seventh Circuit has applied that rule to a foreign defendant's post-judgment personal-jurisdiction challenge in this District, ultimately affirming vacatur where the defendants lacked sufficient Illinois contacts. *Id.*

Plaintiff is correct that Rule 60(c)(1)'s "reasonable time" limitation applies to Rule 60(b)(4) motions. *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 146 S.Ct. 579, 589 (2026). But the reasonable-time inquiry does not eliminate the threshold question whether the Court possessed authority to enter the judgment. It instead requires an assessment of the actual procedural record and the circumstances prompting the motion.

On July 7, 2026, the Isle of Man High Court found that Wilton had raised a 'genuine and substantial dispute' concerning jurisdiction and stayed the winding-up application pending determination of that issue. Dkt. 266-1, Ex. G ¶¶ 86–87, 91–93. The court stated: 'If the Illinois Court had jurisdiction, winding-up should surely follow. If it did not this claim must fail.' Id. ¶ 94. Wilton filed this motion on August 18, 2026, six weeks after that ruling. Wilton does not contend that the July ruling restarted Rule 60(c)(1)'s reasonable-time period; it relies on that ruling and the preceding enforcement proceedings as circumstances bearing on the reasonableness of its application. The Manx court did not find that Wilton submitted to N.D. Ill. jurisdiction. It identified the jurisdictional issue as unresolved and stayed the insolvency proceedings pending clarification. [Giordano Aff. Ex. G at ¶¶ 74–77; see also id. at ¶¶ 19–30.].

Plaintiff's earlier statutory demands did provide notice of Plaintiff's claimed judgment. But notice of an asserted judgment is not consent to the jurisdiction of the court that rendered it.

Nor does a foreign-law response disputing enforcement waive a previously asserted and subsequently renewed, never-adjudicated objection that the rendering court lacked personal jurisdiction.

## II. *Spamhaus* does not establish that Wilton waived its preserved service and personal-jurisdiction objections.

Plaintiff's opposition depends on e*360 Insight, LLC v. The Spamhaus Project*, 500 F.3d 594 (7th Cir. 2007). But *Spamhaus* involved an affirmative and informed relinquishment of the defendant's defenses. The foreign defendant in that case answered, asserted personal-jurisdiction and service defenses, then instructed counsel to withdraw the answer and cease defending while knowing that default would result. *Id*. at 596–600. The Seventh Circuit held that the district court did not clearly err in treating that record as a voluntary abandonment of defenses already raised. *Id*. at 600. That is not this record.

Wilton never answered the complaint. Instead, after appearing through counsel, it filed a motion contesting personal jurisdiction and the sufficiency of Plaintiff's foreign service. [Dkt. 52.] The first motion was denied as moot when the case was diverted into settlement proceedings. [Dkt. 59.] When settlement failed, Wilton renewed its jurisdictional challenge at Dkt. 83. The renewed motion expressly argued that Plaintiff had not complied with the Hague Service Convention and that Wilton lacked the requisite contacts with Illinois. [Dkt. 83 at 2, 7–10.]

The Court never decided those issues. After Wilton's attorneys withdrew, the Court denied Dkt. 83 without prejudice, allowed Wilton time to retain replacement counsel, and warned that failure to do so could lead to default. [Dkt. 98.] Nothing in that order found valid service, personal jurisdiction, consent, waiver, or abandonment. The court's necessary

recognition that a corporation must proceed through counsel does not itself transform a pending jurisdictional defense into a merits concession.

Plaintiff emphasizes Wilton's participation in settlement-related proceedings and joint status reporting. But limited participation in court-directed settlement proceedings is not equivalent to seeking affirmative merits relief, filing a merits answer, pursuing discovery, or withdrawing a jurisdictional defense. Wilton did not withdraw Dkt. 83; the Court denied it without prejudice for procedural reasons connected to the withdrawal of counsel. [Dkt. 98.] The settlement-related submissions did not stipulate that Wilton was properly served, consent to personal jurisdiction, or withdraw Wilton's Rule 12(b)(2) motion. Wilton does not suggest that forfeiture requires an express statement of consent. Its position is that the procedural denial without prejudice of its renewed jurisdictional motion, coupled with counsel's withdrawal, does not by itself establish the affirmative abandonment found in *Spamhaus*. The Court should assess Wilton's conduct in light of its two motions expressly contesting personal jurisdiction and service.

Indeed, Plaintiff's own Isle of Man submission confirms the distinction. The Manx court recorded that Wilton did not sue or counterclaim in Illinois and that Wilton's appearance included a motion challenging personal jurisdiction and service. [Giordano Aff. Ex. G at ¶¶ 19–30.] The same decision recites the governing common-law submission standard: the alleged judgment debtor must take a step "only necessary or only useful if an objection to jurisdiction has been actually waived, or if the objection has never been entertained at all." [Id. at ¶ 78, quoting Shovlin v. Careless, [2024] EWHC 325.]

That standard describes why Plaintiff's waiver theory fails. Wilton's jurisdictional motion was necessary and useful precisely because Wilton had not waived its objection. Its

limited participation in settlement efforts while that motion was previously asserted and subsequently renewed did not constitute a relinquishment of the objection.

## III. Plaintiff has not established that its actual method of foreign service was valid.

Plaintiff now invokes Hague Convention Articles 10(c) and 19 and argues that private service through a local agency in the Isle of Man was permitted. This argument does not cure the factual and legal deficiencies in Plaintiff's proof.

Wilton does not contend that service through a Hague Convention Central Authority is invariably the only valid route in every Convention state. The question is narrower: whether Plaintiff proved that the actual means used to serve Wilton complied with Rule 4(h)(2), Rule 4(f), the Hague Convention, and Isle of Man law.

The record identifies service on Wilton Group Limited as service "on Lynsey Hignett" on December 3, 2021. [Dkt. 11–12.] Plaintiff's opposition does not establish:

- Ms. Hignett's relationship to Wilton;
- whether Ms. Hignett was an officer, director, employee, registered agent, or other person authorized under Isle of Man law to accept service for Wilton;
- whether the person effecting service was a "judicial officer, official or other competent person" within Hague Convention Article 10(c);
- whether the precise service method used was permitted by Isle of Man internal law within the meaning of Article 19; or
- whether the service affidavit otherwise complied with the governing rules for service on a foreign corporation.

Plaintiff instead relies on general propositions concerning service in the United Kingdom, an Illinois appellate decision involving different facts, and a statement that Articles 10 and 19 may permit certain non-Central-Authority service methods. That does not establish valid service on this defendant, through this recipient, by this method, in the Isle of Man.

Wilton does not contend that use of the Hague Central Authority was invariably required or that the absence of a Rule 4(f)(3) order alone invalidates service. The issue is whether the particular delivery satisfied an available Convention and local-law method. The Manx Rules distinguish personal service upon a corporation from other permissible corporate-service methods. See Rules of the High Court of Justice 2009, rr. 2.23, 2.26. Accordingly, the effectiveness of the delivery must be evaluated under the particular route invoked, including any applicable statutory provision, rather than inferred merely from delivery at an office.

Furthermore, the Supreme Court has made clear that formal service, not mere awareness, is the procedural mechanism that brings a defendant under a federal court's authority. *Omni Capital International, Ltd. v. Rudolf Wolff & Co*., 108 S.Ct. 404, 409 (1987); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 119 S.Ct. 1322, 1325 (1999).

## IV. Plaintiff has not established personal jurisdiction through alter ego, agency, or Wilton's own Illinois contacts.

Plaintiff repeatedly characterizes his 2023 opposition to Dkt. 83 as establishing a "prima facie" alter-ego and agency case. But that was a pleading-stage opposition that also asked the Court for jurisdictional discovery and, alternatively, an evidentiary hearing. [Dkts. 92–93.] The Court never granted that discovery, never held the requested evidentiary hearing, and never made a finding that Wilton was the alter ego of NSAV or CHIF, that Tilton was Wilton's agent, or that Wilton possessed sufficient Illinois contacts. [Dkt. 98.]

A request for discovery is not proof of jurisdiction. The Rule 60(b)(4) question is whether the Court had personal jurisdiction when judgment was entered, not whether Plaintiff had alleged enough to justify testing his theory through discovery.

**A. The alter-ego allegations were never proven.**

Plaintiff relies on an issuer's use of the term "affiliate," shared contact information in market-profile materials, and alleged relationships involving Wilton-related trustee entities. [Dkt. 92 at 10–16; Pl.'s Opp. at 14–15.] At most, those assertions might have justified narrowly targeted discovery. They did not establish that Wilton Group Limited disregarded corporate formalities, controlled NSAV or CHIF, commingled funds, dominated operations, or used either entity as a mere instrumentality.

The Bassage declaration offered the contrary record: Wilton maintained no U.S. office; did not transact business in Illinois; did not contract or communicate with Plaintiff; did not control the domestic entities; and did not authorize Tilton to act on its behalf. [Bassage Decl. ¶¶ 4.1 – 4.6.] Plaintiff never obtained a ruling rejecting those sworn facts or finding an alter-ego relationship.

What's more, CHIF's own Company Information and Disclosure Statement dated 30 October 2015, attached hereto as **Exhibit A,** distinguishes the entities Plaintiff collectively describes as 'Wilton.' It identifies WPA Audit Limited as the financial-statement compiler, Wilton Corporate Finance Limited and Wilton (IOM) Ltd. as paid advisory-service providers, and Wilton Trustees (IOM) Ltd. in the ownership disclosures. Disclosure at 5–8. Although those disclosures identify relationships requiring further consideration, they do not identify Wilton Group Limited itself as the shareholder, adviser, or contracting party. Plaintiff's attribution theory must therefore address the particular relationships among these entities rather than assume their identities are interchangeable.

### B. Plaintiff's alleged agency theory rests on the alleged agent's statements, not Wilton's manifestations.

Plaintiff's agency argument is based principally on statements Tilton allegedly made about "Wilton Group." But apparent authority must arise from the purported principal's manifestations, not from the alleged agent's unilateral declarations. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064–65 (7th Cir. 2000). Plaintiff identifies no conduct by Wilton that authorized Tilton to bind it, led Plaintiff reasonably to believe Tilton possessed authority, or ratified Tilton's alleged conduct.

Again, the Bassage declaration directly contradicts Plaintiff's claim: Tilton was not Wilton's officer, director, shareholder, employee, or authorized agent. [Bassage Decl. ¶¶ 4.6.]. Plaintiff never developed or proved otherwise.

For these reasons, Wilton submits that the sworn jurisdictional record establishes the absence of personal jurisdiction and warrants relief under Rule 60(b)(4).

## CONCLUSION

For the foregoing reasons, Wilton Group Limited respectfully requests that the Court grant its Rule 60(b)(4) motion and vacate the judgment entered against Wilton Group Limited as void for lack of personal jurisdiction.

DATED: October 19, 2026

Respectfully submitted,

By: /s/*Neal H. Levin*
Neal H. Levin
RIMÔN P.C.
875 N. Michigan Avenue, Suite 3100
Chicago, IL 60611
Tel: (312) 224-0966
neal.levin@rimonlaw.com

*Attorney for Defendant*
*Wilton Group, Limited (Isle of Man)*